IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CASE NO. 3:23-MC-24
Varlan/McCook

EMERGENCY PHYSICIAN SERVICES OF
NEW YORK, ET AL.,

          Plaintiffs,

v.

UNITEDHEALTH GROUP, INC., ET AL.,

          Defendants.

FILED
APR - 3 2023
Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

## DEFENDANTS' MOTION TO COMPEL TEAMHEALTH HOLDINGS, INC.'S PRODUCTION IN RESPONSE TO SUBPOENA *DUCES TECUM*

Defendants UnitedHealth Group, Inc., United HealthCare Services, Inc., UMR, Inc., UnitedHealthcare Service LLC, UnitedHealthcare Insurance Company, and Oxford Health Plans LLC (collectively, "Defendants"), pursuant to Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure, move to compel the production of documents by TeamHealth Holdings, Inc. ("TeamHealth")[1] in response to Defendants' October 12, 2022 subpoena (the "Subpoena") issued by the United States District Court for the Southern District of New York. In support, Defendants provide the following.[2]

### INTRODUCTION

In a lawsuit filed in the United States District Court for the Southern District of New York – *Emergency Physician Services of New York, et al. v. UnitedHealth Group, Inc., et al.*, No. 1:20-cv-09183-AJN (S.D.N.Y 2020) – Plaintiffs Emergency Physician Services of New

---

[1] TeamHealth's corporate headquarters and principal place of business are in Knoxville, Tennessee.

York, Buffalo Emergency Associates, Exigence Medical of Binghamton, and Emergency Care Services of New York (collectively, "Plaintiffs") seek to use state law unjust enrichment claims to compel Defendants to pay Plaintiffs' full billed charges for emergency medicine services rather than paying submitted claims based on the terms of the health benefit plans that Defendants insure or administer. Specifically, Plaintiffs allege that Defendants paid less than a "reasonable value" – defined by Plaintiffs as whatever they choose to charge (Plaintiffs' "billed charges") – and demand additional reimbursement beyond what Defendants already paid on an out-of-network basis for the health benefit claims at issue. *See* Plaintiffs' First Amended Complaint (the "FAC"), attached hereto as **Exhibit 2**, ¶ 18.

On October 12, 2022, Defendants issued the Subpoena (attached hereto as **Exhibit 3**) to Knoxville-based TeamHealth, the parent and controlling entity of Plaintiffs. The Subpoena seeks relevant documents and electronically stored information ("ESI") owned and maintained by TeamHealth. Plaintiffs are shell companies with no authority independent of TeamHealth; TeamHealth makes all of their key management decisions, including the decision to bring this lawsuit, and TeamHealth would further be the ultimate financial beneficiary of any recovery through this lawsuit. It is undisputed that *all* of the documents sought by the Subpoena are either created by TeamHealth, or are maintained on its servers, or both. Tennessee state courts have twice compelled TeamHealth to produce similar documents in response to similar subpoenas that were served in related litigation between other TeamHealth affiliates and overlapping defendants, and this Court should do the same.

Over the course of a series of meet-and-confers between Defendants and TeamHealth from October through December 2022, TeamHealth represented that "Plaintiffs have full access to all of the same custodians and ESI servers that [TeamHealth does]; therefore, any information

---

[2] Defendants' Rule 37(a)(1) Certification is attached hereto as **Exhibit 1**.

discovered as a result of their search would encompass any materials that are in [TeamHealth's] possession." *See* **Exhibit 4**, Defendants' November 30, 2022 Email to TeamHealth. But Plaintiffs have not confirmed that they have been able to locate and collect the requested documents, nor have they produced them, and TeamHealth and Plaintiffs now both refuse to meet-and-confer with Defendants regarding production of the materials. *See* **Exhibit 5**, Plaintiffs' March 3, 2023 Email to Defendants, and **Exhibit 6**, TeamHealth's March 10, 2023 Letter to Defendants. TeamHealth is playing a shell game in this latest iteration of its longstanding efforts to avoid producing obviously relevant information that it controls and maintains on its own servers, and it should be met with the same response to its litigation gamesmanship that it has previously received from Tennessee courts: an order requiring production of the requested documents.

Tennessee state courts have already ordered TeamHealth – on *two* separate occasions – to comply with the subpoenas issued by defendants in similar proceedings. On November 9, 2022, the Honorable Amanda McClendon denied TeamHealth's motion to quash a substantially similar subpoena issued by Defendants UnitedHealth Group, Inc., United HealthCare Services, Inc., UMR, Inc., and UnitedHealthcare Insurance Company in a nearly identical litigation initiated by TeamHealth subsidiaries in Pennsylvania state court. *See* **Exhibit 7**, November 9, 2022 Order, *Emergency Care Services of Pennsylvania, P.C., et. al. v. UnitedHealth Group, Inc., et. al.*, Case ID No. 200900598 (Pennsylvania, Court of Common Pleas Philadelphia County) ("Emergency Care Services") (denying TeamHealth motion to quash and ordering the "full and complete productions of documents responsive to the documents requests in the subpoena no later than November 4, 2022"). A year earlier, another Tennessee state court denied TeamHealth's attempt to quash a similar subpoena issued to it in the comparable matter initiated by TeamHealth subsidiaries against overlapping defendants in Florida. *See* **Exhibit 8**, November 17, 2021

3

Order, *Gulf-to-Bay Anesthesiology Associates, LLC v. UnitedHealthcare of Florida, Inc. and UnitedHealthcare Insurance Co.*, Case No. 1-172-21 (Tenn. Cir. Ct.) ("Gulf-to-Bay").

TeamHealth has dragged its feet for months in refusing to produce the requested documents, and has now forced the filing of this motion by refusing to meet and confer further and making clear it will not make any production of the relevant documents it maintains and controls. Accordingly, Defendants respectfully request that the Court grant this motion to compel because the Subpoena (1) seeks narrowly tailored information from TeamHealth that is relevant to this litigation, (2) is reasonably tailored to lead to the discovery of admissible evidence in the New York action, and (3) does not impose any undue burden on TeamHealth.

## BACKGROUND

### A. The Parties and the New York Action

Plaintiffs are for-profit physician staffing companies affiliated with and owned by TeamHealth. TeamHealth was a publicly traded company until it was acquired in 2017 by a private equity firm, Blackstone, for $6.1 billion.[3] As one of the largest emergency room staffing, billing, and collections companies in the United States, TeamHealth provides outsourced emergency medicine services on a national scale and staffs as many as 3,400 emergency medical facilities, employing roughly 19,000 individuals.[4] TeamHealth controls numerous affiliated corporate entities across the country, including Plaintiffs.[5] TeamHealth's billing department

---

[3] TeamHealth, "TeamHealth to be Acquired by Blackstone" (last accessed Apr. 4, 2022), available at https://www.teamhealth.com/news-and-resources/press-release/teamhealth-to-beacquired-by-blackstone/.

[4] *Id.*

[5] *See supra,* n.5.

submits reimbursement claims to government benefit programs, health insurers, and health plans on behalf of entities like Plaintiffs.[6] Plaintiffs are not healthcare providers, but rather are staffing companies. They contract with healthcare providers, including emergency medicine physicians, and then separately contract with hospitals to staff those hospitals' emergency departments.[7] While TeamHealth employs some physicians, it typically retains physicians as independent contractors.[8]

Defendants insure or administer employer-sponsored health benefit plans. Health care providers can enter into agreements ("network agreements") with health insurers and third-party administrators like Defendants that specify how much the health benefit plan will reimburse the provider for services rendered to members of the plan. Health care services rendered pursuant to a network agreement are "in network" and the reimbursement is governed by the terms of a network agreement establishing a rate of payment for services rendered by providers. *See* FAC ¶ 28. Health care services rendered without any contractual agreement specifying a provider's reimbursement are referred to as "out-of-network," and the reimbursement amount for any covered service is governed by the terms of the applicable health benefit plan of which the patient is a member. For all of the reimbursement claims at issue in this litigation, Plaintiffs were out-of-network providers. *Id.* In the New York litigation, Plaintiffs claim that the payments for certain health benefit claims for emergency medicine services rendered to members of health plans insured or administered by Defendants were not reasonable. *Id.* ¶ 27.

---

[6] *See* Isaac Arnsdorf, *How Rich Investors, Not Doctors, Profit from Marking Up ER Bills*, ProPublica (June 12, 2020), available at https://www.propublica.org/article/how-rich-investors-not-doctors-profit-from-marking-up-er-bills.

[7] *See id.*; *See also* TeamHealth, "Terms and Conditions" (last accessed Aug. 1, 2022), available at https://www.teamhealth.com/our-company/human-resources/terms-and-conditions/?r=1.

[8] *Id. See also* Arnsdorf, *supra*, n.5.

## B. Defendants' Subpoena Issued to TeamHealth

In TeamHealth's letter rejecting Defendants' request to meet-and-confer on certain Subpoena requests, TeamHealth tries to create the impression that it is simply "an intermediate holding company for various operating affiliates and has no employees." *See* Exhibit 6, [TeamHealth's March 10 Letter]. TeamHealth's characterizations of its operations, business activities, and control over Plaintiffs are entirely misleading. Plaintiffs are shell companies with no independent management of their own, and they are owned by and controlled by TeamHealth. In fact, the documents responsive to the requests in the Subpoena will establish that TeamHealth is the true intended financial beneficiary of Plaintiffs' lawsuits: all of Plaintiffs' profits – including any damages recovered by Plaintiffs in this lawsuit – flow directly to TeamHealth or its other wholly-owned subsidiaries. Moreover, TeamHealth and its executives are the decision-makers regarding the rates that Plaintiffs charge and accept for their services, including with respect to commercial payors such as Defendants, and further decide whether to bring lawsuits like this one rather than accept the amounts paid. TeamHealth's transparent attempt to avoid discovery into their corporate organizational structure and flow of funds has already failed in Tennessee state court in a substantially similar case brought by TeamHealth against United defendants in Pennsylvania. TeamHealth, therefore, cannot plausibly categorize itself as a removed "intermediate holding company" with "no employees" or operations.

By way of example, in a similar case filed in Nevada by other TeamHealth affiliates against some of the same Defendants – *Fremont Emergency Servs. (Mandavia) Ltd. v. United Healthcare Ins. Co.*, No. 19-00832, ECF No. 40 (D. Nev. Jan. 7, 2020) – the chief trial fact witnesses for the Nevada TeamHealth-affiliated plaintiffs were all executives at TeamHealth, including Kent Bristow (TeamHealth's Senior Vice President of Revenue Management) and Leif Murphy (TeamHealth's Chief Executive Officer). *See id.* Similarly, Kent Bristow, Leif

Murphy, and other TeamHealth executives are all ESI custodians for the Plaintiffs in the New York matter. *See* **Exhibit 9**, Plaintiffs' ESI Search Result Report from Plaintiffs' counsel listing TeamHealth executives Eddie Ocasio, Tracey Chancey, JJ Shrader, Kent Bristow, Leif Murphy, Lisa Zima, Paul Bevilacqua, and Paula Dearolfas ESI custodians.[9] TeamHealth's attempt to distance itself from Plaintiffs and minimize its operational role is undermined by the fact that ***Plaintiffs have not identified a single ESI custodian who is not directly affiliated with TeamHealth***.

Further, in another pending case brought by TeamHealth affiliates in Florida, *Gulf-to-Bay Anesthesiology Assocs., LLC v. UnitedHealthcare of Fla., Inc.*, No. 17-CA-011207, Doc. No. 4 (Fla. Cir. Ct. Dec. 15, 2017), nearly all of the witnesses disclosed by the plaintiff (owned and controlled by TeamHealth) are TeamHealth employees and all of the relevant communications between the plaintiff and the United defendants are emails to and from TeamHealth, not the Florida plaintiff. *See* United's Witness List, Filing # 119624890, Jan. 14, 2021, attached hereto as **Exhibit 10**.

In addition, the same TeamHealth executives that are ESI custodians in New York have been the driving force behind TeamHealth's strategy to sue Defendants and other healthcare payors to pressure Defendants into paying network rates that would be more favorable to Plaintiffs and thus ultimately to TeamHealth. TeamHealth has been the focus of multiple investigations and lawsuits[10] challenging its egregious billing practices and efforts to exploit the

---

[9] Unsurprisingly, these same individuals are ESI custodians for TeamHealth-affiliated plaintiffs in the Pennsylvania proceedings. *See Emergency Care Services of Pennsylvania, P.C., et al. v. Unitedhealthcare of Pennsylvania, Inc., et al.*, Case No. 22FS132 (Tenn. Cir. Ct.), Defendants' Response to Teamhealth Holdings, Inc's Motion to Quash Defendants' Subpoena *Duces Tecum*, at p. 5 & Exhibit 4 (attached hereto as **Exhibit 16**).

[10] *See United States of America, ex rel. Caleb Hernandez & Jason Whaley, Relators et al. v. Team Health Holdings, Inc. et al.*, Case No. 2:16-cv-00432-JRG, pending before the United

7

healthcare system to maximize profits. Consistent with these allegations, TeamHealth orchestrated lawsuits like this one against Defendants to attempt to achieve increased reimbursement rates and thus increased profits. Other TeamHealth-affiliated providers, either acting through or coordinating behind the scenes with the same lead counsel, have filed variations of this same case in multiple states.[11] Through the discovery conducted to date in these multiple actions, it has become clear that TeamHealth and its employees are responsible for the decisions on the central issues in dispute, not Plaintiffs.[12]

Because of the control TeamHealth exercises over Plaintiffs and the overlap between the senior leadership at these entities, Defendants served TeamHealth with the Subpoena seeking documents regarding the "reasonable value" of the medical services at issue, the corporate structure of the Plaintiff entities and their relationship with TeamHealth, the flow of funds between the entities, the influence TeamHealth wields over Plaintiffs' billed charges that

---

States District Court for the Eastern District of Texas; *Fraser v. Team Health Holdings, Inc.*, Case No. 4:20-cv-4600, pending before the United States District Court for the Northern District of California. *See also* Isaac Arnsdorf, *How Rich Investors, Not Doctors, Profit from Marking Up ER Bills*, ProPublica (June 12, 2020), https://bit.ly/3CYFFlx.

[11] *See, e.g.*, Ex. A, *Emergency Care Servs. of Pa., P.C. v. UnitedHealth Grp., Inc.*, No. 1:19-cv-01195, ECF No. 1 (M.D. Pa. July 11, 2019); Ex. B, *Emergency Grp. of Ariz. Pro. Corp. v. United Healthcare Inc.*, No. 2:19-cv-04687, ECF No. 18 (D. Ariz. Aug. 9, 2019); Ex. C, *Buffalo Emergency Assocs., LLP v. UnitedHealth Grp., Inc.*, No. 1:19-cv-01148, ECF No. 1 (W.D.N.Y. Aug. 26, 2019); Ex. D, *Fremont Emergency Servs. (Mandavia), Ltd. v. United Healthcare Ins. Co.*, No. 2:19-cv-00832, ECF No. 40 (D. Nev. Jan. 7, 2020) ; Ex. E, *Emergency Care Servs. of Pa., P.C. v. UnitedHealth Grp., Inc.*, No. 2:20-cv-05094, ECF No. 1-3 (E.D. Pa. Oct. 14, 2020); Ex. F, *Gulf-to-Bay Anesthesiology Assocs., LLC v. UnitedHealthcare of Fla., Inc.*, No. 17-CA-011207, Dkt. No. 28 (Fla. Cir. Ct. Feb. 12, 2019); Ex. G, *Atl. ER Physicians Team Pediatric Assocs., PA v. UnitedHealth Grp., Inc.*, 1:20-cv-20083, ECF No. 2 (D.N.J. Dec. 21, 2020); *Emergency Dep't Physicians, P.C. v. United Healthcare Inc.*, 507 F. Supp. 3d 814, 818-19 (E.D. Mich. 2020) (granting motion to dismiss).

[12] *See* Arnsdorf, *supra* n.5.

Plaintiffs contend represent the "reasonable value" of their medical services, and related deposition testimony. *See* Exhibit 3 [the Subpoena].

## ARGUMENT

### A. The Subpoena Seeks Relevant Discovery

The limited requests from the Subpoena that Defendants are moving to enforce seek relevant information. TeamHealth's counsel asserted that the documents requested by Defendants are irrelevant to Plaintiffs' causes of action. *See* **Exhibit 11**, October 27, 2022 Letter to Defendants, and Exhibit 6 [TeamHealth's March 10 letter]. This position is untenable because the Subpoena seeks documents reflecting (1) Plaintiffs' understanding of the reasonable value of the medical services they provided to members of health plans issued or administered by Defendants; (2) the processes by which TeamHealth sets the billed charges for Plaintiffs; and (3) the relationship between these billed charges and the reasonable value of the services.

In the New York litigation, Plaintiffs contend that Defendants reimbursed Plaintiffs at less than the "reasonable value" of the emergency medical services allegedly provided to members of health benefit plans insured or administered by Defendants. *See* FAC ¶¶ 5, 27. Each of the health benefit claims at issue in this litigation are out-of-network, and so there is no agreement governing the terms of any payment amounts between Plaintiffs and Defendants. *See id.* ¶ 28. Plaintiffs' FAC further defines their own billed charges as "the amount that would otherwise be owed" on health benefit claims. *See id.* ¶ 18. These charges are unilaterally set by TeamHealth, who has every financial incentive to keep billed charges unreasonably high and to

unreasonably use these billed charges as a metric to determine the "reasonable value" of the services they allegedly provide.[13]

Significantly, Tennessee courts have already rejected TeamHealth's attempt to quash similar subpoenas in two cases that similarly challenged the out-of-network reimbursement rates paid by overlapping defendants. *See* Exhibit 7 [Nov. 9, 2022 Order, Emergency Care Services]; *see* Exhibit 8 [Nov. 17, 2021 Order, Gulf-to-Bay]. In both instances, the Tennessee courts denied TeamHealth's motion and issued orders compelling the discovery of the documents requested in the respective subpoenas. Here, TeamHealth should once again be compelled to produce the requested discovery.

The requests in the Subpoena, like the subpoenas at issue in Gulf-to-Bay and Emergency Care Services, are tailored to obtain discoverable information about the influence TeamHealth and its corporate owner, Blackstone, exert on Plaintiffs' billed charges, how those billed charges are set, and the financial incentives that Blackstone, TeamHealth, and Plaintiffs have for keeping their billed charges as unreasonably high as possible. For example, the following document requests relate to the question of how Plaintiffs' billed charges are set and their relationship to the true measure of reasonable value under New York law:

- Request 6 seeks "All Documents or Communications between [TeamHealth] and Blackstone Relating to TeamHealth Plaintiffs' Charges."

- Request 7 seeks "All Documents or Communications between [TeamHealth] and Blackstone Relating to increasing or maximizing reimbursements from Payor(s)."

---

[13] *See* Isaac Arnsdorf, *How Rich Investors, Not Doctors, Profit from Marking Up ER Bills*, ProPublica (June 12, 2020), available at https://www.propublica.org/article/how-rich-investors-not-doctors-profit-from-marking-up-er-bills.

- Request 14 seeks "All Communications, including internal Communications, Relating to the setting of Charges or amending or creating new Chargemasters for [] Plaintiffs."
- Request 15 seeks "All Communications, including internal Communications, comparing set Charge levels to competitors or other benchmarks which include the New York market."
- Request 22 seeks "All Documents Relating to any policies or procedures, whether written or not, for determining how to bill services provided by Professional Providers employed or independently contracted by TeamHealth or practices by TeamHealth Emergency Medicine Practices in the New York market during the Relevant Period."

Similarly, the following document requests seek information about Plaintiffs' and TeamHealth's basic corporate structure and the profit motives behind their business practices, including the costs to provide the services at issue:

- Request 8 seeks "All Documents or Communications Relating to the disbursement of profits from [] Plaintiffs to TeamHealth or from TeamHealth to Blackstone."
- Request 19 seeks "Documents Relating to the costs for TeamHealth Emergency Medicine Practices to perform Emergency Medicine Services during the Relevant Period in the New York market."
- Request 32 seeks "All Documents or Communications, including but not limited to supporting data and analyses, Relating to the assertion that "[i]n fact, three of four patients who visit TeamHealth's affiliated emergency departments reimburse us for our services below our cost of $150 per patient visit, meaning the

commercial population remains the only viable source of positive revenue for us" which was posted on TeamHealth's website during the relevant period."

The Subpoena seeks relevant information that falls within the broad rules for discovery applicable to the underlying litigation. *See* F.R.C.P. 26(b)1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party"). The Subpoena seeks basic, foundational evidence about Blackstone, TeamHealth, and the Plaintiffs. The jury in this case is entitled to know foundational information about (i) the organizational structure of Plaintiffs; (ii) the role that TeamHealth and Blackstone performed in the operation of the Plaintiffs; (iii) the basic financial relationship between Plaintiffs and their owners; (iv) the basic and foundational information about which entities make decisions regarding the billed charges at issue in this case, as well as the policies and procedures governing the payments that will be accepted for the emergency medicine services rendered by Plaintiffs; and (v) the relationship of these billed charges to the reasonable value of emergency services under New York law.

In the New York proceeding, the Court has ruled multiple times that the requests directed at Plaintiffs and TeamHealth pertaining to their costs are relevant. *See Emergency Physician Services of New York, et al. v. UnitedHealth Group, Inc., et al.*, No. 1:20-cv-09183-AJN (S.D.N.Y 2020), Dkt. 176 (attached as **Exhibit 12**), 213 (attached as **Exhibit 13**), and 282 (attached as **Exhibit 14**). Most recently, on March 10, 2023, the Court sanctioned Plaintiffs for continuing to resist production of cost information that all agree is tracked and recorded by TeamHealth. *Id.* at Dkt. 351 (attached as **Exhibit 15**). Judges in the Pennsylvania litigation and in Tennessee have similarly required production of materials responsive to Defendants' other requests. *See* Exhibit 7 [Nov. 9, 2022 Order, Emergency Care Services]; *see* Exhibit 8 [Nov. 17, 2021 Order, Gulf-to-Bay].

## B. TeamHealth's Objections to the Subpoena are Baseless

From the issuance of the Subpoena on October 12 until December 2022, Defendants' counsel met-and-conferred with TeamHealth's and Plaintiffs' counsel to reach a compromise on the business records and communications TeamHealth should produce. The meet and confer efforts were unsuccessful because TeamHealth's counsel lodged repeated objections based on inaccurate premises. For example, TeamHealth argued that the Subpoena imposed an undue burden on a "non-party" because Plaintiffs have access to TeamHealth's ESI servers and can search the documents of the ESI custodians – almost all of which are TeamHealth employees. But Defendants are seeking *TeamHealth's own documents*, created and maintained on TeamHealth's system and fully under their control. Indeed, deposition testimony in the underlying litigation established that all personnel affiliated with Plaintiffs (including the ESI custodians) use TeamHealth email addresses hosted on TeamHealth's servers and that each Plaintiff entity was supported by the same TeamHealth-affiliated personnel. Additionally, as reflected in Plaintiffs' privilege log, Plaintiffs have withheld communications exchanged between TeamHealth employees and executives on the basis that they are "communications between Company employees and counsel." *Emergency Physician Services of New York*, No. 1:20-cv-09183-AJN (S.D.N.Y 2020), Dkt. 338-1. TeamHealth's assertion that they should be excused from complying with the Subpoena because it has permitted Plaintiff affiliates to access its own servers is unavailing, where Plaintiffs have not produced the requested documents or even stated that they have been able to identify and locate them.

Similarly, TeamHealth inaccurately contends that production of documents relating to "profit disbursements, employment relationship documents, attempted acquisition documents, collection agency information, and internal analyses regarding New York's IDR process" fall "outside the scope of discovery." *See* Exhibit 11 [October 27, 2022 letter]. This premise is false.

Defendants seek to obtain discovery about the relationship between Plaintiffs and TeamHealth, as well as information about Blackstone, the ultimate owner of all the entities involved in this litigation, in addition to information on how those relationships affected the amounts that Plaintiffs in this litigation chose to bill Defendants. Information on the decision-making processes regarding the setting of billed charges in New York and billing practices within the TeamHealth/Blackstone network are relevant to Plaintiffs' allegations. Given the nature of Plaintiffs' claims in New York, as well as TeamHealth's claims in numerous other states, Defendants' requests are reasonable and the requested information is discoverable.

Contrary to TeamHealth's baseless assertions, Defendants' Subpoena (1) seeks narrowly tailored information from TeamHealth that is relevant to this litigation, (2) is reasonably tailored to lead to the discovery of admissible evidence in the New York action, (3) does not impose any undue burden on TeamHealth, and (4) seeks information that is not being fully produced through party discovery. For these reasons, TeamHealth should be compelled to do what they have resisted doing for months: conduct a reasonable search for and produce documents responsive to the document requests in the Subpoena.

## CONCLUSION

Accordingly, Defendants' motion should be granted and TeamHealth should be ordered to produce responsive documents.

Dated: April 3, 2023     Respectfully submitted,

**PAINE, TARWATER, & BICKERS, LLP**

Michael J. King (BPR #015523)
Lindsey M. Collins (BPR #033426)
Email: mjk@painetarwater.com
Email: lmc@painetarwater.com
900 South Gay Street, Suite 2200
Knoxville, Tennessee 37902
(865) 525-0880 (phone)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of April, 2023, a copy of the foregoing was sent to the following via regular U.S. Mail.

Gary C. Shockley
Caldwell G. Collins
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

*Counsel for TeamHealth Holdings, Inc.*

Wendy H. Schwartz
Sarah Dowd
BINDER & SCHWARTZ LLP
366 Madison Avenue, 6th Floor
New York, NY 10017
wschwartz@binderschwartz.com
sdowd@binderschwartz.com

Justin C. Fineberg
Jonathan Siegelaub
LASH & GOLDBERG LLP
100 SE 2nd Street, Suite 1200
Miami, FL 33131-2131
jfineberg@lashgoldberg.com
jsiegelaub@lashgoldberg.com

*Counsel for Plaintiffs*

By: /s/ Lindsay M. Collins