# EXHIBIT 1

EMERGENCY PHYSICIAN SERVICES OF
NEW YORK, ET AL.,

                    Plaintiffs,

v.

UNITEDHEALTH GROUP, INC., ET AL.,

                    Defendants.

_____

### FRCP 37(a)(1) Certification

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, I, Ethan M. Scapellati,

counsel for Defendants/Movants UnitedHealth Group, Inc., United HealthCare Services, Inc.,

UMR, Inc., UnitedHealthcare Service LLC, UnitedHealthcare Insurance Company, and Oxford

Health Plans LLC (collectively, "Defendants"), hereby certify that Defendants have in good faith

conferred with TeamHealth Holdings, Inc. in an effort to obtain the subpoenaed materials without

resort to court action.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.


Dated: March 31, 2023


                                        _____

                                        Ethan Scapellati
                                        New York Bar #: 5723564
                                        *Counsel for Defendants*

# EXHIBIT 2

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

EMERGENCY PHYSICIAN SERVICES OF NEW YORK, BUFFALO EMERGENCY ASSOCIATES, EXIGENCE MEDICAL OF BINGHAMTON, and EMERGENCY CARE SERVICES OF NEW YORK,

*Plaintiffs,*

v.

UNITEDHEALTH GROUP, INC., UNITED HEALTHCARE SERVICES, INC.; UMR, INC.; UNITEDHEALTHCARE SERVICE LLC; UNITEDHEALTHCARE INSURANCE COMPANY; OXFORD HEALTH PLANS LLC;

*Defendants.*

Case No: 1:20-cv-09183-AJN-SN

AMENDED COMPLAINT

### AMENDED COMPLAINT

## Introduction[1]

1.      This case is brought in the context of a global coronavirus pandemic, which has infected more than 78 million people and killed 927,000 in the United States.[2]  The State of New York has been especially hard hit: 4.8 million people have been infected and 66,000 have been killed.[3]

2.      Plaintiffs are hospital-based emergency care providers who practice medicine throughout the State of New York.  As emergency care providers, Plaintiffs are essential workers who have risked their lives every day on the front lines of the pandemic.

3.      Plaintiffs are also legally obligated to treat all patients who present at their emergency departments, no matter the patients' insurance status or ability to pay for their care.

4.      Defendant UnitedHealth Group, Inc. ("UHG") and its subsidiaries comprise the largest commercial health insurer in the United States, reporting $6.7 billion in profits for the second quarter of 2020, a 97% increase from the same period in 2019.[4]  They insure 80 million people and control a significant percentage of the commercial healthcare marketplace.

---

[1] Plaintiffs amend the Complaint pursuant to the Order dated February 23, 2022, attached as Exhibit A.

[2] *See, e.g.*, *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. Times, https://www.nytimes.com/interactive/2021/us/covid-cases.html (last visited Feb. 17, 2022).

[3] *Id.*

[4] Jocelyn Grzeszczak, *U.S.' Largest Health Insurer Reports $6.7B In Profits Amid COVID, As N.Y. Cuts State Rates*, Newsweek (Aug. 14, 2020, 2:37 PM), https://www.newsweek.com/us-largest-health-insurer-reports-67b-profits-amid-covid-ny-cuts-state-rates-1525210.

2

5.      As described in detail below, Defendants designed and implemented a scheme to unjustly enrich themselves by paying Plaintiffs less than the reasonable value of the emergency care provided and retaining the benefits obtained as a result thereof.

## Parties

### A.      Plaintiffs

6.      Plaintiffs Emergency Physicians of New York PC, Buffalo Emergency Associates LLP, Exigence Medical of Binghamton PLLC, and Emergency Care Services of New York PC are groups of emergency care providers who staff the emergency rooms of nineteen hospitals in seventeen municipalities across the State of New York. Each Plaintiff has a principal place of business in New York and regularly provides emergency medical care to United's members.

### B.      Defendants

7.      Defendant UnitedHealth Group is a corporation organized under the laws of the State of Delaware with its principal place of business at 9900 Bren Road East, Minnetonka, Minnesota 55343.

8.      Defendant United HealthCare Services, Inc. is a corporation organized under the laws of the State of Minnesota, with its principal place of business in the State of Minnesota. United HealthCare Services, Inc. is responsible for paying for emergency medical services provided by Plaintiffs to one or more of United's members.

9.      Defendant UMR, Inc. is a corporation organized under the laws of the State of Delaware, with is principal place of business in the State of Wisconsin.  UMR, Inc. is responsible for paying for emergency medical services provided by Plaintiffs to one or more of United's members.

3

10.     Defendant UnitedHealthcare Service LLC is a limited liability company organized under the laws of the State of Delaware.  UnitedHealth Group wholly-owns and is the sole member of UnitedHealthcare Service LLC.  UnitedHealthcare Service LLC is responsible for paying for emergency medical services provided by Plaintiffs to one or more of United's members.

11.     Defendant UnitedHealthcare Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut. UnitedHealthcare Insurance Company is responsible for paying for emergency medical services provided by Plaintiffs to one or more of United's members.

12.     Defendant Oxford Health Plans LLC is a limited liability company organized under the laws of the State of Delaware.  UnitedHealthcare Insurance Company wholly-owns and is the sole member of Oxford Health Plans LLC.  Oxford Health Plans LLC is responsible for paying for emergency medical services provided by Plaintiffs to one or more of United's members.

## Jurisdiction & Venue

13.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.  The amount in controversy exceeds $75,000.

14.     This Court has personal jurisdiction over the Defendants.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## Factual Allegations

**A.     Defendant UHG Owns, Controls and Directs the Subsidiary Defendants and Is the Ultimate Beneficiary of the Alleged Unjust Enrichment.**

16.     Defendant UHG is the parent corporation of more than 1,200 companies, including Defendants United HealthCare Services, Inc.; UMR, Inc.; UnitedHealthcare Service LLC;

4

UnitedHealthcare Insurance Company; and Oxford Health Plans LLC (collectively, the "Subsidiary Defendants" and all Defendants are referred to herein as "United" or "Defendants").

17.     The Subsidiary Defendants are not independent.  They act in concert under the direction and control of Defendant UHG.

18.     As described more fully below, Defendant UHG designed and implemented a scheme to unjustly enrich itself and its subsidiaries by controlling and directing the Subsidiary Defendants to pay Plaintiffs at rates below the reasonable value of the emergency care provided. Defendant UHG did so in order to generate additional and substantial fees (beyond the per month per member fees they collected from their self-insured clients) based upon an alleged "savings" calculated by the difference between the amount that would otherwise be owed (often defined as Plaintiff's billed charges in the Administrative Service Agreements between the Subsidiary Defendants and their self-insured clients) and the amount allowed or paid on the claims at issue in this dispute.  In short, the less United paid providers, the more money UHG and the Subsidiary Defendants made.

**B.     Plaintiffs Provided Emergency Care to United's Members and United Paid Money on Every Claim Submitted by Plaintiffs, Albeit at an Amount Substantially Less Than the Reasonable Value of the Services.**

19.     During the period beginning in January 2018 and ending in July 2021, Plaintiffs provided emergency care to more than 7,500 patients ("United's Members") covered by commercial insurance plans sold and/or administered by United (the "Disputed Claims").[5]

---

[5] Because Plaintiffs continue to provide emergency medical services to United's Members, the Disputed Claims are continuing to accrue.

5

20.     None of the Disputed Claims relate to or involve any Medicare Advantage or managed Medicaid products.

21.     Before rendering emergency care, Plaintiffs did not, and could not, verify the United member's insurance status or ability to pay because federal and state law obligate Plaintiffs to treat all patients that arrive at the emergency rooms they staff.

22.     For example, under the federal Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. §§ 1395dd(a)-(b), (d), and (h), hospitals and physicians who staff hospital emergency rooms have a duty to "provide for an appropriate medical screening examination" when an individual comes to the emergency department.  If "the individual has an emergency medical condition," they are required to "stabilize the medical condition" without inquiry into "the individual's method of payment or insurance status."  *Id.*

23.     Hospitals are subject to civil liability for a violation of EMTALA's mandates, 42 U.S.C. § 1395dd(d)(2)(A), and "any physician who is responsible for the examination, treatment, or transfer of an individual in a participating hospital" who negligently violates EMTALA is subject to civil monetary penalties of up to $50,000 per violation.  42 U.S.C. § 1395dd(d)(1)(B).

24.     New York law goes even further than EMTALA and imposes criminal liability on emergency room physicians who fail to satisfy its requirements.  New York Public Health Law § 2805-b(2)(b) provides that "[a]ny licensed medical practitioner who refuses to treat a person arriving at a general hospital to receive emergency medical treatment . . . shall be guilty of a

misdemeanor and subject to a term of imprisonment not to exceed one year and a fine not to exceed one thousand dollars."[6]

25.     At some point, typically after Plaintiffs provided the emergency care to the United members, the hospital obtained the patient's insurance and demographic information and then sent that information to Plaintiffs.

26.     Thereafter, based on the insurance information obtained from the hospitals and the emergency care provided to United's Members, Plaintiffs submitted claims through a common United portal.

27.     After receiving the claims, United processed, determined an allowed amount, approved for payment, and made a payment on each of the claims at issue in this case.  Although they paid an amount on each and every claim at issue, the payment made was substantially less than the reasonable value of the emergency care provided by Plaintiffs.

**C.     Plaintiffs and United Did Not Have a Written Agreement That Established an Amount That Would Be Paid for the Emergency Care Provided.**

28.     All of the emergency care Plaintiffs provided to United's Members was provided on an out-of-network basis—meaning Plaintiffs and Defendants did not have a written agreement establishing a rate of payment for the care provided.

29.     Consequently, Plaintiffs were dependent on United to conduct business honestly and pay Plaintiffs the reasonable value of the emergency care provided to United's Members as

---

[6] Emergency room doctors are often also obligated to provide emergency medical care under their contractual arrangements with the hospitals.  Hospitals subject to EMTALA are permitted to contract for emergency services, provided they comply with certain regulatory requirements. 42 C.F.R. § 482.12.

required under New York law.  *See New York City Health & Hosps. Corp. v. Wellcare of New York, Inc.*, 937 N.Y.S.2d 540, 545 (N.Y. Sup. Ct. 2011); N.Y. Fin. Serv. Law § 605(a).

30.    Given the nature of these relationships, an equitable obligation arises to account for the benefit provided by Plaintiffs to United.

31.    In the absence of such an obligation, United would enrich themselves unjustly at the expense of Plaintiffs and their local communities.  This obligation requires that United pay Plaintiffs the reasonable value of the services rendered.

32.    Thus, United is obligated to pay Plaintiffs for the reasonable value of the services they provided.

**D.    United Takes Unfair Advantage of New York's Laws Protecting Patients.**

33.    Receiving payment from United for the reasonable value of their services was essential because, unlike other situations involving out-of-network providers, New York law shields United's Members from liability for Plaintiffs' Disputed Claims.  *See, e.g.*, N.Y. Fin. Serv. Law §§ 602(b)(2), 605(a)(1), 606; N.Y. Ins. Law § 3241(c).[7]

34.    These statutes and regulations ensure that United's members incur no liability for out-of-network emergency services greater than the member's in-network co-payments,

---

[7] These statutes and regulations provide that United "shall ensure that the insured shall incur no greater out-of-pocket costs for the emergency services than the insured or enrollee would have incurred with a health care provider that participates in the health care plan's provider network." N.Y. Fin. Serv. Law § 605(a)(1); *see also* N.Y. Fin. Serv. Law § 602(b)(2); N.Y. Ins. Law § 3241(c).  Whenever United fails to pay the Plaintiffs' full charges for a given claim for emergency services, United must provide its patients with notice, which explains to the patients, *inter alia*, that the patient "shall incur no greater out-of-pocket costs for the services than the insured would have incurred with a participating physician" and which "direct[s] the insured to contact the health care plan in the event that the non-participating physician bills the insured for the out-of-network service." N.Y. Comp. Codes. R. & Regs. tit. 23 § 400.5(a)(3).

8

coinsurance, and deductibles, and thereby effectively remove the patient entirely from payer-provider reimbursement disputes in New York.  As such, any effort by Plaintiffs to seek to collect the balance of an underpaid claim from United's members directly would be an exercise in futility, as United must ensure that the patient is not liable for any balance, must notify the patient of this fact, and must instruct the patient to direct any attempts to collect the balance bill to United on any claims that United had already previously adjudicated and underpaid.

35.     The structure provides United with an opportunity to retain a substantial benefit because it eliminates member abrasion and complaints that often occur when United directs healthcare providers to seek the balance of their bills from its members.

36.     It also turbo charges United's incentive to generate "shared savings" fees by paying less than the amount that would otherwise be owed and the amount ultimately allowed or paid for out-of-network emergency care like that provided by Plaintiffs.

**E.     United's First Foray Into Artificially Suppressing Reimbursement Rates: Ingenix**

37.     United's current scheme to deprive healthcare providers the reasonable value of their services can be traced to an earlier scheme operated through a wholly-owned United subsidiary formerly known as "Ingenix."

38.     An investigation into Ingenix by the New York Attorney General discovered that Ingenix's reimbursement system was "fraudulent" and "conflict-ridden."[8]

---

[8] Press Release, *Attorney General Cuomo Announces Historic Nationwide Reform Of Consumer Reimbursement System For Out-Of-Network Health Care Charges*, Office of the N.Y. Att'y Gen. (Oct. 27, 2009), https://ag.ny.gov/press-release/2009/attorney-general-cuomo-announces-historic-nationwide-reform-consumer.

Case 3:23-mc-00024-TAV-DCP   Document 1-1   Filed 04/03/23   Page 12 of 140   PageID #: 27

39.     The "Ingenix" scheme led to a settlement that, among other provisions, established a "new, independent database, not controlled by any insurer, to be used for determining fair and accurate reimbursement rates."[9]   The new independent database is operated by FAIR Health.

40.     Under the terms of the settlement, Defendant UHG paid $50 million to fund the FAIR Health database, which contains "reliable information about healthcare costs because each year health insurers around the country send [it] over 2 billion healthcare claim records, which are added to FAIR Health's database of more than 36 billion claim records."[10]   No providers submit pricing information, only insurers do so.  New York, Connecticut and many other states use the FAIR Health database as a guidepost for healthcare consumer protection.[11]

41.     The Ingenix scheme also led United to pay $350 million to settle a class action. The settlement agreement dictated that United "shall use [FAIR Health] as the basis for determining Allowed Amounts for Covered Out-Of-Network Services or Supplies" to the extent those plans or arrangements require payment based upon the "usual customary and reasonable" charges or similar language (including but not limited to "reasonable and customary," "average," or "prevailing" charges) for such services and supplies.[12]

---

[9] *In Re UnitedHealth Group Inc.*, Investigation No. 2008-161, Assurance of Discontinuance Under Executive Law § 63(15), 3.

[10] FAIR Health Consumer, About FAIR Health, https://www.fairhealthconsumer.org/#about (last visited Feb. 17, 2022).

[11] *Id.*

[12] Settlement Agreement Between United Healthcare Corporation, et. al. and Settling Plaintiffs (January 14, 2009), 14, https://www.sec.gov/Archives/edgar/data/731766/000119312509025587/dex992.htm.

42.     When the settlement with the Attorney General's Office was announced, Thomas L. Strickland, at the time the Executive Vice President and Chief Legal Officer of Defendant UnitedHealth Group, stated: "We are committed to increasing the amount of useful information available in the health care marketplace so that people can make informed decisions, and this agreement is consistent with that approach and philosophy . . . We are pleased that a not-for-profit entity will play this important role for the marketplace."[13]

43.     Since its establishment, United has publicly asserted to courts that FAIR Health "analyzes and groups medical procedures by codes, the geographical area where the procedures were performed, and the amount charged by the providers. This database is often used by private health insurers to calculate the 'usual and customary' fee for specific procedures and inform the amounts that they will be willing to pay to out-of-network providers." *UnitedHealthcare Servs., Inc. v. Asprinio*, 16 N.Y.S.3d 139, 145 (N.Y. Sup. Ct. 2015).

44.     United has represented that where payment for out-of-network services is to be made at the usual and customary rate, United "most commonly refer[s] to a schedule of charges created by FAIR Health, Inc. ('FAIR Health') to determine the amount of the payment."

45.     United's legal obligations to use FAIR Health and pay out-of-network claims at a rate predicated upon the usual, customary and reasonable charges terminated in or about 2015.

---

[13] Press Release, *Attorney General Cuomo Announces Historic Nationwide Health Insurance Reform; Ends Practice Of Manipulating Rates To Overcharge Patients By Hundreds Of Millions Of Dollars*, Office of the N.Y. Att'y Gen. (Jan. 13, 2009), https://ag.ny.gov/press-release/2009/attorney-general-cuomo-announces-historic-nationwide-health-insurance-reform-ends.

11

**F.     United's Current Scheme to Suppress Reimbursement Rates**

       **a.   "Shared Savings" Programs**

46.     After its obligation to use the FAIR Health databased ended, United began using and implementing a variety of methods to suppress reimbursement rates and generate additional fees above and beyond the per member per month fees it receives for administering employers' self-funded insurance plans.  These programs go by a variety of names, all of which United generically refers to as "shared savings" programs.  Most of these programs are implemented by United itself, although United also uses a similar program known as Data iSight, which is operated by MultiPlan, Inc.

47.     Under these "shared savings" programs—which are typically documented in Administrative Services Agreements between United and its self-insured clients—United takes a percentage of the difference between the amount that would have otherwise been payable to the out-of-network provider and the amount allowed or paid by United to adjudicate the claim.

48.     On information and belief, United's administrative services agreements—including the agreements with client in New York and applicable to the Disputed Claims—contain the following provision (with the fees varying by client) regarding shared savings fees:

> You will pay a fee equal to thirty-five percent (35%) of the "Savings Obtained" as a result of the Shared Savings Program described in Section 12. "Savings Obtained" means the amount that would have been payable to a health care provider, including amounts payable by both the Participant and the Plan, if no discount were available, minus the amount that is payable to the health care provider, again, including amounts payable by both the Participant and the Plan, after the discount is taken.

49.     United routinely calculates the "Savings Obtained" as difference between the provider's billed charge and the amount allowed by United.

50.     By way of example, if an emergency care provided charged $1,250 for the service, and United adjudicated the claim and allowed the provider $250 dollars, the "savings" obtained

would be the difference between those two amounts, or $1,000. United charges its clients a fee on that $1,000, typically between 30% and 50% of the "savings." In this example, and assuming a 40% fee, United would have generated a fee greater than it paid the provider for the emergency provider (i.e. 40% x $1,000 = $400, compared to the $250 allowed or paid to the provider). This is on top of the per-member-per-month fee that United is charging its self-insured clients.

51. The volume of claims processed under these programs generates hundreds of millions of dollars annually for United. And all of these "shared savings" fees are generated by providing the same service for which United is already being compensated on a per member per month basis—namely, the receipt, processing and adjudication of claims.

52. The shared savings fee revenues were material and important to United. United evaluated and analyzed the impact of the shared savings program in internal communications, internal presentations, external documents exchanged with MultiPlan, budgets, and financial statements.

### b. Benchmark Pricing Scheme Using Data iSight

53. More recently, United and MultiPlan implemented a new shared-savings program purporting to utilize MultiPlan's Data iSight tool. At no time material to this action did Plaintiffs negotiate with United, MultiPlan or Data iSight or agree to accept a discounted rate for its services, or to be bound by United's, MultiPlan's or Data iSight's undisclosed payment policies, pricing methodologies or rate schedules with respect to any of the Disputed Claims.

54. Notwithstanding the absence of any such agreement, United and MultiPlan have unilaterally applied an unlawful discount to the rates they have paid Plaintiffs for emergency services rendered to United's Members, under the guise of using Data iSight.

13

55.     United and Data iSight represent that the Data iSight methodology is defensible, transparent, objective and geographically adjusted.  However, these representations are false.

56.     United and MultiPlan's methodologies do not use externally validated data and are sometimes not even consistent amongst themselves.  None of United's payments at issue in this case are defensible, transparent, objective or geographically adjusted.

57.     For example, payments for claims from providers in different geographic locations show that claims purportedly repriced using Data iSight do not adjust for geographic differences but, instead, *uniformly* price out-of-network provider payments across geographic locations to pay the *identical rates*.

58.     Moreover, the payments for claims repriced under the guise of Data iSight are not transparent.

59.     Rather, United opted to use Data iSight pricing because it knew, based on MultiPlan's marketing and on meetings between United and Data iSight, that the payment rates Data iSight would produce would be artificially low.  Moreover, as part of the Data iSight "methodology," MultiPlan gave United the ability to override any methodology and actually dictate the reimbursement rate.  Thus, while United was publicly representing that the payment rates were the result of the Data iSight methodology, that representation was false.

60.     The details of United's relationship with MultiPlan, use of Data iSight, United's requested overrides, and other aspects of the benchmark pricing scheme are documented in internal communications, internal presentations, external documents exchanged with MultiPlan, presentations by MultiPlan, budgets, and financial statements.

61.     United's unlawful conduct gives rise to the following causes of action.

14

**Causes of Action**

**Count I:**     **Unjust Enrichment under New York Law (as against all Defendants)**

62.     Plaintiffs incorporate by reference the facts set forth above as though fully set forth herein.

63.     For the Disputed Claims, United has failed to pay Plaintiffs for the reasonable value of the services.

64.     Plaintiffs are entitled to be reimbursed the reasonable value of the emergency care provided to United's Members. In adjudicating the Disputed Claims, the Subsidiary Defendants failed to reimburse Plaintiffs the reasonable value of emergency care provided to those Members. That failure benefited the Subsidiary Defendants in several ways, including by allowing the Subsidiary Defendants to generate additional administrative fees and reimbursements that they would not have generated had they paid Plaintiffs the reasonable value of the emergency care provided to United's Members.

65.     As the owner of the Subsidiary Defendants, Defendant UHG benefited from the Subsidiary Defendants' failure to reimburse Plaintiffs the reasonable value of the services provided.  In particular, UHG received dividends and administrative fees and reimbursements generated by the Subsidiary Defendants' adjudication of medical claims, including the claims arising out of the emergency care Plaintiffs provided to more than 7,500 United Members. Because the benefits UHG received were at the Plaintiffs' expense, equity and good conscience require restitution of said benefits to Plaintiffs.

66.     In particular, Defendant UHG should be required to disgorge all benefits received as a result of the Subsidiary Defendants' failure to pay Plaintiffs the reasonable value of the services provided and remit such sums, including interest, to Plaintiffs.

67.     In total, United therefore has been enriched by the amount of the difference between (i) the reasonable value of Plaintiffs' services and (ii) the amount allowed by United, as well as the time-value of the money withheld from Plaintiffs.

68.     For all of the Disputed Claims, United's failure to pay Plaintiffs the reasonable value of their services comes at Plaintiffs' expense because Plaintiffs are entitled to payment at the reasonable value of the services they have rendered.

69.     It would be inequitable to permit United to retain the amount at issue. Plaintiffs are entitled to such amounts, which represent the difference between the reasonable value of the services Plaintiffs have rendered and the amounts allowed by United for such services, plus the time-value of that money.

70.     Furthermore, Plaintiffs conferred a benefit on United by providing valuable emergency medical care to their insureds, for which United was responsible for payment.

71.     In exchange for premiums and other forms of compensation, United owes its insureds an obligation to make sure the insureds receive covered medical services and to pay for the covered medical services.

72.     United voluntarily accepted, retained, and enjoyed, and continues to accept, retain, and enjoy, the benefits conferred on it by Plaintiffs, knowing that Plaintiffs expected to be paid the reasonable value of their services.

73.     United has been unjustly enriched by its failure and refusal to pay Plaintiffs the reasonable value of the emergency medical care provided to their insureds.

74.     It would be against equity and good conscience to allow United to reap a benefit by underpaying Plaintiffs for valuable emergency medical care provided to United insureds' that Plaintiffs were compelled to render.

16

75.     Plaintiffs seek compensation, as permitted by applicable law, in an amount which will continue to accrue through the date of trial as a result of United's continuing unjust enrichment, equal to (i) the difference between the amount United adjudicated as payable for the emergency medical care Plaintiffs rendered to United's insureds and the reasonable value of those services, plus (ii) the loss of use of that money.

**Count II:      Declaratory Relief (as against all Defendants)**

76.     Plaintiffs incorporate by reference the facts set forth above as though fully set forth herein.

77.     This is an action for declaratory relief pursuant 28 U.S.C. § 2201, which is necessary and appropriate to clarify the parties' respective rights, status, and legal relations concerning United's payment obligations to Plaintiffs based on the calculation of payment rates for the emergency services provided by Plaintiffs.

78.     All adverse parties are presently before the court.

79.     Plaintiffs have been, and continue to be, harmed by United's underpayments for emergency services based on the determination of fraudulent "reasonable" payment rates for emergency medical services rendered by Plaintiffs.

80.     Plaintiffs therefore seek a declaration establishing the appropriate payment rates and payment methodology to be used to prevent further harm to Plaintiffs.

81.     Plaintiffs specifically seek a determination that (i) United has an obligation to pay Plaintiffs for the services rendered at rates equal to the reasonable value of the emergency services rendered; (ii) the rates United calculated through MultiPlan using the Data iSight service are fraudulent; and (iii) the rates paid by United for the claims at issue are inadequate and violate United's obligation to pay Plaintiffs for their services rendered at a reasonable value.

82.     To avoid the potential for successive, separate actions enforcing Plaintiffs' rights, Plaintiffs seek a declaration from the Court stating that United is obligated to pay Plaintiffs prospectively for the emergency medical services rendered by Plaintiffs at the reasonable value thereof and that the Data iSight service shall not be used in the calculation of said rates.

**WHEREFORE**, Plaintiffs pray for relief and judgment against all Defendants, jointly and severally, as follows:

1. Payment for the reasonable value of services rendered by Plaintiffs to United's insureds;

2. Order the restitution of monies and property unlawfully obtained or retained by the Defendants;

3. Such other and further relief as the Court deems just and proper.

## Jury Demand

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on any issue triable of right by a jury.

Dated: February 24, 2022

s/ Wendy H. Schwartz
**BINDER & SCHWARTZ LLP**
Wendy H. Schwartz
Sarah Dowd
366 Madison Avenue, 6th Floor
New York, NY 10017
(212) 510-7008
wschwartz@binderschwartz.com
sdowd@binderschwartz.com

**LASH & GOLDBERG LLP**
Justin C. Fineberg
Jonathan Siegelaub
Miami Tower
100 SE 2nd Street, Suite 1200
Miami, FL 33131-2131
(305) 347-4040
jfineberg@lashgoldberg.com
jsiegelaub@lashgoldberg.com

*Counsel for Plaintiffs*

19

# EXHIBIT 3

## O'Melveny

O'Melveny & Myers LLP     T: +1 212 326 2000
Times Square Tower     F: +1 212 326 2061
7 Times Square     omm.com
New York, NY 10036-6537

October 12, 2022

Ethan M. Scapellati
D: +1 212 728 5844
escapellati@omm.com

**VIA PROCESS SERVER AND CERTIFIED US MAIL**

TeamHealth Holdings, Inc.
265 Brookview Centre Way, Suite 400
Knoxville, TN 37919-4052

Re:    *Emergency Physician Servs. of New York, Buffalo, et al., v. UnitedHealth Grp., Inc.,*
      <u>Case No. 1:20-cv-09183</u>

Dear Sir/Madam,

     Enclosed please find a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action directed to the Custodian of Records of TeamHealth Holdings, Inc. The documents should be delivered to O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036 on November 11, 2022, or may be delivered electronically to me, Ethan Scapellati, counsel for UnitedHealth Group, Inc. United HealthCare Services, Inc., UMR, Inc., UnitedHealthcare Service LLC, UnitedHealthcare Insurance Company, and Oxford Health Plans LLC in the matter captioned above, at escapellati@omm.com. Upon receipt of this letter and the enclosed subpoena and addendum, you may contact me by email at the above address, or by telephone at 212-728-5844, should you have any questions.

Sincerely,

Ethan M. Scapellati

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| Emergency Physicians Services of New York, et al. | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.    20-CV-09183 |
| UnitedHealth Group, Inc., et. al | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:               Team Health Holdings, Inc.
             265 Brookview Centre Way, Suite 400; Knoxville, TN 37919-4052
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached.

| Place: O'Melveny & Myers, Ethan Scapellati, Times Square Tower, 7 Times Square, New York, NY 10036 | Date and Time: <br> 11/11/2022 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     10/12/2022

*CLERK OF COURT*

                                       OR

_____          _____
*Signature of Clerk or Deputy Clerk*             *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    UnitedHealth Group, Inc., et al.                               , who issues or requests this subpoena, are:

O'Melveny & Myers, Ethan Scapellati, Times Square Tower, 7 Times Square, New York, NY 10036, escapellati@omm.com, (212) 326-2000

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 20-CV-09183

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                      *Server's signature*

                               _____
                                      *Printed name and title*

                               _____
                                      *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## I. **DEFINITIONS**

1. "Action" refers to the above-captioned litigation that is pending in the United States District Court, Southern District of New York, Case No. 1:20-cv-09183.

2. "Agreement(s)" means any type of contract, including, but not limited to, a participation agreement, managed care agreement, network agreement, letter of intent, letter of agreement, amendment to agreement, or similar document.

3. "Blackstone" means Blackstone Group Inc., including any of its agents, contractors, subcontractors, employees, assigns, delegates, subordinates, affiliates, predecessors, successors, and any corporation, partnership, private equity firm, or other legal entity directly or indirectly owned or controlled by, or which directly or indirectly owns or controls, Blackstone.

4. "Charge" or "Charges" means the amount charged for a particular service by a Professional Provider, as reflected in their applicable Chargemaster at the time of that service, as well as each and every component thereof.

5. "Chargemaster" refers to the list of TeamHealth Plaintiffs' Charges for all billable services and items to a patient or a Payor, which captures the amount TeamHealth Plaintiffs bill for each procedure, service, supply, prescription drug, diagnostic test, and other medical services.

6. "Communication" or "Communications" means, without limitation, the transmission of a word, statement, fact, idea, Document (as defined below), instruction, demand, or question, and includes all discussions, conversations, meetings, conferences, telephone conversations, interviews, negotiations, Agreements, understandings, cards, letters, correspondence, telegrams, telexes, electronic mail, voicemail, or other forms of written or verbal interchange, however transmitted or stored, including reports, notes, memoranda, lists, agenda, and other records of any Communications.

7. "Complaint" means and refers to the amended Complaint filed on or about February

24, 2022 (Dkt. 97), in the above-captioned litigation.

8. "CPT Code" means Current Procedural Terminology Code.

9. "Defendants" mean UnitedHealth Group, Inc., United HealthCare Services, Inc., UMR, Inc., UnitedHealthcare Service LLC, UnitedHealthcare Insurance Company, and Oxford Health Plans LLC.

10. "Document" or "Documents" means the original or any copy thereof and any non-identical copy, whether different from the original because of notations made on or attached to such copy, or otherwise, of any written (including handwritten, printed, mimeographed, lithographed, duplicated, typed, or graphic, photographic, or electronic) matter of any kind or nature, and shall include, without limiting the generality of the foregoing, all letters, telegrams, correspondence, contracts, Agreements, notes, reports, memoranda, mechanical or electronic sound recordings or transcripts thereof, memoranda of telephone or personal conversations or of meetings, conferences, minutes, board of directors' minutes, studies, reports, analyses, interoffice Communications, books of account, ledgers, work sheets, vouchers, receipts, canceled checks, money orders, invoices, purchase orders, and bills of any nature whatsoever.

11. "Emergency Medicine Services" means any outpatient services for an emergency medical condition, including a severe medical condition that comes on suddenly, needs immediate medical care, or leads a person with average knowledge of health and medicine to believe that, without immediate medical care, it could result in danger to life or health, loss of a bodily function, or loss of function to a body part or organ.

12. "Person," "Persons," "Individual," or "Individuals" as used herein, shall mean and includes, without limitation, any natural person, association, partnership, corporation, firm, professional corporation, proprietorships, other business entity, municipal corporation, legislative

body, or other governmental agency, bureau, division, department, commissioner, or office.

13. "Relating to" or "Referring To" means relating to, referring to, or pertaining in any way, directly or indirectly, to a document or class of documents, or an event, act or occurrence, and includes, without limitation, comprising, constituting, analyzing, describing, evidencing, comparing, summarizing, discussing, relating to, showing, referring to, forming the basis of, containing, or supporting the event, act, or occurrence.

14. "Relevant Period" means the time period from January 1, 2017 to the present.

15. "TeamHealth Emergency Medicine Practices" means all entities that provide Emergency Medicine Services in the New York market in which TeamHealth has an ownership interest or which TeamHealth controls in whole or part.

16. "New York Market" refers to the geographic areas within the State of New York in which any of the TeamHealth Plaintiffs rendered Emergency Medical Services.

17. "Payor(s)" means any health plan, the operator or administrator of any health plan including, but not limited to, government payers, commercial payers, managed care organizations, private payers, and/or individual payers.

18. "TeamHealth Plaintiffs," "You," and "Your" refer to Plaintiffs Emergency Physician Services of New York, Buffalo Emergency Associates, Exigence Medical of Binghamton, and Emergency Care Services of New York and their past or present officers, directors, employees, corporate parents, subsidiaries, successors, predecessors, affiliates, agents, subcontractors and any other Persons or entities who obtained or maintained information on its or their behalf.

19. "Team Health" or "TeamHealth" means "Team Health Holdings, Inc." including any of its agents, contractors, subcontractors, employees, assigns, delegates, subordinates,

affiliates and any corporation, partnership, private equity firm, or other legal entity directly or indirectly owned or controlled by, or which directly or indirectly owns or controls Team Health.

## **INSTRUCTIONS**

1.     In responding to these document requests, You are required to obtain and furnish all information available to You and any of Your employees, agents, representatives, or attorneys and to obtain and furnish all documents, written and/or electronic, that are in Your possession or control, or in the possession or under the control of any of Your employees, agents, representatives or attorneys.

2.     The terms "and" and "or" shall be construed conjunctively or disjunctively; the past tense shall be construed to include the present tense, and vice versa; and the singular shall be construed to include the plural, and vice versa; all to bring within the scope of the request all responses that otherwise might be construed outside of its scope.

3.     If any privilege is asserted as to any document required to be produced hereby:

   (a) identify each such document by stating (i) the type of document, (ii) its general subject matter, (iii) the date of the document, and (iv) the identity of each person who prepared, signed or participated in the preparation of the document, as well as each addressee and recipient;

   (b) state the precise nature of the privileged claimed;

   (c) state the basis for the privilege claimed relative to the specific information contained in the document;

   (d) state all facts contained within the document, deleting only opinions, theories, mental impressions and non-factual statements;

4.     If any document was, but is no longer, in Your possession, custody or control, provide the following information:

   (a) identify the document;

   (b) state the disposition of the document and the date such disposition was made;

(c) identify the present custodian of the document and state his address or, if the document no longer exists, so state;

(d) identify the person who made the decision regarding the disposition of the document.

5.    Timeframe:  Unless otherwise specified, the time period applicable to the Requests means is January 1, 2017 to present.

## REQUESTS

1.    A prospectus or similar Documents describing You or Your business provided to Blackstone, including Documents referring to TeamHealth Plaintiffs.

2.    A prospectus or similar Documents describing Blackstone or Blackstone's business provided to You, including Documents referring to TeamHealth Plaintiffs.

3.    A prospectus or similar Documents describing TeamHealth Plaintiffs or TeamHealth Plaintiffs' business provided to You by TeamHealth Plaintiffs.

4.    A prospectus or similar Documents describing TeamHealth Plaintiffs or TeamHealth Plaintiffs' business provided by You to TeamHealth Plaintiffs.

5.    Any prospectus or similar Documents for Blackstone that refer or relate to TeamHealth.

6.    All Documents or Communications between You and Blackstone Relating to TeamHealth Plaintiffs' Charges.

7.    All Documents or Communications between You and Blackstone Relating to increasing or maximizing reimbursements from Payor(s).

8.    All Documents or Communications Relating to the disbursement of profits from TeamHealth Plaintiffs to TeamHealth or from TeamHealth to Blackstone.

9.    All Documents Relating to whether the Professional Providers who provided the Emergency Medicine Services which are at issue in this Action are Your employees or are

Page **5** of **9**

independent contractors.

10.     All Documents Relating to the acquisition or attempted acquisition of TeamHealth Emergency Medicine Practices from 2017 to present.

11.     All Documents Relating to the setting of Charges or amending or creating new Chargemasters for TeamHealth Plaintiffs, including all data or records relied on to determine TeamHealth Plaintiffs' Charges.

12.     All Documents, including but not limited to Communications, analyses, evaluations, and strategy reports, relating to Chargemasters reflecting TeamHealth Plaintiffs' Charges for every CPT code associated with the claims submitted by You or TeamHealth Plaintiffs to Defendants during the Relevant Period.

13.     All Documents reflecting whether Blackstone provided any input in, helped develop, or had any role in setting the amount that was charged, or the amount that was collected, for any of TeamHealth Plaintiffs' Charges.

14.     All Communications, including internal Communications, Relating to the setting of Charges or amending or creating new Chargemasters for TeamHealth Plaintiffs.

15.     All Communications, including internal Communications, comparing set Charge levels to competitors or other benchmarks which include the New York market.

16.     Data Relating to the amounts that TeamHealth Emergency Medicine Practices bill patients covered by Medicare or patients who participate in Medicare Advantage plans.

17.     Data Relating to the amounts that TeamHealth Emergency Medicine Practices collect from patients covered by Medicare or patients who participate in Medicare Advantage plans.

18.     Documents Relating to the budgets and profit and loss statements developed, used,

or maintained by You that encompass or include TeamHealth Emergency Medicine Practices.

19.     Documents Relating to the costs for TeamHealth Emergency Medicine Practices to perform Emergency Medicine Services during the Relevant Period in the New York market.

20.     All policies and procedures for excusing payment or balance billing for Emergency Medicine Services provided by TeamHealth Emergency Medicine Practices in the New York market during the Relevant Period.

21.     All Documents and Communications Relating to any policies or procedures, whether written or not, for excusing payment and balance billing for Emergency Medicine Services provided by TeamHealth Emergency Medicine Practices in the New York market during the Relevant Period.

22.     All Documents Relating to any policies or procedures, whether written or not, for determining how to bill services provided by Professional Providers employed or independently contracted by TeamHealth or practices by TeamHealth Emergency Medicine Practices in the New York market during the Relevant Period.

23.     All Documents, including policies or procedures, providing and determining minimum threshold amounts or other standards or triggers for pursuing automatic appeals or other administrative remedies for Professional Providers employed or independently contracted by TeamHealth or practices by TeamHealth Emergency Medicine Practices in the New York market during the Relevant Period.

24.     Documents identifying all collection agencies in which You have an ownership interest or which You control, in whole or part, who provide services to You Relating to Professional Providers that provide Emergency Medicine Services in the New York market during the Relevant Period.

25.     All Documents Relating to audits of billing practices of all TeamHealth Emergency Medicine Practices applicable to Emergency Medicine Services provided in New York during the Relevant Period.

26.     All Agreements or contracts, including joint venture Agreements, between You and TeamHealth Emergency Medicine Practices during the Relevant Period.

27.     All Agreements or contracts between You and any wrap or rental networks applicable to Emergency Medicine Services provided in the New York market during the Relevant Period.

28.     All Agreements or contracts, including joint venture Agreements, between TeamHealth Emergency Medicine Practices and hospitals and/or facilities in the New York market to provide Emergency Medicine Services during the Relevant Period.

29.     All Agreements or contracts between You and any Claims Reimbursement/Collection Vendor, including CollectRx Inc, that encompassed or applied to the New York market or to claims for Emergency Medicine Services provided in the New York market during the Relevant Period.

30.     All Documents reflecting any Communications between TeamHealth and MultiPlan, Inc. Relating to the Charges provided by Professional Providers owned or controlled by TeamHealth in the New York market during the Relevant Period.

31.     All Documents reflecting any Communications between TeamHealth and any Claims Reimbursement/Collection Vendor, including CollectRx Inc., Relating to the Charges provided by Professional Providers owned or controlled by TeamHealth in the New York market during the Relevant Period.

32.     All Documents or Communications, including but not limited to supporting data

and analyses, Relating to the assertion that "[i]n fact, three of four patients who visit TeamHealth's affiliated emergency departments reimburse us for our services below our cost of $150 per patient visit, meaning the commercial population remains the only viable source of positive revenue for us" which was posted on TeamHealth's website during the relevant period.

33.    All Documents reflecting any Communications Relating to any analyses of New York's independent dispute resolution entity and the application of its rate provisions as codified in NYFSL § 605.

# EXHIBIT 4

[EXTERNAL MESSAGE]

Anwar,

Thank you for following up on our November 22 meet and confer. Please see our responses below to the points you raised.

**1)  During our meeting, we discussed the various requests made to TeamHealth concerning the production of Blackstone-related documents and communications.  You advised that, while you question the relevancy of such discovery, you do not expect to find any responsive documents. You advised that you will perform the search and confirm there are no responsive documents (assuming that is the case).**

You are correct that we question the relevance of such discovery. During our call, we confirmed that Blackstone was not involved in setting charges.  We produced a few documents in response to the Pennsylvania subpoena. We did not agree to perform a separate search; you informed us that you would confer with Pennsylvania counsel and follow up with us as needed.

**2) We also discussed documents and communications relating to the setting of charges and market rate information.  You advised that Plaintiffs have full access to all of the same custodians and ESI servers that you do; therefore, any information discovered as a result of their search would encompass any materials that are in your possession.**

This is correct.

**3) We also discussed the production of budgetary, cost/expense, revenue, and balance billing information.  You similarly advised that Plaintiffs have full access to the same custodians and ESI servers that you do; therefore, any information discovered as a result of their search would encompass any materials that are in your possession.**

This is correct.

**4) Lastly, we discussed the production of audits of billing practices and communications with Multiplan.  You advised that this information, like the other information, is similarly in the possession of Plaintiffs.**

This is correct.

**You advised that you would report back on the following:**
  - **Confirm that there are no responsive documents.**

- **Confirm that there are no custodians or servers to which plaintiffs would not themselves have full access.**
- **Identify the specific custodians at TeamHealth Holdings that might be in possession of documents responsive to #s 2, 3, and 4 above, so that we can ensure that plaintiffs ran the necessary searches on the necessary custodians.**

Our list of follow-up items does not match yours. The list that I went through orally at the end of our call is as follows:

1. Confirm that the custodians searched regarding chargemasters/setting of charges for Plaintiffs encompass anyone we would search for Team Health Holdings.
2. Confirm that the custodians searched regarding the $150 cost per visit figure encompass anyone we would search for Team Health Holdings.
3. Confirm that Plaintiff have access to all budgets and financial documents that are maintained for the entities in question and that Team Health Holdings does not have any additional/different access.
4. Confirm that the custodians searched regarding communications with Mulitplan encompass anyone we would search for Team Health Holdings.

We are in the process of confirming these items, and we will get you the information that we have next week. I am out of the office at the end of this week, so the December 2 date is not feasible. Please let me know if we need to discuss that point.

By agreeing to the above, Team Health Holdings does not concede that any of the subpoena requests seek documents relevant or proportional to the underlying litigation, including but not limited to budgetary, cost/expense, revenue, and balance billing information. Team Health Holdings expressly reserves all rights and objections.

Thank you,
Caldwell

**Caldwell G. Collins**
cacollins@bakerdonelson.com
Direct: 615.726.5762
Fax: 615.744.5762

> **From:** Graves, Anwar <agraves@omm.com>
> **Sent:** Tuesday, November 29, 2022 7:21 AM
> **To:** Collins, Caldwell <cacollins@bakerdonelson.com>; Carter, Cynthia <ccarter@bakerdonelson.com>; Scapellati, Ethan M. <escapellati@omm.com>
> **Cc:** Shockley, Gary <gshockley@bakerdonelson.com>; Jacob, Greg <gjacob@omm.com>
> **Subject:** RE: Emergency Physician Servs. of New York, Buffalo, et al., v. UnitedHealth Grp., Inc.
>
> Good morning all,
>
> We write to memorialize our November 22 meet and confer.

1) During our meeting, we discussed the various requests made to TeamHealth concerning the production of Blackstone-related documents and communications. You advised that, while you question the relevancy of such discovery, you do not expect to find any responsive documents. You advised that you will perform the search and confirm there are no responsive documents (assuming that is the case).

2) We also discussed documents and communications relating to the setting of charges and market rate information. You advised that Plaintiffs have full access to all of the same custodians and ESI servers that you do; therefore, any information discovered as a result of their search would encompass any materials that are in your possession.

3) We also discussed the production of budgetary, cost/expense, revenue, and balance billing information. You similarly advised that Plaintiffs have full access to the same custodians and ESI servers that you do; therefore, any information discovered as a result of their search would encompass any materials that are in your possession.

4) Lastly, we discussed the production of audits of billing practices and communications with Multiplan. You advised that this information, like the other information, is similarly in the possession of Plaintiffs.

You advised that you would report back on the following:
- Confirm that there are no responsive documents.
- Confirm that there are no custodians or servers to which plaintiffs would not themselves have full access.
- Identify the specific custodians at TeamHealth Holdings that might be in possession of documents responsive to #s 2, 3, and 4 above, so that we can ensure that plaintiffs ran the necessary searches on the necessary custodians.

We ask that you complete the above agreed tasks by December 2, 2022.


Thanks,
Anwar


**O'Melveny**

**Anwar L. Graves**
Counsel
agraves@omm.com
O: +1-202-383-5191
_____

O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC  20006
Website | LinkedIn |
Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the*

*sender immediately by reply e-mail and then delete this message.*

**From:** Graves, Anwar
**Sent:** Wednesday, November 16, 2022 11:30 AM
**To:** 'Collins, Caldwell' <<u>cacollins@bakerdonelson.com</u>>; Carter, Cynthia
<<u>ccarter@bakerdonelson.com</u>>; Scapellati, Ethan M. <<u>escapellati@omm.com</u>>
**Cc:** Shockley, Gary <<u>gshockley@bakerdonelson.com</u>>; Jacob, Greg <<u>gjacob@omm.com</u>>
**Subject:** RE: Emergency Physician Servs. of New York, Buffalo, et al., v. UnitedHealth Grp.,
Inc.

Hi Caldwell,

Let's do Tuesday at 2pm CT if that time is still available for you.

Thanks,
Anwar

## O'Melveny

**Anwar L. Graves**
Counsel
<u>agraves@omm.com</u>
O: +1-202-383-5191
––––––––––––––––––––
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
<u>Website</u> | <u>LinkedIn</u> |
<u>Twitter</u>

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Collins, Caldwell <<u>cacollins@bakerdonelson.com</u>>
**Sent:** Monday, November 14, 2022 3:27 PM
**To:** Graves, Anwar <<u>agraves@omm.com</u>>; Carter, Cynthia <<u>ccarter@bakerdonelson.com</u>>;
Scapellati, Ethan M. <<u>escapellati@omm.com</u>>
**Cc:** Shockley, Gary <<u>gshockley@bakerdonelson.com</u>>; Jacob, Greg <<u>gjacob@omm.com</u>>;
Collins, Caldwell <<u>cacollins@bakerdonelson.com</u>>
**Subject:** RE: Emergency Physician Servs. of New York, Buffalo, et al., v. UnitedHealth Grp.,
Inc.

[EXTERNAL MESSAGE]

Anwar,

Unfortunately, I'm in a deposition on Thursday and in court on Friday.

We are available for a meet and confer on Monday, 11/21 between 1-4:30 PM Central or

Tuesday 11/22 between 2-4 PM Central, with Tuesday being preferable for some of our team members, if possible.

Thanks,
Caldwell

**Caldwell G. Collins**
cacollins@bakerdonelson.com
Direct: 615.726.5762
Fax: 615.744.5762

> **From:** Graves, Anwar <agraves@omm.com>
> **Sent:** Monday, November 14, 2022 8:44 AM
> **To:** Carter, Cynthia <ccarter@bakerdonelson.com>; Scapellati, Ethan M. <escapellati@omm.com>
> **Cc:** Shockley, Gary <gshockley@bakerdonelson.com>; Collins, Caldwell <cacollins@bakerdonelson.com>; Jacob, Greg <gjacob@omm.com>
> **Subject:** RE: Emergency Physician Servs. of New York, Buffalo, et al., v. UnitedHealth Grp., Inc.
>
> Thanks Cindy,
>
> Is Ms. Collins available to meet and confer regarding this response later this week? We're free anytime on Thursday or Friday after noon.
>
> Thanks,
> Anwar
>
> # O'Melveny
> **Anwar L. Graves**
> Counsel
> agraves@omm.com
> O: +1-202-383-5191
> _____
> O'Melveny & Myers LLP
> 1625 Eye Street, NW
> Washington, DC 20006
> Website | LinkedIn |
> Twitter
>
> *This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

> **From:** Carter, Cynthia <ccarter@bakerdonelson.com>
> **Sent:** Thursday, October 27, 2022 7:47 PM
> **To:** Scapellati, Ethan M. <escapellati@omm.com>
> **Cc:** Shockley, Gary <gshockley@bakerdonelson.com>; Collins, Caldwell <cacollins@bakerdonelson.com>
> **Subject:** Emergency Physician Servs. of New York, Buffalo, et al., v. UnitedHealth

Grp., Inc.

[EXTERNAL MESSAGE]

Mr. Scapellati, attached please find correspondence from Caldwell Collins regarding the above matter.  Let me know if you have any problems opening the attachment.

Thank you,

**Cindy Carter (sent on behalf of Caldwell Collins)**
Legal Secretary to Gary C. Shockley, M. Kim Vance,
    Charles McLaurin, Mackenzie Hobbs, and Sarah Murray

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
**Effective March 20, 2021:**
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Direct: 615.726.5545
Fax: 615.744.5545
Email: ccarter@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in
Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, North Carolina, South Carolina, Tennessee, Texas, Virginia and
Washington, D.C.

NOTICE: This electronic mail transmission with any attachments may constitute an attorney-client communication, protected health information (PHI) or other confidential information that is in fact confidential, legally protected from disclosure and/or protected by the attorney-client privilege. If you are the intended recipient, please maintain confidentiality and be aware that forwarding this e-mail to others may result in a waiver of these protections and privileges and regardless electronic communications may be at times illegally accessed and viewed. If you are not the intended recipient, this e-mail is not intended for transmission to you, nor to be read, reviewed, used, distributed or even received by you or any other unauthorized persons. If you have received this electronic mail transmission in error, please double delete it from your system immediately without copying, reading or disseminating it, and notify the sender by reply e-mail, so that our address record can be corrected. Thank you very much.

# EXHIBIT 5

| | |
|---|---|
| **From:** | Michelle Sloss |
| **To:** | Scapellati, Ethan M. |
| **Cc:** | Wendy Schwartz; jfineberg@lashgoldberg.com; Sarah Dowd; Jonathan Siegelaub; Jacob, Greg |
| **Subject:** | RE: Emergency Physician Services of New York, et al. v. UnitedHealth Group, Inc., et al. - Fourth Set of RFPs |
| **Date:** | Friday, March 3, 2023 10:54:44 AM |

[EXTERNAL MESSAGE]

Ethan,

Over three months ago, we participated in a meet and confer with you and counsel for Team Health Holdings, Inc ("THHI"). During that call, both we and counsel for THHI (an entity that is not a party to this action) made clear that to the extent your subpoena to THHI sought relevant documents that would have hit on search terms and were within the files of agreed-upon custodians, those documents have been produced. However, we also made clear that most of the subpoena to THHI was objectionable due to it seeking irrelevant documents. Then, after THHI identified Tammy Tibbits as a potential custodian of relevant information, we sent you a letter on January 9, 2023, offering to discuss search terms to determine whether Ms. Tibbits' files contain additional responsive communications with Multiplan. You ignored that offer.

Instead, you persisted in a campaign to attack our entire ESI discovery process, wasting the time and resources of all parties, their discovery vendors, and the Court. As you know, on Wednesday, March 1, Judge Netburn denied your motion to compel supplemental ESI discovery holding that our process was reasonable. Moreover, even before your baseless challenges to our ESI, Judge Netburn held on January 19 that "[a]bsent a showing of need, any further ESI searches shall be limited to the previously-agreed upon custodians."

Now, at the end of fact discovery, you are once again seeking a re-do of document productions that were complete months ago. We will not search the files of additional custodians or conduct any additional ESI searches. We will formally respond to your Requests for Production before the 30-day deadline under Federal Rule 34. But, to preview that response, many (if not all) of your requests seek documents that are either clearly irrelevant to this action, have already been produced, or do not exist.


Regards,
Michelle

**Michelle M. Sloss**
Binder & Schwartz LLP
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 933-4656
Email: msloss@binderschwartz.com


**From:** Scapellati, Ethan M. <escapellati@omm.com>
**Sent:** Thursday, March 2, 2023 3:56 PM
**To:** Sarah Dowd <sdowd@binderschwartz.com>; Michelle Sloss <MSloss@binderschwartz.com>

**Cc:** Wendy Schwartz <wschwartz@binderschwartz.com>; jfineberg@lashgoldberg.com; Jonathan Siegelaub <jsiegelaub@lashgoldberg.com>; Jacob, Greg <gjacob@omm.com>
**Subject:** RE: Emergency Physician Services of New York, et al. v. UnitedHealth Group, Inc., et al. - Fourth Set of RFPs


*[EXT]*


Counsel:

Following up on my email below, please let us know when you are available to meet and confer.

Ethan

---

**From:** Scapellati, Ethan M.
**Sent:** Monday, February 27, 2023 10:43 AM
**To:** 'Sarah Dowd' <sdowd@binderschwartz.com>; Michelle Sloss <MSloss@binderschwartz.com>
**Cc:** Wendy Schwartz <wschwartz@binderschwartz.com>; jfineberg@lashgoldberg.com; Jonathan Siegelaub <jsiegelaub@lashgoldberg.com>; Jacob, Greg <gjacob@omm.com>
**Subject:** Emergency Physician Services of New York, et al. v. UnitedHealth Group, Inc., et al. - Fourth Set of RFPs

Counsel:

We write to request a meet-and-confer with respect to certain categories of documents requested from Team Health Holdings Inc. ("THHI") through Defendants' third-party subpoena. As you know, THHI informed us that (i) TeamHealth Plaintiffs would be in possession of any documents responsive to the subpoena's requests and (ii) the data of the same custodians (except that THHI indicated that Tammie Tibbits should be added to the list, and our own further review indicates that David Jones should have been identified as a relevant custodian as well) agreed upon for the ESI review of TeamHealth Plaintiffs' materials could be searched to identify those responsive for THHI.

Many of the documents in question should in Defendants' view have been produced in response to other RFPs that were served on TeamHealth Plaintiffs, but to remove any ambiguity as to TeamHealth Plaintiffs' obligation to produce the documents they have access to that we previously requested from THHI, we are now also serving those requests directly on TeamHealth Plaintiffs. If THHI was wrong, and TeamHealth Plaintiffs do not have access to these documents, then we will take immediate measures to secure them directly from THHI.

Please let us know your availability for a call on Tuesday, Wednesday, or Thursday. We note that we have also included a handful of clean-up RFPs related to topics the parties have long been discussing, which we do not envision needing to be discussed at this particular meet and confer, although we would be willing to do so if TeamHealth Plaintiffs

prefer.

Ethan


## O'Melveny

**Ethan M. Scapellati**
Counsel
escapellati@omm.com
O: +1-212-728-5844

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

# EXHIBIT 6



1600 WEST END AVENUE
SUITE 2000
NASHVILLE, TENNESSEE 37203

MAILING ADDRESS:
P.O. BOX 331884
NASHVILLE, TENNESSEE 37203

PHONE: 615.726.5600

www.bakerdonelson.com

CALDWELL G. COLLINS, SHAREHOLDER
**Direct Dial:** 615.726.5762
**Direct Fax:** 615.744.5762
**E-Mail Address:** cacollins@bakerdonelson.com

March 10, 2023

**<u>Via Email and U.S. Mail</u>**
Ethan M. Scapellati
Helen L. Galloway
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6547
escapellati@omm.com
hgalloway@omm.com

> Re:    *Emergency Physician Servs. of New York, Buffalo, et al., v. UnitedHealth Grp.,
> Inc.,* Case No. 1:20-cv-09183

Dear Counsel:

I write in response to your letter of March 7, 2023 at 5:04 PM, to which you require a response "no later than" March 10, 2023. Nothing in this letter constitutes a waiver of any right, claim, defense, objection, or contention that THHI may now have or hereafter acquire, all of which are expressly reserved.

As you know, our last correspondence on this matter was on December 19, 2022, where we provided information that you requested in our meet and confer process following THHI's objections to United's third-party subpoena. You are correct that we advised you that the TeamHealth Plaintiffs have full access to the same documents and communications, including ESI, that THHI does. That remains the case. To the extent that you believe there are "gaps" in the Plaintiffs' productions, or to the extent you contend the Plaintiffs have "refused a request to meet and confer on these documents" or "refused to confirm that they possess them," that is a matter for you to raise with the Plaintiffs or the Court in New York. Your vague statement that you "know that THHI does have possession and control of these documents and that in most instances THHI generated or created them" does nothing to change this conclusion and is misguided regardless: THHI is an intermediate holding company for various operating affiliates and has no employees.

4865-2898-8729v1
2943270-000053 10/19/2022

ALABAMA • FLORIDA • GEORGIA • LOUISIANA • MARYLAND • MISSISSIPPI • NORTH CAROLINA •
SOUTH CAROLINA • TENNESSEE • TEXAS • VIRGINIA • WASHINGTON, D.C.

Ethan M. Scapellati
Helen Galloway
March 10, 2023
Page 2

      With regard to your "demand" that THHI produce items responsive to certain requests in the non-party subpoena, I first call your attention to the fact that THHI has objected to your entire subpoena. Second, you mischaracterize the Davidson County Circuit Court's order on the non-party subpoena served by United in the separate matter pending in Pennsylvania. That court did not "determine[] that these documents are relevant," as you state. Rather, it denied THHI's motion to quash the subpoena without a single ruling or comment on its substance. Third, the requests regarding charges or profits in the Pennsylvania case were specific to the Pennsylvania Plaintiffs and are irrelevant here. Fourth, the documents searched for and produced by THHI in the Pennsylvania matter were in response to requests that had *not* been propounded to the Plaintiffs in that matter. Here, not only did the requests that you list overlap with search terms employed by the Plaintiffs as a result of the parties' fully-negotiated ESI protocol, but also we understand that you have propounded these very requests—6, 7, 8, 13, 26, and 32—directly to the Plaintiffs in New York. (*See* Defendant's Fourth Set of Requests for Production to TeamHealth Plaintiffs). Moreover, you now ask THHI to perform a duplicate ESI search and production, including a custodian whom we disclosed in December and who was the subject of an offer to confer from the Plaintiffs, in a clear attempt to end run the extensive ESI protocol established in New York, not to mention orders of the Court.

      We have told you in no uncertain terms that THHI does not have anything more than the Plaintiffs have. Your eleventh-hour attempt to enforce an objectionable, duplicative, and abusive subpoena to avoid the discovery process and jurisdiction of the Southern District of New York is an improper use of Rule 45. See Fed. R. Civ. P. 45.

      If you have further questions regarding any of the above, please let me know.

          Sincerely,

          *Caldwell Collins*

          Caldwell G. Collins

Cc:    Gary C. Shockley

# EXHIBIT 7

IN THE SECOND CIRCUIT COURT OF TENNESSEE
FOR DAVIDSON COUNTY

| | | |
|---|---|---|
| EMERGENCY SERVICES of PA, P.C., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 22FS132 |
| | ) | Notice of Entry Requested |
| UNITED HEALTHCARE, INC. | ) | |
| Defendant, | ) | |
| | ) | |
| TEAM HEALTH HOLDINGS, INC. | ) | |
| Movant. | ) | |

## ORDER REGARDING MOTION TO QUASH SUBPOENA ISSUED TO TEAM HEALTH HOLDINGS, INC.

Team Health Holdings, Inc.'s ("Team Health") Motion to Quash Subpoena came before the Court on October 3, 2022. The Court, having reviewed and considered the pleadings filed by the parties and oral arguments presented by counsel hereby ORDERS as follows:

(1)    Team Health Holdings, Inc.'s objection to the subpoena requiring the attendance of a Team Health corporate representative for a deposition in Pennsylvania is well-taken and the Court GRANTS the request for a protective order with respect to the location of this deposition. The deposition shall take place in Tennessee and counsel for the parties have represented to the Court that the deposition will take place in Tennessee.

(2)    In all other respects, the Motion to Quash is DENIED.

(3)    By agreement of the parties, Team Health Holdings, Inc. will commence productions on a rolling basis by October 31, 2022, and will provide full and complete productions of documents responsive to the document requests in the subpoena no later than November 4, 2022. Also by agreement of the parties, Team Health Holdings Inc. shall identify, but will not be required to produce, documents that are responsive to the subpoena that are produced by Plaintiffs in the underlying Pennsylvania litigation, whether produced before or after November 4, 2022.

ENTERED THIS _9th_ DAY OF _March_ 2022.

HONORABLE AMANDA MCCLENDON
DAVIDSON COUNTY SECOND CIRCUIT COURT

2

Approved For Entry:

PAINE TARWATER BICKERS, LLP

/s/ Michael J. King
Michael J. King
Tennessee Bar No.: 015523
900 South Gay Street,
Suite 2200
Knoxville, TN 37902-1821
865-525-0880
mjk@painebickers.com

and

O'MELVENY & MYERS, LLP

Jeffrey E. Gordon                    Hannah E. Dunham
D.C. Bar No.: 990220                 California Bar No.: 319505
Maryland Bar No.:  023264            400 South Hope Street
1625 Eye Street, NW                  18th Floor
Washington, DC 20006                 Los Angeles, California
(202) 383-5300                       (213) 430-6000
jgordon@omm.com                      hdunham@omm.com

*Counsel for United Healthcare Defendants*

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

/s/ Caldwell G. Collins
Gary C. Shockley (BPR 010104)
Caldwell G. Collins (BPR 028452)
1600 West End Ave., Suite 2000
Nashville, TN 37203
(615) 726-5600
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

*Counsel for Team Health Holdings, Inc.*

3

## CERTIFICATE OF SERVICE

The undersigned sender hereby certifies that a true and exact copy of the foregoing document has been served via U.S. Mail and electronic mail to the following at the addresses listed below:

Brock J. Atkins, Esq.
Tucker Law Group
1801 Market Street, Suite 2500
Philadelphia, PA 19103
batkins@tlgattorneys.com

*Counsel for Plaintiffs*

DATED: October 21, 2022.

PAINE TARWATER BICKERS, LLP

*/s/ Michael J. King*

4

# Calendaring

| | | | | |
|---|---|---|---|---|
| Requestor | Litigation Calendar | VIP | Job No. | **# 0001533115** |
| Requestor Email | LitigationCalendar@omm.com | | Requested Date/Time | 11/18/2022 12:42 PM |
| Requestor Phone | 9999999 | | Due Date/Time | 11/18/2022 08:00 PM |
| Requestor Department | Litigation | | Billing Code 1 | 0600000 |
| Requestor Location | Litigation | | Billing Code Name 1 | ADMINISTRATIVE/NON-CHARGEAB... |
| Submitter | Litigation Calendar | | Billing Code 2 | 0600000-00010 |
| Submitter Email | LitigationCalendar@omm.com | | Billing Code Name 2 | DEPARTMENT MEETINGS AND AD... |
| Submitter Phone | 9999999 | | Submission Method | Email |
| No. of Sets | 1.00 | | Client System Identifier | |
| No. of Pages | 6 | | Request Type | Document(s) |

**Instructions**

**Method of Service**
- ☒ USPS Mail
- ☐ Overnight Courier
- ☐ Personally Served

Other

**Partial Scan**
- ☐ Document larger than 100 pages
- ☐ Bound document
- ☐ Certified document
- ☐ Exhibits

**Exception**
- ☐ Digital media copy enclosure
- ☐ Medical records
- ☐ Originally signed documents

Deliver Originals — Finance,Admin.

**Doc Sent to Calendar**
- ☒ Yes

Postmark Date - date sent — 11/11/2022 05:00 ...

Time Received to Mailroom — 11/18/2022 12:30 ...

AMANDA McCLENDON, JUDGE
SECOND CIRCUIT COURT
METROPOLITAN COURTHOUSE
1 PUBLIC SQUARE, STE. 506
NASHVILLE, TENNESSEE 37201

Presort
First Class Mail
ComBasPrice



US POSTAGE PITNEY BOWES

ZIP 37201 $ 000.52⁶
02 4M
0000381655 NOV 11 2022

Jeffrey E. Gordon
1625 Eye Street, NW.
Washington, DC 20006

343586617   8 JAC6NMP 20006

# EXHIBIT 8

## IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

FILED
CHARLES D. SUSANO III
CLERK
2021 NOV 17 PM 12:14
KNOX COUNTY CIRCUIT
CIVIL SESSIONS
AND JUVENILE COURTS

GULF-TO-BAY ANESTHESIOLOGY )
ASSOCIATES, LLC, )
)
    Plaintiff, )
)
v. )
)    **Case No. 1-172-21**
UNITED HEALTHCARE OF FLORIDA, )
INC., and UNITED HEALTHCARE )    **NOTICE OF ENTRY**
INSURANCE, CO., )    **REQUESTED**
)
    Defendants. )

## ORDER

On November 5, 2021, this case came before the Court on non-party Team Health Holdings, Inc. ("Team Health") Motion to Quash Defendants' Subpoena Duces Tecum or, in the Alternative, for Protective Order. Counsel for Team Health and counsel for Defendants United Healthcare of Florida, Inc. and United Healthcare Insurance, Co. appeared for argument.

After hearing from Defendants and non-party Team Health, and for the reasons more fully set forth in the transcript of the hearing attached hereto, the Court **HEREBY ORDERS** that Team Health's Motion to Quash Defendants' Subpoena Deuces Tecum or, in the alternative, for Protective Order is **DENIED. IT IS FURTHER ORDERED** that Team Health **SHALL** respond to Defendants' Second Amended Subpoena Deuces Tecum Without Deposition within forty-five (45) days of the date of the hearing, **on or before Monday, December 20, 2021**.

ENTERED this _17th_ day of _November_, 2021.

_____
**HONORABLE JEROME MELSON**
**KNOX COUNTY CIRCUIT COURT JUDGE**

1

**APPROVED FOR ENTRY:**

**PAINE | TARWATER | BICKERS LLP**

_[signature]_

Dwight E. Tarwater (BPR # 007244)
Email: det@painetarwater.com
Michael J. King (BPR #015523)
Email: mjk@painebickers.com
Kendell G. Voncxk (BPR # 035139)
Email: kgv@painetarwater.com
900 South Gay Street, Suite 2200
Knoxville, Tennessee 37902-1821
(865) 525-0880 (phone)
(865) 521-7441 (fax)
Counsel for Defendants United Healthcare of
Florida, Inc. and United Healthcare Insurance,
Co.


**BAKER, DONELSON, BEARMAN,
CALDWELL, & BERKOWITZ, P.C.**

_[signature] w/permission by [signature]_

Gary C. Shockley, Esq. (BPR # 010104)
Email: gshockley@bakerdonelson.com
Caldwell G. Collins, Esq. (BPR # 028452)
Email: cacollins@bakerdonelson.com
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
(615) 726-5600 (phone)
(615) 726-0464 (fax)
&
Jamie Ballinger, Esq. (BPR # 027309)
Email: jballinger@bakerdonelson.com
265 Brookview Centre Way, Suite 600
Knoxville, Tennessee 37919
(865) 549-7000 (phone)
(865) 525-8569
Counsel for Nonparty Team Health Holdings,
Inc.

2

```
 1            IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

 2

 3    GULF-TO-BAY ANESTHESIOLOGY            )
      ASSOCIATES, LLC,                      )
 4                                          )
                                            )
 5                                          )
                     Plaintiff,             )
 6                                          )
      v.                                    )    No. 1-172-21
 7                                          )
                                            )
 8    UNITEDHEALTHCARE OF                    )
      FLORIDA, INC. and                     )
 9    UNITEDHEALTHCARE                       )
      INSURANCE CO.,                         )
10                                          )
                                            )
11                                          )
                     Defendants.            )
12

13

14           * * * * * * * * * * * * * * *

15

16            EXCERPT OF PROCEEDINGS: RULING

17       Before: Honorable E. Jerome Melson, Judge

18

                     November 5, 2021
19

20

21    =======================================================

22                 Allison L. Gossett
                 Licensed Court Reporter
23                  P.O. Box 50182
              Knoxville, Tennessee 37950
24                 (865) 696-6323
              tennreporter@gmail.com
25
```

EXCERPT OF PROCEEDINGS - RULING - November 05, 2021
GULF-TO-BAY ANESTHESIOLOGY ASSOC. vs UNITEDHEALTHCARE OF FLORIDA, INC., et al

Page 2

```
 1     APPEARANCES:

 2


 3
       FOR THE PLAINTIFF:
 4

 5     Gary C. Shockley, Esq.
       Baker Donelson
 6     1600 West End Avenue, Suite 2000
       Nashville, Tennessee 37203
 7

 8

 9
       FOR THE DEFENDANTS:
10
       Michael J. King, Esq.
11     Kendall Garrett Vonckx, Esq.
       Paine Bickers
12     900 S. Gay Street, Suite 2200
       Knoxville, Tennessee 37902-1821
13

14     _____

15

16

17

18

19

20

21

22

23

24

25
```

EXCERPT OF PROCEEDINGS - RULING - November 05, 2021
GULF-TO-BAY ANESTHESIOLOGY ASSOC. vs UNITEDHEALTHCARE OF FLORIDA, INC., et al

Page 3

1          (Begins Excerpt of Proceedings.)

2                    THE COURT:  Gentlemen, I wish to

3     commend you on your tender of the written work product

4     in this matter.  I wish also to thank you for the

5     eloquence and cogency of your arguments that

6     accompanied that today.  I thank you as well for your

7     courtesy and patience with the Court as I try to

8     familiarize myself with a case for which I do not bear

9     ultimate responsibility, but in which I seem to have a

10    role to play today.

11                   So in my moment on the stage in this

12    case, I will tell you that I have reviewed the

13    subpoena, the exhibits thereto, the motion to quash the

14    subpoena duces tecum or, in the alternative, for

15    protective order, and the related declarations and

16    papers, exhibits, and the record as a whole.

17                   From all of that, I find as follows:

18    The motion to quash shall be respectfully denied.  The

19    argument that the burden versus need would militate

20    toward this Court finding that the burden of responding

21    to areas of documentary discovery that, in this Court's

22    considered opinion have previously been reviewed and

23    deemed relevant areas of inquiry by the court in

24    Florida, leaves the Court in the opinion that the

25    documentary categories of information that are listed

**EXCERPT OF PROCEEDINGS - RULING - November 05, 2021**
**GULF-TO-BAY ANESTHESIOLOGY ASSOC. vs UNITEDHEALTHCARE OF FLORIDA, INC., et al**

Page 4

1    in the subpoena are relevant areas of inquiry.

2                    And while, doubtlessly, all written

3    discovery incurs and is accompanied by expense and some

4    burden, it is insufficient on the record in this case

5    at this time, in the opinion of this Court and in the

6    exercise of its discretion, to conclude that the burden

7    here is disproportionate to the need for this

8    information.

9                    It is clear that we have a discovery

10   deadline upon us upon the litigants in the state of

11   Florida that will necessitate them having this

12   information in order for its potential use in the

13   comprehension of the claims being asserted against the

14   defendants or the defenses being raised to those claims

15   by these defendants.

16                   It is the opinion of the Court that

17   the items listed on the subpoena, with the exception of

18   the numeric designations that have previously been

19   articulated as 5, 6, 16, 17, and 18, are appropriate

20   for documentary discovery.

21                   The expansive provisions of Rule 26 of

22   the Tennessee Rules of Procedure do provide that broad

23   parameters exist for the obtaining of information

24   through the discovery process.  The scope of discovery,

25   as recognized in Rule 26.02, provide the parties may

Case 3:23-mc-00024-TAV-DCP   Document 1-1   Filed 04/03/23   Page 64 of 140   PageID #: 79

**EXCERPT OF PROCEEDINGS - RULING - November 05, 2021**
**GULF-TO-BAY ANESTHESIOLOGY ASSOC. vs UNITEDHEALTHCARE OF FLORIDA, INC., et al**

Page 5

1    obtain discovery regarding any matter not privileged

2    which is relevant to the subject matter involved in the

3    pending action, whether it relates to the claim or the

4    defense of the party.  Now, we're looking here of

5    course at a situation where we've got a nonparty, but

6    one of which, all indications are, has a close

7    relationship to the plaintiff party in the Florida

8    litigation.

9                    With respect to the

10   electronically-stored information that will need to be

11   reviewed in respect of this matter, the Court has

12   reviewed the affidavit of Aaron Myers, business systems

13   manager, who sets forth the protocols and parameters

14   that he observes and respective formulating a list of

15   potential individuals who receive information and then

16   formulating search terms and making some test inquiries

17   and all of those sorts of things.

18                    While one can understand that it

19   comprises an additional sphere of employment

20   responsibilities for which Mr. Myers may not have loads

21   of enthusiasm, nevertheless the Court finds that he's

22   in a position where he has possessed experience in

23   engaging in this discipline on prior occasions,

24   therefore, this Court does not believe his affidavit in

25   and of itself establishes an undue burden or cost

Case 3:23-mc-00024-TAV-DCP   Document 1-1   Filed 04/03/23   Page 65 of 140   PageID #: 80

**EXCERPT OF PROCEEDINGS - RULING - November 05, 2021**
**GULF-TO-BAY ANESTHESIOLOGY ASSOC. vs UNITEDHEALTHCARE OF FLORIDA, INC., et al**

Page 6

1    associated with providing the documents responsive to

2    these categories of requested information.

3                    The Court understands that the parties

4    will continue to observe the geographic and temporal

5    restrictions put in place by the court in Florida, that

6    is to say that the responses will be confined to

7    documents that have direct bearing on the

8    anesthesiology practice group and/or practice groups

9    within and not outside the state of Florida from the

10   period of 2017 to present.

11                   The Court further finds that it is not

12   in a position today where it could feel comfortable

13   exercising its discretion to require cost-sharing at

14   this moment; however, the Court is confident that, with

15   the able attorneys on both sides of the room who are

16   handling this matter, that reasonable arrangements can

17   be and should be explored to share the costs associated

18   with, again, the costs -- not the attorney fees, but

19   costs -- associated with acquiring and storing the

20   information.

21                   Now, with respect to the timing to

22   provide this information, the Court orders that the

23   information be provided within 45 days of this date by

24   TeamHealth in compliance with this subpoena.

25                   Having addressed these matters as the

**EXCERPT OF PROCEEDINGS - RULING - November 05, 2021**
**GULF-TO-BAY ANESTHESIOLOGY ASSOC. vs UNITEDHEALTHCARE OF FLORIDA, INC., et al**

Page 7

```
 1    Court has, may I ask counsel if there are matters to
 2    which the Court has neglected to rule or give attention
 3    to that require it today?
 4                     MR. SHOCKLEY:  Nothing that I can
 5    think of, Your Honor.
 6                     MR. KING:  No, Your Honor.
 7                     THE COURT:  Okay.  Have I been clear
 8    in my rulings to each of you to your satisfaction so
 9    that you'll know in conformity with developing an order
10    that you all can circulate and hopefully sign?  Have I
11    been clear or do you have any questions for me?
12                     MR. SHOCKLEY:  I believe so,
13    Your Honor.
14                     MR. KING:  Yes, Your Honor.
15                     And just to make sure I understand the
16    Court's preference, what I typically do is I would ask
17    Madam Court Reporter to give us the verbal order you've
18    given of the Court and attach it to another order, so
19    you'll have both, if that's okay with the Court.
20                     THE COURT:  And that's fine with me,
21    Mr. King.
22                     And for whatever lapses in my speech,
23    syntax, or thought processes, I offer to you and to the
24    court reporter my abject apologies.  I do my best, but
25    I have yet to render a flawless oral presentation.  But
```

Case 3:23-mc-00024-TAV-DCP   Document 1-1   Filed 04/03/23   Page 67 of 140   PageID #: 82

1    I think that what you are suggesting is certainly fine

2    as a way to approach this matter, as far as I'm

3    concerned.

4              If, gentlemen, there is nothing

5    further for me to address on this matter today, I will

6    thank you again most sincerely with your patience

7    toward me.  This is difficult, being in the position of

8    summary move, to get a grasp on these issues as quickly

9    as one does, and I recognize these issues are quite

10   significant financially for the parties involved.  My

11   wish is that I have made things, if not better, then no

12   worse than when we began today.  And I thank you for

13   your courtesy to the Court.

14              I wish you, Mr. Shockley, very safe

15   travels home, and I hope you get to enjoy some fall

16   colors.

17              Have a good weekend.  Court is

18   adjourned.

19              MR. SHOCKLEY:  Thank you.

20              MR. KING:  Thank you, Your Honor.

21        (Proceedings concluded at 2:38 p.m.)

22         (Ends Excerpt of Proceedings.)

23

24

25

Case 3:23-mc-00024-TAV-DCP   Document 1-1   Filed 04/03/23   Page 68 of 140   PageID #: 83

EXCERPT OF PROCEEDINGS - RULING - November 05, 2021
GULF-TO-BAY ANESTHESIOLOGY ASSOC. vs UNITEDHEALTHCARE OF FLORIDA, INC., et al

Page 9

```
 1                    C E R T I F I C A T E

 2    STATE OF TENNESSEE

 3    COUNTY OF KNOX

 4

 5              I, Allison L. Gossett, Licensed Court

 6    Reporter, do hereby certify that I reported in machine

 7    shorthand the foregoing proceedings; that the foregoing

 8    pages, numbered 1 to 9, inclusive, were typed by me

 9    using computer-aided transcription and constitute a

10    true and accurate record of said proceedings.

11              I further certify that I am not an attorney

12    or counsel of any attorney or counsel connected with

13    the action, nor financially interested in the action.

14              Witness my hand this date, November 7, 2021.

15

16

17    _____
      Allison L. Gossett, LCR
18    LCR 028, Exp. 06/30/2022

19

20

21

22

23

24

25
```

Case 3:23-mc-00024-TAV-DCP   Document 1-1   Filed 04/03/23   Page 69 of 140   PageID #: 84

**1**

16 4:19
17 4:19
18 4:19

**2**

2017 6:10
26 4:21
26.02 4:25
2:38 8:21

**4**

45 6:23

**5**

5 4:19

**6**

6 4:19

**A**

Aaron 5:12
abject 7:24
accompanied 3:6
4:3
acquiring 6:19
action 5:3
additional 5:19
address 8:5
addressed 6:25
adjourned 8:18
affidavit 5:12,24
alternative 3:14
and/or 6:8
anesthesiology
6:8

apologies 7:24
approach 8:2
areas 3:21,23 4:1
argument 3:19
arguments 3:5
arrangements
6:16
articulated 4:19
asserted 4:13
associated 6:1,
17,19
attach 7:18
attention 7:2
attorney 6:18
attorneys 6:15

**B**

bear 3:8
bearing 6:7
began 8:12
begins 3:1
broad 4:22
burden 3:19,20
4:4,6 5:25
business 5:12

**C**

case 3:8,12 4:4
categories 3:25
6:2
circulate 7:10
claim 5:3
claims 4:13,14
clear 4:9 7:7,11
close 5:6
cogency 3:5
colors 8:16
comfortable 6:12

commend 3:3
compliance 6:24
comprehension
4:13
comprises 5:19
concerned 8:3
conclude 4:6
concluded 8:21
confident 6:14
confined 6:6
conformity 7:9
considered 3:22
continue 6:4
cost 5:25
cost-sharing
6:13
costs 6:17,18,19
counsel 7:1
course 5:5
court 3:2,7,20,23,
24 4:5,16 5:11,21,
24 6:3,5,11,14,22
7:1,2,7,17,18,19,
20,24 8:13,17
Court's 3:21 7:16
courtesy 3:7 8:13

**D**

date 6:23
days 6:23
deadline 4:10
declarations 3:15
deemed 3:23
defendants 4:14,
15
defense 5:4
defenses 4:14
denied 3:18
designations
4:18

developing 7:9
difficult 8:7
direct 6:7
discipline 5:23
discovery 3:21
4:3,9,20,24 5:1
discretion 4:6
6:13
disproportionate
4:7
documentary
3:21,25 4:20
documents 6:1,7
doubtlessly 4:2
duces 3:14

**E**

electronically-
stored 5:10
eloquence 3:5
employment 5:19
ends 8:22
engaging 5:23
enjoy 8:15
enthusiasm 5:21
establishes 5:25
exception 4:17
Excerpt 3:1 8:22
exercise 4:6
exercising 6:13
exhibits 3:13,16
exist 4:23
expansive 4:21
expense 4:3
experience 5:22
explored 6:17

**F**

fall 8:15

familiarize 3:8
far 8:2
feel 6:12
fees 6:18
financially 8:10
find 3:17
finding 3:20
finds 5:21 6:11
fine 7:20 8:1
flawless 7:25
Florida 3:24 4:11
5:7 6:5,9
follows 3:17
formulating 5:14,
16
forth 5:13

**G**

gentlemen 3:2
8:4
geographic 6:4
give 7:2,17
good 8:17
grasp 8:8
group 6:8
groups 6:8

**H**

handling 6:16
home 8:15
Honor 7:5,6,13,14
8:20
hope 8:15

**I**

incurs 4:3
indications 5:6
individuals 5:15

**information** 3:25
4:8,12,23 5:10,15
6:2,20,22,23

**inquiries** 5:16

**inquiry** 3:23 4:1

**insufficient** 4:4

**involved** 5:2 8:10

**issues** 8:8,9

**items** 4:17

**K**

**King** 7:6,14,21
8:20

**L**

**lapses** 7:22

**leaves** 3:24

**list** 5:14

**listed** 3:25 4:17

**litigants** 4:10

**litigation** 5:8

**loads** 5:20

**M**

**Madam** 7:17

**made** 8:11

**make** 7:15

**making** 5:16

**manager** 5:13

**matter** 3:4 5:1,2,
11 6:16 8:2,5

**matters** 6:25 7:1

**may** 4:25 5:20 7:1

**militate** 3:19

**moment** 3:11 6:14

**motion** 3:13,18

**move** 8:8

**Myers** 5:12,20

**N**

**necessitate** 4:11

**neglected** 7:2

**nonparty** 5:5

**nothing** 7:4 8:4

**Now** 5:4 6:21

**numeric** 4:18

**O**

**observe** 6:4

**observes** 5:14

**obtain** 5:1

**obtaining** 4:23

**occasions** 5:23

**offer** 7:23

**one** 5:6,18 8:9

**opinion** 3:22,24
4:5,16

**oral** 7:25

**order** 3:15 4:12
7:9,17,18

**orders** 6:22

**outside** 6:9

**P**

**p.m.** 8:21

**papers** 3:16

**parameters** 4:23
5:13

**parties** 4:25 6:3
8:10

**party** 5:4,7

**patience** 3:7 8:6

**pending** 5:3

**period** 6:10

**place** 6:5

**plaintiff** 5:7

**play** 3:10

**position** 5:22 6:12
8:7

**possessed** 5:22

**potential** 4:12
5:15

**practice** 6:8

**preference** 7:16

**present** 6:10

**presentation**
7:25

**previously** 3:22
4:18

**prior** 5:23

**privileged** 5:1

**Procedure** 4:22

**proceedings** 3:1
8:21,22

**process** 4:24

**processes** 7:23

**product** 3:3

**protective** 3:15

**protocols** 5:13

**provide** 4:22,25
6:22

**provided** 6:23

**providing** 6:1

**provisions** 4:21

**put** 6:5

**Q**

**quash** 3:13,18

**questions** 7:11

**quickly** 8:8

**R**

**raised** 4:14

**reasonable** 6:16

**receive** 5:15

**recognize** 8:9

**recognized** 4:25

**record** 3:16 4:4

**regarding** 5:1

**related** 3:15

**relates** 5:3

**relationship** 5:7

**relevant** 3:23 4:1
5:2

**render** 7:25

**reporter** 7:17,24

**requested** 6:2

**require** 6:13 7:3

**respect** 5:9,11
6:21

**respectfully** 3:18

**respective** 5:14

**responding** 3:20

**responses** 6:6

**responsibilities**
5:20

**responsibility**
3:9

**responsive** 6:1

**restrictions** 6:5

**reviewed** 3:12,22
5:11,12

**role** 3:10

**room** 6:15

**rule** 4:21,25 7:2

**Rules** 4:22

**rulings** 7:8

**S**

**safe** 8:14

**satisfaction** 7:8

**scope** 4:24

**search** 5:16

**sets** 5:13

**share** 6:17

**Shockley** 7:4,12
8:14,19

**sides** 6:15

**sign** 7:10

**significant** 8:10

**sincerely** 8:6

**situation** 5:5

**sorts** 5:17

**speech** 7:22

**sphere** 5:19

**stage** 3:11

**state** 4:10 6:9

**storing** 6:19

**subject** 5:2

**subpoena** 3:13,14
4:1,17 6:24

**suggesting** 8:1

**summary** 8:8

**syntax** 7:23

**systems** 5:12

**T**

**Teamhealth** 6:24

**tecum** 3:14

**temporal** 6:4

**tender** 3:3

**Tennessee** 4:22

**terms** 5:16

**test** 5:16

**thank** 3:4,6 8:6,12,
19,20

**thereto** 3:13

**things** 5:17 8:11

**think** 7:5 8:1

**thought** 7:23

**time** 4:5

**timing** 6:21

**today** 3:6,10 6:12
7:3 8:5,12

**toward** 3:20 8:7

**travels** 8:15

**typically** 7:16

———————————
**U**
———————————

**ultimate** 3:9

**understand** 5:18
7:15

**understands** 6:3

**undue** 5:25

**use** 4:12

———————————
**V**
———————————

**verbal** 7:17

**versus** 3:19

———————————
**W**
———————————

**weekend** 8:17

**whole** 3:16

**wish** 3:2,4 8:11,14

**work** 3:3

**worse** 8:12

**written** 3:3 4:2

# EXHIBIT 9

# EXHIBIT 1

*Emergency Physician Services of New York, et al. v. UnitedHealth Group, Inc., et al.*
**Custodians and Search Terms for Provider Plaintiffs' ESI with associated document volumes**

| Custodians |
|---|
| Paul Bevilacqua |
| Kent Bristow |
| Tracy Chancey |
| Paula Dearolf |
| Leif Murphy |
| Eddie Ocasio |
| Jennifer Schrader |
| Lisa Zima |
| Sandy Steele |
| Joe Carman |
| Jason Heuberger |

| | Search Terms | Hits | With Family |
|---|---|---|---|
| 1A | (United NOT w/0 ("United Airlines" OR "United States")) w/15 (reimburs* OR allow*) | 13,463 | 32,979 |
| 1B | UHC w/15 (reimburs* OR allow*) | 12,498 | 27,258 |
| 1C | UnitedHealth w/15 (reimburs* OR allow*) | 833 | 2,357 |
| 1D | UHG w/15 (reimburs* OR allow*) | 461 | 1,768 |
| 1E | Oxford w/15 (reimburs* OR allow*) | 985 | 2,541 |
| 1F | (United NOT w/0 ("United Airlines" OR "United States")) w/10 (offer OR negotiat* or agree* or contract) | 20,788 | 39,918 |
| 1G | UHC w/10 (offer OR negotiat* or agree* or contract) | 17,879 | 32,423 |
| 1H | UnitedHealth w/15 (offer OR negotiat* or agree* or contract) | 1,437 | 3,455 |
| 1I | UHG w/15 (offer OR negotiat* or agree* or contract) | 837 | 2,267 |
| 1J | Oxford w/15 (offer OR negotiat* or agree* or contract) | 1,314 | 3,328 |
| 1K | (United NOT w/0 ("United Airlines" OR "United States")) w/15 (OON OR out-of-network OR "non-par*" OR nonpar*) | 22,934 | 37,657 |

| 1L | UHG w/15 (OON OR out-of-network OR "non-par*" OR nonpar*) | 641 | 1,772 |
|---|---|---|---|
| 1M | UnitedHealth w/15 (OON OR out-of-network OR "non-par*" OR nonpar*) | 882 | 2,687 |
| 1N | UHC w/15 (OON OR out-of-network OR "non-par*" OR nonpar*) | 25,039 | 38,565 |
| 1O | Oxford w/15 (OON OR out-of-network OR "non-par*" OR nonpar*) | 1,822 | 4,204 |
| 1P | (United NOT w/0 ("United Airlines" OR "United States")) w/10 ("in- network" OR INN OR par*) | 30,071 | 70,114 |
| 1Q | UHC w/10 ("in-network" OR INN OR par*) | 19,408 | 45,310 |
| 1R | UnitedHealth w/15 ("in-network" OR INN OR par*) | 2,074 | 6,170 |
| 1S | UHG w/15 ("in-network" OR INN OR par*) | 731 | 2,076 |
| 1T | Oxford w/15 ("in-network" OR INN OR par*) | 6,620 | 18,861 |
| 2 | ((Chargemaster OR "charge master" OR "fee schedule*" OR CDM) w/15 (rais* OR low* OR increas* OR reduc* OR high OR chang*)) AND ((emergen* or "er" or "hcfa" or "em service*") w/15 (Chargemaster OR "charge master" OR "fee schedule*" OR CDM)) | 3,914 | 11,819 |
| 3A | "fair market" OR FMV OR (reasonable w/5 value) | 9,972 | 23,155 |
| 3C | appeal w/10 (reimburs* OR allow* OR rate) | 5,116 | 16,039 |
| 4A | (denial OR deny OR denied) w/15 ((United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) | 7,321 | 17,496 |
| 4B | "down code" OR downcode | 3,208 | 10,509 |
| 4C | upcode OR "up code" | 377 | 1,522 |
| 5A | (MultiPlan OR MPI OR "Multi Plan" OR MP) w/15 ((United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) | 15,910 | 33,957 |
| 5B | (MultiPlan OR MPI OR "Multi Plan" OR MP) w/15 (wrap OR rental OR access) | 14,604 | 30,122 |
| 5C | ("Data iSight" OR DiS) w/25 (reimburs* or allow) | 3,070 | 8,401 |
| 5D | ("Data iSight" OR DiS) AND (EOB OR (explanation w/3 benefits)) | 5,186 | 14,037 |
| 5E | ("Data iSight" OR DiS) AND (PRA OR "provider remittance") | 2,052 | 5,984 |
| 6A | ((TeamHealth OR "Team Health" OR TH) w/10 (reimburs* OR allow*)) AND ((reimburs* OR allow*) w/25 (New York OR NY OR "New York")) | 3,896 | 8,881 |
| 6B | ((TeamHealth OR "Team Health" OR TH) w/10 (chargemaster OR "charge master" or CDM)) AND ((chargemaster OR "charge master" or CDM) AND ((United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) AND (New York OR NY OR "New York")) | 175 | 457 |

| | | | |
|---|---|---|---|
| 6C | ((TeamHealth OR "Team Health" OR TH) w/5 policy or policies)) AND (bill* OR claim* or reimburs*) w/10 (policy or policies)) | 13,642 | 37,526 |
| 7A | (balance bill*) w/15 (legislat* or policy or policies or practic* or TeamHealth OR "Team Health" OR TH) | 12,890 | 25,130 |
| 7B | (surprise bill*) w/15 (legislat* or policy or policies or practic* or TeamHealth OR "Team Health" OR TH) | 15,461 | 22,549 |
| 8A | ("coding manual" OR "coding polic*") w/15 (revis* OR chang* OR edit) | 2,853 | 9,721 |
| 8B | ("coding manual" OR "coding polic*") w/15 audit | 210 | 573 |
| 8C | ("coding manual" OR "coding polic*") w/15 (increas* OR decreas*) | 133 | 761 |
| 9 | (OON OR "out of network" OR out-of-network OR non-par* OR nonpar OR "non-contracted") w/15 (rate OR bill*) | 50,156 | 97,952 |
| 10 | ("Emergency Care Service* of NY" or "Emergency Care Service* of New York" or "Emergency Physician Service* of NY" or "Emergency Physician Service* of New York" or "Buffalo Emergency" or ("Exigence Medical" w/3 Binghamton)) AND (reimburs* OR OON OR "out of network" OR "out-of-network" OR "non par*" OR nonpar OR noncontracted OR "non contracted" OR negotiat* OR term OR chargemaster OR "charge master" or CDM OR (United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford)<br><br>Split into two terms:<br>• ("Emergency Care Service* of NY" OR "Emergency Care Service* of New York" OR "Emergency Physician Service* of NY" OR "Emergency Physician Service* of New York" OR "Buffalo Emergency" OR ("Exigence Medical" w/3 Binghamton)) AND (reimburs* OR OON OR "out of network" OR out-of-network OR "non par*" OR nonpar OR noncontracted OR "non contracted" negotiat* OR term)<br>• ("Emergency Care Service* of NY" OR "Emergency Care Service* of New York" OR "Emergency Physician Service* of NY" OR "Emergency Physician Service* of New York" OR "Buffalo Emergency" OR ("Exigence Medical" w/3 Binghamton)) AND (chargemaster OR "charge master" OR CDM (United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) | 16,493<br><br>9,446 | 34,946<br><br>20,990 |

| | | | |
|---|---|---|---|
| | ((United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) w/25 (benchmark* OR "bench mark*" OR BMP OR (Cap w/5 (ASO OR OON OR "out of network"))) | | |
| | Split into three terms: | | |
| | • ((United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) w/25 (benchmark* OR "bench mark*" OR BMP) | 2,831 | 6,211 |
| | • (United NOT w/0 ("United Airlines" OR "United States")) AND (Cap w/5 (ASO OR OON OR "out of network")) | 276 | 744 |
| 11 | • (UHC OR UnitedHealth OR UHG OR Oxford) w/25 (Cap w/5 (ASO OR OON OR "out of network")) | 37 | 144 |
| 12 | ((Reduc* OR increas*) w/15 reimburs*)) AND (((United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) w/25 reimburs*) | 4,267 | 12,738 |
| 13 | Reimburs* w/15 (OON OR "out of network" OR out-of-network OR non- par* OR nonpar OR non-contracted OR "non contracted") | 20,909 | 45,833 |
| 14A | (CollectRX OR "collect rx" OR CRX) AND negotiat* | 4,638 | 8,821 |
| 14B | (CollectRX OR "collect rx" OR CRX) AND (MultiPlan OR "Data iSight" OR DiS OR "Multi Plan" OR "data iSight") OR (United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford OR New York OR NY OR "New York") | 5,090 | 10,763 |
| 14C | (CollectRX OR "collect rx" OR CRX) AND appeal | 2,167 | 4,906 |
| 15 | (R&C OR UCR OR U&C OR (usual w/3 customary) OR (usual w/3 reasonable) OR (reasonable w/3 customary)) AND (New York OR NY OR "New York" OR (United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) | 9,401 | 25,263 |
| 16A | "rate agree*" | 2,585 | 7,130 |
| 16B | "rate perform*" | 99 | 250 |
| 16C | "historical rate*" | 367 | 1,234 |
| 16D | "rate negotiat*" | 1,983 | 5,390 |
| 17 | (OON OR "out of network" OR out-of-network) w/15 program | 2,662 | 8,876 |
| 18 | Rate w/5 analysis | 1,892 | 5,417 |

| | | | |
|---|---|---|---|
| 19 | (Flexpoint OR "flex point" OR "benefits science") w/25 (New York OR NY OR "New York" OR (United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford)) | 1,040 | 2,909 |
| 20 | ("above market" OR "below market") w/10 rate | 317 | 824 |
| 21 | (willing w/3 buyer) OR (willing w/3 seller) | 607 | 1,310 |
| 22 | ("sub TIN" OR subTIN OR sub-tin) w/15 (New York OR NY OR "New York" OR (United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG Or Oxford)) | 2,662 | 4,514 |
| 23A | (percent w/10 (allow* OR charg*)) AND (New York OR NY OR "New York" OR (United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) | 6,840 | 19,923 |
| 23B | (percent w/10 (Mcare OR Medicare OR CMS)) AND (New York OR NY OR "New York" OR (United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) | 6,001 | 15,039 |
| 23C | (percent w/10 bill*) AND (New York OR NY OR "New York") AND ((United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford)) | 1,559 | 5,044 |
| 24A | (Emergen* w/5 rate) AND (New York OR NY OR "New York" OR (United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) | 3,633 | 12,188 |
| 24B | (Emergen* w/5 bill*) AND (New York OR NY OR "New York" OR (United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) | 11,856 | 29,999 |
| 25 | "claim* payment data" | 177 | 616 |
| 26 | emergen* w/3 economics | 516 | 1,323 |

| | | | |
|---|---|---|---|
| | ((balance w/5 bill*) OR (surprise w/5 bill*) OR "No Surprises Act" OR NSA) w/15 (New York OR NY OR "ny" OR "New York" OR (United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford)) | | |
| | Split into three terms: | | |
| | • ((balance OR surprise) w/5 bill*) AND (United NOT w/0 ("United Airlines" OR "United States")) | 18,844 | 36,669 |
| | • (((balance OR surprise) w/5 bill*) OR "No Surprises Act" OR NSA) w/15 ("New York" OR NY OR UHC OR UnitedHealth OR UHG OR Oxford) | 12,535 | 20,480 |
| 27 | • ("No Surprises Act" OR NSA) w/15 (United NOT w/0 ("United Airlines" OR "United States")) | 77 | 272 |
| 28 | ((law OR section OR "financial services" OR NYFS) w/10 (603 OR 604 OR 605)) AND ("New York" OR NY). | 470 | 1,552 |
| 29 | (United NOT w/0 ("United Airlines" OR "United States")) OR UHC OR UnitedHealth OR UHG OR Oxford) w/10 (strateg* OR planning OR goal!) | 3,721 | 8,492 |
| | **TOTAL DOCUMENT VOLUME** | 198,336 | 340,043 |

# EXHIBIT 10

IN THE CIRCUIT COURT FOR THE
THIRTEENTH JUDICIAL CIRCUIT IN AND
FOR HILLSBOROUGH COUNTY, FLORIDA

GULF-TO-BAY ANESTHESIOLOGY                    CASE NO.: 17-CA-011207
ASSOCIATES, LLC,

     *Plaintiff,*

v.

UNITEDHEALTHCARE OF FLORIDA, INC.,
and UNITEDHEALTHCARE INSURANCE CO.,

     *Defendants.*

_____/

## DEFENDANTS' WITNESS LIST DISCLOSURE

Defendants, UNITEDHEALTHCARE OF FLORIDA, INC., and
UNITEDHEALTHCARE INSURANCE CO. (collectively "United"), by and through undersigned
counsel, and pursuant to the Agreed Order Continuing Jury Trial and Setting New Jury Trial and
Pretrial Conference entered October 22, 2020, submits its Witness List Disclosure. United
reserves its right to amend this witness list in accordance with the Florida Rules of Civil Procedure
as discovery in this case has not yet closed.

**A.**    **Fact Witnesses**

    1.    Brian Gray
        Regional Vice President of Network Pricing for the Southeast Region
        UnitedHealthcare
        c/o Akerman LLP
        401 E. Jackson Street, Suite 1700
        Tampa, FL 33629
        (813) 758-0451

    2.    Heather Holic
        Regional Vice President for Florida Markets
        UnitedHealthcare
        c/o Akerman LLP
        401 E. Jackson Street, Suite 1700
        Tampa, FL 33629
        (813) 758-0451

3.   Rebecca Paradise
     Vice President of Out of Network Payment Strategy
     UnitedHealthcare
     c/o Akerman LLP
     401 E. Jackson Street, Suite 1700
     Tampa, FL 33629
     (813) 758-0451

4.   Angie Nierman, Regional President of National Contracting
     UnitedHealthcare
     c/o Akerman LLP
     401 E. Jackson Street, Suite 1700
     Tampa, FL 33629
     (813) 758-0451

5.   United Corporate Representative relating to United's business processes such as
     United's benefit claims data produced in this litigation
     UnitedHealthcare
     c/o Akerman LLP
     401 E. Jackson Street, Suite 1700
     Tampa, FL 33629
     (813) 758-0451

6.   Lisa Dealy, Director of Special Investigations Unit
     UnitedHealthcare Student Resources
     c/o Akerman LLP
     401 E. Jackson Street, Suite 1700
     Tampa, FL 33629
     (813) 758-0451

7.   Geri Shomo, Associate General Counsel and Director of Regulatory Affairs
     c/o Akerman LLP
     401 E. Jackson Street, Suite 1700
     Tampa, FL 33629
     (813) 758-0451

8.   Jacqueline Kienzle
     Vice President of Sales and Account Management
     MultiPlan, Inc.
     c/o Phelps Dunbar LLP
     400 Convention Street, Suite 1100
     Baton Rouge, LA 70802
     (225) 376-0207

9.   Rebecca Barnett, MBChB
     c/o Lash & Goldberg, LLP
     100 S.E. 2nd Street, Suite 1200
     Miami, FL 33131
     (305) 347-4040

2

10. Don Beuerle, CPA
    Chief Financial Officer
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

11. Iris Blitman
    Contract Manager, Managed Care
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

12. Tara Brewer
    Vice President, Managed Care, Anesthesia
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

13. Kasondra Brill
    Manager, Anesthesia Practice
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

14. Kent Bristow
    Senior Vice President Revenue Management
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

15. Brian Craven
    Senior Vice President
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

16. Paula Dearolf, CPC
    Executive Vice President, Revenue Cycle Management
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

17. Lisa Farmer
    Vice President, Anesthesia Practice Management, HCFS
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

18. Fazie Harney
    VP Applications
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

19. Jay Mesrobian, M.D.
    Chief Clinical Officer, Anesthesiology
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

20. David Greenberg
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

21. Devanand Mangar, M.D.
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

22. Sandeep Mukerjee, M.D.
    Department Chair of Anesthesia, Orlando Regional Medical Center
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

23. Eddie Ocasio
    Director, Revenue Analysis
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

24. Ike Brenner
    President
    Collect Rx, Inc.
    6720 Rockledge Dr.
    Tower B, Suite 600
    Bethesda, MD 20817
    Phone: 240-403-2583

4

25. Mike Bandomer
    Director, Out of Network Solutions
    Data iSight
    222 W. Las Colinas Blvd
    Suite 1500, North Tower
    Irving, TX 75039

26. John Haben
    Vice President, UnitedHealth Networks
    UnitedHealthcare
    c/o Akerman LLP
    401 E. Jackson Street, Suite 1700
    Tampa, FL 33629
    (813) 758-0451

27. Jolene Bradley, Associate Director Out of Network Savings & Vendor Programs
    United Health Networks
    UnitedHealthcare
    c/o Akerman LLP
    401 E. Jackson Street, Suite 1700
    Tampa, FL 33629
    (813) 758-0451

28. Corporate representatives of hospitals and facilities at which Plaintiff provides services.

29. All witnesses listed by Plaintiff, or for which Plaintiff offers testimony.

30. All witnesses who were deposed over the course of the litigation.

31. Custodians of records and data, as needed.

32. All Witnesses Necessary for Rebuttal.

**B.     Plaintiff's Expert Witnesses.  Pursuant to the Agreed Order Continuing Jury Trial and Setting New Jury Trial and Pretrial Conference entered October 22, 2020, United's expert witness disclosure is due on February 4, 2021; United's experts will be disclosed on or by that deadline.**

33. William D. Hager, J.D.
    President, Insurance Metrics Corporation
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131
    (305) 347-4040

34. Patrick Pilch
    Managing Director, National Healthcare Advisory Practice Leader,
    Co-Founder, BDO Center for Healthcare Excellence & Innovation
    c/o Lash & Goldberg, LLP
    100 S.E. 2nd Street, Suite 1200
    Miami, FL 33131

5

(305) 347-4040

35.   Jim Watson, M.B.A.
Partner, BDO Center for Healthcare Excellence & Innovation
c/o Lash & Goldberg, LLP
100 S.E. 2nd Street, Suite 1200
Miami, FL 33131
(305) 347-4040

Dated:  January 14, 2021.              Respectfully submitted,

*/s/Irene Bassel Frick*
**Irene Bassel Frick, Esq.**
Florida Bar No. 0158739
irene.basselfrick@akerman.com
nicole.emmett@akerman.com
AKERMAN LLP
401 East Jackson Street, Suite 1700
Tampa, Florida 33602
Telephone:  (813) 223-7333

and

**Gera R. Peoples, Esq.**
Florida Bar No. 450022
gera.peoples@akerman.com
magda.cabra@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Ste. 1100
Miami, Florida  33131
Telephone: (305) 374-5600

and

Kevin D. Feder, *Pro Hac Vice*
Scott Hammack, *Pro Hac Vice*
K. Lee Blalack II
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC  20006
(PH:  202-383-5300)
kfeder@omm.com
shammack@omm.com
lblalack@omm.com

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on January 14, 2021, via the Florida Courts E-Filing Portal upon all counsel of record: Alan D. Lash (alash@lashgoldberg.com), Justin C. Fineberg (jfineberg@lashgoldberg.com), Jonathan E. Feuer (jfeuer@lashgoldberg.com), Michael E. Ehren (mehren@lashgoldberg.com), and Rachel H. Leblanc (rleblanc@lashgoldberg.com), David R. Ruffner (druffner@lashgoldberg.com), Lash & Goldberg, LLP, 142 West Platt Street, Suite 118, Tampa, Florida 33606-2315.

*/s/ Irene Bassel Frick* _____
**Irene Bassel Frick, Esq.**

7

# EXHIBIT 11



**BAKER DONELSON**
BEARMAN, CALDWELL & BERKOWITZ, PC

1600 WEST END AVENUE
SUITE 2000
NASHVILLE, TENNESSEE 37203

MAILING ADDRESS:
P.O. BOX 331884
NASHVILLE, TENNESSEE 37203

PHONE: 615.726.5600

www.bakerdonelson.com

CALDWELL G. COLLINS, SHAREHOLDER
**Direct Dial:** 615.726.5762
**Direct Fax:** 615.744.5762
**E-Mail Address:** cacollins@bakerdonelson.com

October 27, 2022

**<u>Via Email and U.S. Mail</u>**
Ethan M. Scapellati
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6547
escapellati@omm.com

      Re:    *Emergency Physician Servs. of New York, Buffalo, et al., v. UnitedHealth Grp., Inc.,* Case No. 1:20-cv-09183

Dear Counsel:

      This firm represents nonparty Team Health Holdings, Inc. (THHI) in connection with the subpoena issued in the above-styled action. We write pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure to summarize THHI's objections to the subpoena. Please note that nothing in this letter constitutes a waiver of any right, claim, defense, objection, or contention that THHI may now have or hereafter acquire, all of which are expressly reserved.

      **1.   The Subpoena Seeks Documents Available from the New York Plaintiffs.**

      First, the subpoena defines "TeamHealth Plaintiffs," "You," and "Your" as the Plaintiffs in the above-captioned action "and their past or present officers, directors, employees, corporate parents, subsidiaries, successors, predecessors, affiliates, agents, subcontractors and any other Persons or entities who obtained or maintained information on its or their behalf." (Subpoena at 3). Thus, the Requests directed to "You" and "Your" seek information within *Plaintiffs'* custody and control and are improper under Federal Rules of Civil Procedure 26 and 45. *See* Fed. R. Civ. P. 25(b)(2) (prohibiting discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."); Fed. R. Civ. P. 45(d)(1) (requiring that parties serving subpoenas on non-parties "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena").

4865-2898-8729v1
2943270-000053 10/19/2022

ALABAMA • FLORIDA • GEORGIA • LOUISIANA • MARYLAND • MISSISSIPPI • NORTH CAROLINA
SOUTH CAROLINA • TENNESSEE • TEXAS • VIRGINIA • WASHINGTON, D.C.

Aside from the Definitions, the subpoena expressly seeks documents that are within the possession, custody, and control of New York Plaintiffs. *See, e.g.*, Request Nos. 3, 4 (seeking documents provided to Team Health Holdings *by* Plaintiffs and documents provided *to* Plaintiffs by Team Health Holdings); Request No. 9 (seeking documents relating to whether Plaintiffs are employees or independent contractors); Request No. 26 (seeking agreements or contracts between Team Health Holdings and Plaintiffs); Request No. 28 (seeking agreements between Plaintiffs and hospitals and/or facilities in New York).

Moreover, we understand the New York Plaintiffs have not objected to any Request for Production, nor refused to produce any documents, on the grounds that they are in the custody of THHI and not within the custody or control of the New York Plaintiffs.

As to any requests where United has made *no* attempt to seek those documents from the Plaintiffs in New York, United now seeks them from those Plaintiffs under the cloak of a third-party subpoena: it defines "TeamHealth Plaintiffs" to include the New York Plaintiffs and their "past or present officers, directors, employees, corporate parents, subsidiaries, successors, predecessors, affiliates, agents, subcontractors"; and it defines "Team Health" to include "Team Health Holdings, Inc." and its "agents, contractors, subcontractors, employees, assigns, delegates, subordinates, affiliates and any corporation, partnership, private equity firm, or other legal entity directly or indirectly owned or controlled by, or which directly or indirectly owns or controls, TeamHealth." (Subpoena at 3-4). As you are well aware, the Plaintiffs are affiliates of THHI. Every request in the subpoena is therefore a request to the Plaintiffs and should be lodged in New York. Even if the subpoena's definitions were not globally drawn, United's failure to seek discovery from parties to the litigation constitutes a failure to meet its duty to take reasonable steps to avoid imposing undue burden and expense on nonparties under Fed. R. Civ. P. 45.

## 2. The Subpoena Seeks Documents Produced or to Be Produced in the Underlying Litigation.

In addition to seeking documents which could be requested from the New York Plaintiffs, the subpoena seeks documents already produced—or agreed to be produced—by those Plaintiffs. For example, we understand that the Plaintiffs have produced:

- Their chargemasters for New York, data used for setting chargemasters for New York, Coding Grids and the Coding Manual used during the Relevant Time Period. *See* Request Nos. 11, 12, 14.

- A market file for New York identifying commercial claims billed to and paid by commercial insurers in New York for emergency medical services during the Relevant Time Period. *See* Request No. 15.

- A market file for New York government payors. *See* Request Nos. 16, 17.

- A spreadsheet showing their costs for providing the at-issue services. *See* Request No. 19.

- Their billing policies and procedures. *See* Request Nos. 20, 21, 22, 23.

- Their billing audit policies and procedures. *See* Request No. 25.

- Contracts and negotiations with Collect RX, as well as communications with Collect RX. *See* Request Nos. 29, 31.

- Documents showing the one relevant claim submitted to New York's independent dispute resolution ("IDR") entity in response to United RFP No. 3. *See* Request No. 33.

We also understand that the Plaintiffs have agreed to search for and produce, if available:

- Documents and communications regarding how their charges are set, through ESI. *See* Request No. 14.

- Wrap and rental agreements. *See* Request No. 27.

- Relevant communications with MultiPlan, through ESI. *See* Request No. 30.

- Documents concerning Plaintiffs' strategy behind contracting with reimbursement vendors, including Collect RX, through ESI. *See* Request Nos. 29, 31.

- Documents and communications regarding balance billing, through ESI. *See* Request Nos. 20, 21.

- Documents and communications discussing FAIR health and other rates, through ESI. *See* Request No. 33.

All requests for any these documents in the subpoena are entirely duplicative of discovery being conducted in the underlying case and are improper.

### 3. The Subpoena Seeks to Preempt the New York Court's Discovery Determinations.

Next, the subpoena seeks documents that are currently subject to discovery disputes between the parties in New York, and therefore attempts to preempt the Court's forthcoming determinations of the relevance as to those documents. Specifically, we understand that the parties are engaged in active discovery disputes as to the following categories:

- Budgets and profit and loss statements. *See* Request No. 18.

- Cost information beyond that which Plaintiffs have already produced. *See* Request No. 19.

- Plaintiffs' agreements with facilities. *See* Request No. 28.

### 4. The Subpoena Is Overly Broad and Imposes an Undue Burden on a Nonparty.

Fourth, the seemingly limitless breadth and scope of United's requests impose undue burden and expense on nonparty THHI, contrary to Rule 45. The subpoena seeks almost six years of documents and communications from every single entity associated or affiliated with TeamHealth regarding all facets of their businesses, from charges to profits, acquisitions, costs, contracts, negotiations, and audits, to name a few.

The ESI requests are of particular concern on this score. As an initial matter, your definition of "Document" includes electronic documents and correspondence, which means that all of your 33 requests would require an ESI search. But even assuming your definitions were more tailored, 11 of your requests specifically demand communications. This concern is acute given THHI's recent experience with a subpoena issued by United Healthcare of Florida in connection with the Gulf-to-Bay Anesthesia litigation in Tampa, Florida. The subpoena also allows insufficient time to respond, given these concerns.

These are appropriate grounds for entry of an order that discovery from nonparty THHI take place only after seeking that discovery from Plaintiffs, and only to the extent that relevant documents or testimony have been found to be *unavailable* from Plaintiffs. If the Court rules (or has ruled) that United may not pursue such discovery, any attempt to end-run that Order is a violation of the letter and spirit of the Federal Rules.

### 5. The Subpoena Seeks Irrelevant Information.

Finally, many of the requests are irrelevant to the subject matter of the pending action and thus fall outside the scope of discovery under Fed. R. Civ. P. 26. Non-exhaustive examples include Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 24, and 33, which seek documents regarding Blackstone (an entity with no role in the setting of Plaintiffs' charges), profit disbursements, employment relationship documents, attempted acquisition documents, collection agency information, and internal analyses regarding New York's IDR process. Assuming *arguendo* that any such documents exist, they have no bearing whatsoever on the calculation of a reasonable rate of reimbursement for emergency services rendered by Plaintiffs to United's members in the underlying suit in New York. The fact that the subpoena seeks documents which contain trade secrets, protected health information, confidential commercial or financial data, or other competitively-sensitive information, exacerbates the need for them to be reasonably calculated to lead to the discovery of admissible evidence in the underlying action. They are not and therefore are not discoverable. *See* Fed. R. Civ. P. 26.

Ethan M. Scapellati
October 27, 2022
Page 5

Do not hesitate to contact me should you have any questions regarding Team Health Holdings, Inc.'s objections to the subpoena.

Sincerely,

Caldwell G. Collins

Cc:     Gary C. Shockley

# EXHIBIT 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EMERGENCY PHYSICIAN SERVICES OF NEW
YORK, ET AL.,                                     20-cv-9183 (JGK)

                    Plaintiffs,            ORDER

       - against -

UNITEDHEALTH GROUP, INC., ET AL.,

                    Defendants.

---

JOHN G. KOELTL, District Judge:

     For the reasons explained at today's conference, the

defendants' objections to Magistrate Judge Netburn's discovery

rulings, ECF No. 164, are **overruled** with respect to Magistrate

Judge Netburn's rulings concerning: (1) the defendants' strategy

and profit motive documents, and (2) complaints about the

amounts charged by the plaintiffs for their services. The

defendants' objection with respect to the plaintiffs' cost

information is **sustained**. The defendants may file a motion for

summary judgment by September 1, 2022. The plaintiffs should

respond by September 22, 2022. The defendants may reply by

October 6, 2022. Discovery will not be stayed while the motion

for summary judgment is being briefed or considered.

     The Clerk is directed to close Docket No. 175.

SO ORDERED.

Dated:     New York, New York
           August 11, 2022

                                   John G. Koeltl
                              United States District Judge

# EXHIBIT 13

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Southern District of New York**

**Notice of Electronic Filing**

The following transaction was entered on 10/28/2022 at 4:36 PM EDT and filed on 10/28/2022

| | |
|---|---|
| **Case Name:** | Emergency Physician Services of New York et al v. UnitedHealth Group, Inc. et al |
| **Case Number:** | 1:20-cv-09183-JGK-SN |
| **Filer:** | |
| **Document Number:** | 213(No document attached) |

**Docket Text:**
**ORDER granting [204] Letter Motion. Defendants' motion to compel Plaintiffs to produce documents reflecting their costs to render the services at issue in the disputed claims in GRANTED. Summary data of Plaintiffs' costs is not responsive to the August 11, 2022 Order. ECF No. 176. Additionally, Plaintiffs are directed to provide their contracts with facilities, and the parties are directed to meet and confer to determine what additional cost information should be provided including cost assessments or fair market appraisals. All other requests for relief are denied. (HEREBY ORDERED by Magistrate Judge Sarah Netburn)(Text Only Order) (Netburn, Sarah)**


**1:20-cv-09183-JGK-SN Notice has been electronically mailed to:**

Wendy Helene Schwartz    wschwartz@binderschwartz.com, docket@binderschwartz.com

Aimee Leigh Creed    acreed@darcambal.com, fstewart@darcambal.com

Errol J. King    errol.king@phelps.com, cheryl.johnston@phelps.com, naya.wiley@phelps.com

Jonathan Eric Siegelaub    jsiegelaub@lashgoldberg.com

Gregory Frederick Jacob    gjacob@omm.com, gregory-jacob-4232@ecf.pacerpro.com

Salvatore Charles Badala (Terminated)    sbadala@napolilaw.com, 1936354420@filings.docketbird.com, amodiano@napolilaw.com, kurrea@napolilaw.com, mlavin@napolilaw.com, sblackmar@napolilaw.com

Ethan M. Scapellati    escapellati@omm.com

K. Lee Blalack, II    lblalack@omm.com, k-lee-blalack-8040@ecf.pacerpro.com

Dimitri Portnoi    dportnoi@omm.com, dimitri-portnoi-7308@ecf.pacerpro.com

Katherine C. Mannino    katie.mannino@phelps.com, cheryl.johnston@phelps.com, naya.wiley@phelps.com

Sarah Dowd    sdowd@binderschwartz.com, docket@binderschwartz.com

Justin C. Fineberg    jfineberg@lashgoldberg.com, yyzquierdo@lashgoldberg.com

Michelle Maguire Sloss    msloss@binderschwartz.com

**1:20-cv-09183-JGK-SN Notice has been delivered by other means to:**

# EXHIBIT 14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

EMERGENCY PHYSICIAN SERVICES OF
NEW YORK, et al.,

                                        Plaintiffs,

                    -against-

UNITEDHEALTH GROUP, INC., et al.,

                                        Defendants.

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__ 1/18/2023 _

20-CV-09183 (JGK)(SN)

<u>ORDER</u>

**SARAH NETBURN, United States Magistrate Judge:**

        The parties are once again before the Court on the adequacy of Plaintiffs' production of cost records. On August 11, 2022, Judge Koeltl held that "it is surely relevant to the plaintiffs' unjust enrichment claim to determine if the plaintiffs were reimbursed at a rate equal to or above their actual costs." Aug. 11, 2022 Tr. at 7:1-4 (ECF No. 177). Following that ruling, Plaintiffs produced a summary spreadsheet of annual data, with line-item expenses per facility. <u>See generally</u> Oct. 27, 2022 Tr. at 12:12-19 (ECF No. 215). Defendants challenged this production, and the Court held a hearing on October 27, 2022. The Court ruled that the spreadsheet was not adequate or responsive and directed the parties to work cooperatively to identify appropriate documents for production. <u>Id.</u> at 26:25-27:5. The Court provided guidance of what categories of documents would be responsive, including "certainly things like cost reports," underling records concerning Plaintiffs' $150 cost-per-encounter calculation, and any fair market appraisals. <u>Id.</u> at 27:5-15. Since the October 27 conference, Plaintiffs have (allegedly) produced two revised spreadsheets and no additional documents. Accordingly, Defendants move to compel the

production of responsive documents and for sanctions. See Def. Ltr., Dec. 23, 2022 (ECF No. 243/246).

Defendants seek five categories of documents: (1) reports to facilities and related communications that describe or itemize costs to provide services, episodes of care at the facility, and reimbursements to Plaintiffs from the facilities related to costs incurred or services provided; (2) chargemaster submissions and related assertions of fair market value; (3) "pitches and presentations" to facilities regarding services and costs; (4) management reports and internal cost analyses; and (5) calculations and analyses of the costs-per-episode of care. Id. at 4-5.

Plaintiffs respond, generally, that they have already produced "granular cost data" and documentation concerning the $150 cost-per-episode calculation,[1] including annual patient census data for each facility. Plf. Ltr., Dec. 29, 2022, at 2 (ECF No. 251). They contend that additional "cost information" is not readily available beyond the spreadsheet because of "the realities of modern business." Id. Plaintiffs, however, offered a compromise position – production and searching of additional documents if Defendants withdrew other requests – which Defendants rejected.

Accordingly, it is ORDERED that:

Plaintiffs shall produce all reports to facilities that describe or itemize costs to provide services, episodes of care at the facility, and reimbursements to Plaintiffs from the facilities related to costs incurred or services provided. Plaintiffs have admitted that at least three facilities have "cost plus" contracts for which such reports would be required by the facilities. Plaintiffs need not search for or produce related communications or documents showing total charges and revenues at a facility.

---

[1] Plaintiffs deny the relevancy of such calculation, and Defendants deny that any underlying documents were produced at all.

Plaintiffs shall produce any documents related to fair market appraisals of the services performed. Plaintiffs report that they have already produced their chargemaster submissions. They must still search for and produce any documents or communications that relate to the reasonableness or fair market value of the services performed. To assist the parties, the document filed at ECF 247-12 is an example of a responsive document. The parties are directed to immediately meet and confer to identify appropriate and targeted search terms to conduct additional ESI searches. Absent a showing of need, any further ESI searches shall be limited to the previously agreed-upon custodians.

Plaintiffs shall produce documents sufficient to allow Defendants to determine the cost-per-episode of care. Accordingly, Plaintiffs shall produce underlying records that identify Plaintiffs' cost per facility and the number of episodes of care at those facilities. Plaintiffs do not need to produce information related to payments by other parties.

Defendants' motion for "pitches and presentations" to facilities and management reports and/or internal costs analyses is denied. These categories of documents are not sufficiently relevant to the cost question and therefore the burden of production outweighs any value.

In light of the Court's mixed ruling, the Court does not find the imposition of sanctions to be warranted. Plaintiffs, however, are on notice that the failure to produce responsive *documents* may result in an award of attorney's fees and costs should further application to the Court be required.

The Clerk of Court is requested to terminate the motions at ECF Nos. 243 and 246.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:     New York, New York
           January 18, 2023

3

# EXHIBIT 15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

EMERGENCY PHYSICIAN SERVICES OF
NEW YORK, et al.,

          **Plaintiffs,**

    -against-

UNITEDHEALTH GROUP, INC., et al.,

          **Defendants.**

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 3/10/2023 __

**20-CV-09183 (JGK)(SN)**

**<u>ORDER</u>**

**SARAH NETBURN, United States Magistrate Judge:**

  Defendants request that the Court order Plaintiffs to (1) "conduct a good-faith and adequate search for documents related to the $150 cost calculation"; (2) produce for *in camera* review the five documents withheld on attorney-client privilege grounds related to the $150 cost calculation; and (3) award Defendants fees and costs for their motion. ECF No. 335 ("Defs. Ltr."). Plaintiffs oppose the motion. ECF No. 349 ("Plfs. Ltr.").

**I.  The $150 Cost Estimate**

  In August 2022, the Court ordered Plaintiffs to produce documents related to the cost incurred in providing the emergency medical services at issue in this case. ECF No. 176. Since then, the Court has addressed Plaintiffs' discovery obligations on numerous occasions, consistently ordering Plaintiffs to search for and produce responsive documents. See ECF Nos. 213, 282. The current dispute focuses on the so-called $150 cost per episode of care. Defendants contend, and Plaintiffs do not dispute, that on or before April 2019, Plaintiffs generated an internal estimate that it cost Plaintiffs, as a national average, $150 per episode of care to render

emergency medicine services to patients. Plaintiffs provided this estimate to Defendants in April 2019 as part of reimbursement rate negotiations and submitted it to Congress. Defs. Ltr. at 1.

Plaintiffs argue that they have already provided substantial cost-related discovery, such as spreadsheets, cost reports and scribe invoices. With respect to the $150 cost estimate, they searched agreed custodians' files using the search terms: cost w/10 "150" w/3 (encounter or visit). That search generated five responsive documents, all dated January 2020, and all of which Plaintiffs allege are privileged.

Defendants' position that it is "literally impossible" that Plaintiffs have conducted an adequate search is not hyperbole. Defs. Ltr. at 3. Because the $150 cost estimate was included in a March 13, 2019 letter to six Senators and provided to Defendants in April 2019 as part of negotiations, documents that lead to that estimate must exist before January 2020. And the fact that the only responsive documents Plaintiffs have unearthed concern allegedly legal communications related to regulatory inquiries underscores the overall inadequacy of the search.

The Court agrees that Plaintiffs have failed in their obligation to produce responsive documents. Defendants are entitled to the documents and communications that reflect the way Plaintiffs calculated the $150 cost estimate and the underlying data they relied on in reaching that conclusion. Plaintiffs' search terms are not reasonable, especially considering the paucity of production and the centrality of this issue.

Accordingly, the parties are ORDERED to meet and confer immediately to reach agreement on revised search terms. If the parties cannot reach agreement, Plaintiffs are to run a search through all electronic files using the search terms: cost w/10 "150."

## II.     Privilege Invocation

The Court is suspicious that the five documents withheld on privilege grounds are, in fact, protected communications. Plaintiffs, however, contend that they were "prepared at the direction of counsel and shared with counsel for the purpose of eliciting input on potential legal issues in the context of ongoing regulatory inquiries." Plfs. Ltr. at 5. Plaintiffs are ORDERED to produce these five documents for *in camera* review.

## III.    Sanctions

Defendants seek fees and costs associated with this motion under Rule 37. Rule 37(b)(2) authorizes sanctions where a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). In such circumstances, an award of fees and costs is mandatory unless the disobedient party's failure was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The Court previously ordered the Plaintiffs to "produce documents sufficient to allow Defendants to determine the cost-per-episode of care." ECF No. 282 at 3. The Court denied sanctions at that time but warned Plaintiffs that "the failure to produce responsive *documents* may result in an award of attorney's fees and costs should further application to the Court be required." Id.

Plaintiffs primary defense to the imposition of sanctions is that *Defendants* failed to suggest any way that *Plaintiffs'* search could have been improved upon. Plfs. Ltr. at 5. Setting aside whether it is Defendants' burden to figure out how to locate Plaintiffs' documents, Plaintiffs' paltry response – no produced documents and five allegedly privileged documents that post-date the calculation by more than six months – does not establish that Plaintiffs were substantially justified in failing to obey the Court's prior order to produce documents related to the $150 cost estimate. Reasonable fees are appropriate. The parties are ordered to meet and

confer on a reasonable award for attorneys' fees. If one cannot be reached, Plaintiffs shall pay three hours at Gregory Jacob's hourly rate.

## CONCLUSION

The parties are ORDERED to meet-and-confer to reach agreement on reasonable search terms for ESI discovery related to the $150 cost estimate. If the parties cannot reach agreement by March 15, 2023, Plaintiffs are ORDERED to run a search through all electronic files using the search terms: cost w/10 "150" and produce responsive documents and overall hit reports broken down by custodian. Considering the April 14 fact discovery deadline, responsive documents must be produced no later than March 29, 2023.

Plaintiffs are ORDERED to submit to the Court the five privileged documents for in camera review by March 13, 2023.

Plaintiffs are ORDERED to pay reasonable fees incurred by Defendants in submitting their motion not to exceed three hours at Gregory Jacob's hourly rate.

The Clerk of Court is respectfully requested to terminate the motion at ECF No. 335.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:     New York, New York
           March 10, 2023

# EXHIBIT 16

# IN THE SECOND CIRCUIT COURT OF TENNESSEE FOR DAVIDSON COUNTY

EMERGENCY CARE SERVICES
OF PENNSYLVANIA, P.C., et. al.,

             Plaintiffs,

v.                                 CASE NO. 22FS132

UNITEDHEALTHCARE OF
PENNSYLVANIA, INC., et. al.,

             Defendants.

---

## DEFENDANTS' RESPONSE TO TEAMHEALTH HOLDINGS, INC.'S MOTION TO QUASH DEFENDANTS' SUBPOENA *DUCES TECUM*

Defendants UnitedHealth Group Inc., United HealthCare Services, Inc., UnitedHealthcare Inc., UnitedHealth Networks Inc., UnitedHealthcare Insurance Company, UnitedHealthcare of New England, Inc., UnitedHealthcare of Pennsylvania, Inc., UMR, Inc., and Oxford Health Plans, Inc. (collectively, "Defendants") respond to TeamHealth Holdings, Inc.'s ("TeamHealth") Motion to Quash Subpoena Issued to TeamHealth ("TeamHealth's Motion"). In support, Defendants provide the following:

### INTRODUCTION

In a lawsuit filed in Pennsylvania state court – *Emergency Care Services of Pa. et al. v. UnitedHealth Group, Inc. et al.*, No. 000598 (Phila. Ct. Common Pleas Sept. 2020 Term) – Plaintiffs Emergency Care Services of Pennsylvania, P.C. and Emergency Physician Associates of Pennsylvania, P.C. (collectively, "Plaintiffs") seek to obtain through litigation what they could not through a written network agreement: additional reimbursements from Defendants for emergency medicine services rendered to persons covered under health plans insured or administered by Defendants. Specifically, they allege that Defendants paid less than a "reasonable value" – defined by Plaintiffs as whatever they choose to charge (Plaintiffs' billed

charges) – and demand additional reimbursement beyond what Defendants already paid on an out-of-network basis for the health benefit claims at issue. *See* Plaintiffs' Second Amended Complaint (the "SAC"), attached hereto as Exhibit 1, ¶¶ 41, 51.

TeamHealth, the parent and controlling entity of Plaintiffs, now moves to quash the at-issue subpoena (the "Subpoena," attached hereto as Exhibit 2) on the basis that it "imposes an undue burden on a non-party witness." As explained further below, TeamHealth is not an independent "non-party" and it would not be "unduly burdened" by responding to the Subpoena. TeamHealth's ownership of and control over Plaintiffs is evidenced, in part, by the fact that TeamHealth's executives verified the SAC, TeamHealth executives are listed as Plaintiffs' officers on Plaintiffs' business filings with the State of Pennsylvania, TeamHealth's in-house counsel has attended discovery hearings in Pennsylvania, all of the custodians of electronically stored information ("ESI") for Plaintiffs in the Pennsylvania litigation are TeamHealth executives, and TeamHealth's executives were the only trial fact witnesses for TeamHealth-affiliated plaintiffs in a similar case in Nevada.

In addition, TeamHealth's Motion ignores the fact that many of the requests in the Subpoena are tailored specifically to TeamHealth and are not duplicative of discovery to Plaintiffs. For example, document requests numbers 1-10, 19, 25-28, 30, 32-33, 35, and 37 do not overlap with the requests sent to Plaintiffs and are properly directed at TeamHealth. Accordingly, TeamHealth's Motion should be denied because the Subpoena (1) seeks information from TeamHealth that is relevant to this litigation, (2) is reasonably tailored to lead to the discovery of admissible evidence in the Pennsylvania action, and (3) does not impose any undue burden on TeamHealth.

2

# I.  BACKGROUND

## A.  The Parties and the Pennsylvania Action

Plaintiffs are for-profit physician staffing companies affiliated with and owned by TeamHealth.[1]  TeamHealth was a publicly traded company until it was acquired in 2017 by a private equity firm, Blackstone, for $6.1 billion.[2]  As one of the largest emergency room staffing, billing, and collections companies in the United States, TeamHealth provides outsourced emergency medicine services on a national scale and staffs as many as 3,400 emergency medical facilities, employing roughly 19,000 individuals.[3]  TeamHealth controls numerous affiliated corporate entities across the country, including Plaintiffs.[4]  TeamHealth's billing department submits reimbursement claims to government benefit programs, health insurers, and health plans on behalf of entities like Plaintiffs.[5]  Plaintiffs are not healthcare providers, but rather are staffing companies.  They contract with healthcare providers, including emergency medicine physicians, and then separately contract with hospitals to staff those hospitals' emergency departments.[6]  While TeamHealth employs some physicians, it typically retains physicians as independent contractors.[7]

Defendants insure or administer employer-sponsored health benefit plans.  Health care providers can enter into agreements ("network agreements") with health insurers and third-party

---

[1] *See* Team Health Holdings, Inc., 2011 Current Report (Form 8-K), Schedule 1-01D, EX-10.1 (June 29, 2011), available at https://www.sec.gov/Archives/edgar/data/1082754/000119312511178974/dex101.htm, which lists Emergency Care Services of Pennsylvania, P.C. and Emergency Physician Associates of Pennsylvania, P.C. as "Related Professional Corporations."

[2] TeamHealth, "TeamHealth to be Acquired by Blackstone" (last accessed Apr. 4, 2022), available at https://www.teamhealth.com/news-and-resources/press-release/teamhealth-to-be-acquired-by-blackstone/.

[3] *Id.*

[4] *See supra*, n.5.

[5] *See* Isaac Arnsdorf, *How Rich Investors, Not Doctors, Profit from Marking Up ER Bills*, ProPublica (June 12, 2020), available at https://www.propublica.org/article/how-rich-investors-not-doctors-profit-from-marking-up-er-bills.

[6] *See id.*; *See also* TeamHealth, "Terms and Conditions" (last accessed Aug. 1, 2022), available at https://www.teamhealth.com/our-company/human-resources/terms-and-conditions/?r=1.

[7] *Id. See also* Arnsdorf, *supra*, n.5.

3

administrators like Defendants that specify how much the health benefit plan will reimburse the provider for services rendered to members of the plan. Health care services rendered pursuant to a network agreement are "in network" and the reimbursement is governed by the terms of the network agreement. SAC ¶¶ 38-40, 42-44. Health care services rendered without any contractual agreement specifying a provider's reimbursement are referred to as "out-of-network" and the reimbursement for a covered service is governed by the terms of the applicable health benefit plan of which the patient is a member. For all of the reimbursement claims at issue in this litigation, Plaintiffs were out-of-network providers. SAC ¶ 44.

In the Pennsylvania litigation, Plaintiffs claim that the payments for certain health benefit claims for emergency medicine services rendered to members of health plans insured or administered by Defendants were not reasonable. SAC ¶¶ 28, 44-45. Citing Pennsylvania common law, Plaintiffs allege that the disputed payments do not represent the reasonable value of the services they allegedly provided to Defendants' members. *See generally id.*

### B. Defendants' Subpoena Issued to TeamHealth

In TeamHealth's Motion, TeamHealth tries to create the impression that it is simply a non-party with no involvement in the Pennsylvania action and is merely an "intermediate holding company for various operating affiliates." *See* TeamHealth Motion at 2. TeamHealth's characterizations of its relationship to Plaintiffs are wrong. Plaintiffs are owned by and affiliated with TeamHealth. In fact, the documents responsive to the requests in the Subpoena will establish that TeamHealth is the true beneficiary of Plaintiffs' allegations: Plaintiffs' revenue – in addition to any damages recovered by Plaintiffs in this lawsuit – flow directly to TeamHealth. In addition, not only are Plaintiffs owned by and affiliated with TeamHealth, but discovery and a trial in similar cases across the country establish that TeamHealth and its employees are the decision-makers regarding the rates that Plaintiffs charge and accept from their health care

4

administrators, including Defendants.  TeamHealth, therefore, cannot plausibly categorize itself as a removed "non-party."

By way of example, Kent Bristow, TeamHealth's Senior Vice President of Revenue Management, verified the SAC in his capacity as vice-president of the Plaintiffs, *see* SAC at 36,[8] and Carol Owen, TeamHealth's Chief Counsel of Commercial Litigation, has attended the discovery hearings in the Pennsylvania lawsuit and was referred to by Plaintiffs' counsel as "in-house counsel for Plaintiffs."  *See* June 14, 2022 Hearing Transcript, attached hereto as Exhibit 3, at 5:2-4.  In addition, in a similar case filed in Nevada by other TeamHealth affiliates against some of the same Defendants – *Fremont Emergency Servs. (Mandavia) Ltd. v. United Healthcare Ins. Co.*, No. 19-00832, ECF No. 40 (D. Nev. Jan. 7, 2020) – the chief trial fact witnesses for the Nevada TeamHealth-affiliated plaintiffs were all executives at TeamHealth, including Kent Bristow and Leif Murphy.  *See id.*

Similarly, Kent Bristow, Leif Murphy, and other TeamHealth executives are all ESI custodians for the Plaintiffs in the Pennsylvania matter.  *See* April 14, 2022 email and attachment from Plaintiffs' counsel listing Darin Geracimos, Eddie Ocasio, Hamilton Lempert, JJ Shrader, Kent Bristow, Leif Murphy, Lisa Zima, Paul Bevilacqua, and Paula Dearolf as ESI custodians and the May 31, 2022 email and attachment from Plaintiffs' counsel agreeing that David Greenberg, David Istvan,[9] Tracey Chancey, and Stephen Murtaugh were relevant ESI custodians.  These emails and attachments are provided herewith as Exhibit 4.  In sum, TeamHealth's attempt to distance itself from Plaintiffs is undermined by the fact that Plaintiffs have not identified a single ESI custodian who is not affiliated with TeamHealth.

---

[8] *See also* TeamHealth, "Our Leadership" (last accessed August 31, 2022), available at https://www.teamhealth.com/our-company/human-resources/leadership/?r=1.
[9] Public Pennsylvania Department of State records list David Istvan as the President of both plaintiff entities. David Istvan is the President of TeamHealth's Northeast Group.

5

Further, in another pending case brought by TeamHealth affiliates in Florida, *Gulf-to-Bay Anesthesiology Assocs., LLC v. UnitedHealthcare of Fla., Inc.*, No. 17-CA-011207, Doc. No. 4 (Fla. Cir. Ct. Dec. 15, 2017), nearly all of the witnesses disclosed by the plaintiff (owned and controlled by TeamHealth) are TeamHealth employees and all of the relevant communications between the plaintiff and the United defendants are emails to and from TeamHealth, not the Florida plaintiff. *See* United's Witness List, Filing # 119624890, Jan. 14, 2021, attached hereto as Exhibit 5.

In addition, the same TeamHealth executives that are ESI custodians in Pennsylvania have been the driving force behind TeamHealth's strategy to sue Defendants and other healthcare payors to pressure Defendants into accepting more favorable network agreements. TeamHealth has been the focus of multiple investigations and lawsuits[10] attacking its egregious billing practices and efforts to exploit the healthcare system to maximize profits. Consistent with these allegations, TeamHealth orchestrated lawsuits by its affiliated staffing companies against Defendants to attempt to achieve precisely what it has been accused of across the country – to increase its reimbursement rates and therefore increase its bottom line and its profits. Other TeamHealth-affiliated providers, either acting through or coordinating behind the scenes with the same lead counsel, have filed variations of this same case in multiple states.[11] Through the

---

[10] *See United States of America, ex rel. Caleb Hernandez & Jason Whaley, Relators et al. v. Team Health Holdings, Inc. et al.*, Case No. 2:16-cv-00432-JRG, pending before the United States District Court for the Eastern District of Texas; *Fraser v. Team Health Holdings, Inc.*, Case No. 4:20-cv-4600, pending before the United States District Court for the Northern District of California. *See also* Isaac Arnsdorf, *How Rich Investors, Not Doctors, Profit from Marking Up ER Bills*, ProPublica (June 12, 2020), https://bit.ly/3CYFFlx.

[11] *See, e.g.*, Ex. A, *Emergency Care Servs. of Pa., P.C. v. UnitedHealth Grp., Inc.*, No. 1:19-cv-01195, ECF No. 1 (M.D. Pa. July 11, 2019); Ex. B, *Emergency Grp. of Ariz. Pro. Corp. v. United Healthcare Inc.*, No. 2:19-cv-04687, ECF No. 18 (D. Ariz. Aug. 9, 2019); Ex. C, *Buffalo Emergency Assocs., LLP v. UnitedHealth Grp., Inc.*, No. 1:19-cv-01148, ECF No. 1 (W.D.N.Y. Aug. 26, 2019); Ex. D, *Fremont Emergency Servs. (Mandavia), Ltd. v. United Healthcare Ins. Co.*, No. 2:19-cv-00832, ECF No. 40 (D. Nev. Jan. 7, 2020) ; Ex. E, *Emergency Care Servs. of Pa., P.C. v. UnitedHealth Grp., Inc.*, No. 2:20-cv-05094, ECF No. 1-3 (E.D. Pa. Oct. 14, 2020); Ex. F, *Gulf-to-Bay Anesthesiology Assocs., LLC v. UnitedHealthcare of Fla., Inc.*, No. 17-CA-011207, Dkt. No. 28 (Fla. Cir. Ct. Feb. 12, 2019); Ex. G, *Atl. ER Physicians Team Pediatric Assocs., PA v. UnitedHealth Grp., Inc.*, 1:20-cv-20083, ECF

6

discovery conducted to date in these multiple actions, it has become clear that TeamHealth and its employees are responsible for the decisions on the central issues in dispute, not Plaintiffs.[12]

Because of the control TeamHealth exercises over Plaintiffs and the overlap between the senior leadership at these entities, Defendants served TeamHealth with the Subpoena seeking documents regarding the "reasonable value" of the medical services at issue, the corporate structure of the Plaintiff entities and their relationship with TeamHealth, the flow of funds between the entities, the influence TeamHealth wields over Plaintiffs' billed charges that Plaintiffs contend represent the "reasonable value" of their medical services, and related deposition testimony. *See* Exhibit 2.

TeamHealth now moves to quash the Subpoena on the grounds that it (a) requires compliance in less than the minimum twenty-one days mandated by Tenn. Code Ann. § 24-9-205 and Tennessee Rule of Civil Procedure 45.07; (b) requires one or more Tennessee representatives to attend a deposition in Philadelphia, Pennsylvania; and (c) violates Defendants' duty to "avoid imposing undue burden or expense on a non-party witness." *See* TeamHealth's Motion at 1-2.

With respect to the first two arguments identified above, those issues are moot because counsel for both parties have already resolved these issues through meet-and-confer efforts. *See* correspondence from Defense counsel, dated August 3, attached hereto as Exhibit 6. The following argument section only addresses TeamHealth's flawed third argument: the Subpoena fails to "avoid imposing undue burden or expense on a non-party witness." As stated more fully below, TeamHealth's Motion lacks merit and should be denied.

---

No. 2 (D.N.J. Dec. 21, 2020); *Emergency Dep't Physicians, P.C. v. United Healthcare Inc.*, 507 F. Supp. 3d 814, 818-19 (E.D. Mich. 2020) (granting motion to dismiss).
[12] *See* Arnsdorf, *supra* n.5.

7

## II.  ARGUMENT

### A.  This Court Should Deny the Motion Because the Subpoena Seeks Relevant Discovery

TeamHealth's counsel asserted that the documents requested by Defendants are irrelevant to Plaintiffs' causes of action.  *See* correspondence from Plaintiffs' counsel, dated August 2, attached hereto as Exhibit 7 at 2.  This position is untenable because the Subpoena seeks documents reflecting (1) Plaintiffs' understanding of the reasonable value of the medical services they provided to members of health plans issued or administered by Defendants; (2) the processes by which TeamHealth sets the billed charges for Plaintiffs; and (3) the relationship between these billed charges and the reasonable value of the services.

In the Pennsylvania litigation, Plaintiffs contend that their billed charges constitute the "reasonable value" of their emergency medical services, and their measure of damages is the difference between these billed charges and the amount that Defendants reimbursed.  *See* SAC ¶179.  Each of the health benefit claims at issue in this litigation are, by Plaintiffs' own allegations, out-of-network, and so there is no agreement governing the terms of any payment amounts between Plaintiffs and Defendants.  *See* SAC ¶44.  Under Pennsylvania common law, the "reasonable value" of such services is "what the services are ordinarily worth in the community."  *See Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alts., Inc.*, 832 A.2d 501, 508–10 (Pa. Super. Ct. 2003).  Plaintiffs' billed charges should not be the proper measure of "reasonable value" because these charges are unilaterally set by TeamHealth.  TeamHealth therefore has every financial incentive to keep billed charges unreasonably high and as divorced from the true measure of "reasonable value" of the services as they can.[13]

---

[13] *See* Isaac Arnsdorf, *How Rich Investors, Not Doctors, Profit from Marking Up ER Bills*, ProPublica (June 12, 2020), available at https://www.propublica.org/article/how-rich-investors-not-doctors-profit-from-marking-up-er-bills.

This Court should find it instructive that in a case pending in Florida, the Florida court rejected TeamHealth's attempt to quash a subpoena served by some of the same defendant entities on the same, or substantially the same, grounds asserted in the Pennsylvania litigation. For example, in *Gulf-to-Bay Anesthesiology Associates, LLC v. UnitedHealthcare of Florida, Inc. and UnitedHealthcare Insurance Co.,* ("Gulf-to-Bay") after the Florida court overruled the plaintiff's discovery objections to relevancy and "unduly burdensome," TeamHealth then moved to quash the subpoena issued to it in Tennessee in the Florida matter. *See* November 17, 2021 Order attached hereto as Exhibit 8. Here, TeamHealth's Motion deserves the same fate as its motion arising out of the Florida matter: TeamHealth's Motion should be denied.

The Subpoena in the instant case, like the subpoena in Gulf-to-Bay, is tailored to obtain discoverable information about the influence TeamHealth and its corporate owner, Blackstone, exert on Plaintiffs' billed charges, how those billed charges are set, and the financial incentives that Blackstone, TeamHealth, and Plaintiffs have for keeping their billed charges as unreasonably high as possible. For example, the following document requests relate to the question of how Plaintiffs' billed charges are set and their relationship to the true measure of reasonable value under Pennsylvania law:

- Request 6 seeks "All Documents or Communications between [TeamHealth] and Blackstone Relating to TeamHealth Plaintiffs' Charges.

- Request 7 seeks "All Documents or Communications between [TeamHealth] and Blackstone Relating to increasing or maximizing reimbursements from Payor(s)."

- Request 19 seeks "All Communications, including internal Communications, comparing set Charge levels to competitors or other benchmarks which include Pennsylvania."

9

- Request 27 seeks "All Documents, including policies or procedures, for determining how to bill services provided by Professional Providers employed or independently contracted by TeamHealth or practices affiliated with TeamHealth applicable to Emergency Medicine Services in Pennsylvania during the Relevant Period."

- Requests 35 ("All Agreements or contracts between You and any Claims Reimbursement/Collection Vendor, including CollectRx Inc.") and 37 ("All Documents reflecting any Communications between TeamHealth and any Claims Reimbursement/Collection Vendor, including CollectRx Inc., Relating to the Charges provided by Professional Providers owned or controlled by TeamHealth in Pennsylvania during the Relevant Period") seek information concerning what TeamHealth itself considers the reasonable value of their services – in other words, the amounts that would trigger a claim being sent to collections for appeal.

Similarly, the following document requests seek information about Plaintiffs' and TeamHealth's basic corporate structure and the profit motives behind their business practices:

- Request 1 seeks "A prospectus or similar Documents describing You or Your business provided to Blackstone, including Documents referring to TeamHealth Plaintiffs."

- Request 3 seeks "A prospectus or similar Documents describing [] Plaintiffs or [] Plaintiffs' business provided to [TeamHealth] by [] Plaintiffs."

- Request 8 seeks "All Documents or Communications Relating to the disbursement of profits from [] Plaintiffs to TeamHealth or from TeamHealth to Blackstone."

10

The Subpoena seeks relevant information that falls within Pennsylvania's broad rules for discovery. *See* Pa. R. C. 4003.1 ("[A] party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."). The Subpoena seeks basic, foundational evidence about Blackstone, TeamHealth, and the Plaintiffs. The jury in this case is entitled to know foundational information about (i) the organizational structure of Plaintiffs; (ii) the role that TeamHealth and Blackstone performed in the operation of the Plaintiffs; (iii) the basic financial relationship between Plaintiffs and their owners; (iv) the basic and foundational information about which entities make decisions regarding the billed charges at issue in this case, as well as the policies and procedures governing the payments that will be accepted for the emergency medicine services rendered by Plaintiffs; and (v) the relationship of these billed charges to the reasonable value of emergency services under Pennsylvania law.

Moreover, the Judge in the Pennsylvania case agreed with Defendants' assessment of the discoverability of the requested information. In Pennsylvania, Defendants moved to compel, among other categories of documents, "Documents related to TeamHealth Plaintiffs' organizational structure" and "Documents which show the relationship between TeamHealth Plaintiffs and TeamHealth from January 1, 2016, to present, including but not limited to documents showing the services provided to TeamHealth Plaintiffs by TeamHealth, any compensation TeamHealth received in connection with those services (including remuneration flowing between TeamHealth Plaintiffs and TeamHealth or collected reimbursement that Team Health keeps), and documents showing any TeamHealth ownership and/or control over TeamHealth Plaintiffs." *See* Defendants' Motion to Compel TeamHealth Plaintiffs' Responses to Defendants' First Sets of Requests for Documents and Interrogatories, attached as Exhibit 9, at 14. On July 1, 2022, the Pennsylvania Court granted this motion, overruling Plaintiffs' relevance

11

objections to these requests and ordering "**complete**" productions of responsive documents. *See* July 1, 2022 Order, attached as Exhibit 10 (emphasis added). To date, the Plaintiffs have only produced 23 documents related to these requests. This Court should deny TeamHealth's Motion because more documents exist relating to these categories and the complex business structure Blackstone and TeamHealth utilize for its affiliate staffing companies that Plaintiffs have failed to produce.

### B. Defendants' Subpoena Does Not Impose an Undue Burden.

Since the issuance of the Subpoena on July 12, Defendants' counsel has met-and-conferred with TeamHealth's counsel to reach a compromise on the business records and communications TeamHealth should produce. To date, the meet and confer efforts have been unsuccessful because TeamHealth's counsel rests on an inaccurate premise – that production of documents relating to "Team Health Holdings' ownership structure," "data regarding setting and billed medical charges," "data regarding amounts billed to TeamHealth's patients," and "operating policies and procedures" is not proportional to the needs of the case and is therefore unduly burdensome. *See* TeamHealth's Motion at 8-10. This premise is false. Defendants seek to obtain discovery about the relationship between Plaintiffs and TeamHealth, as well as information about Blackstone, the ultimate owner of all the entities involved in this litigation, in addition to information on how those relationships affected the amounts that Plaintiffs in this litigation chose to bill Defendants. Information on the decision-making processes regarding the setting of billed charges in Pennsylvania and billing practices within the TeamHealth/Blackstone network are relevant to Plaintiffs' allegations, allegations that TeamHealth itself directed and TeamHealth executives verified. Given the nature of Plaintiffs' claims in Pennsylvania, as well as TeamHealth's claims in numerous other states, Defendants' requests are reasonable and the requested information is discoverable.

12

TeamHealth also argues that the Subpoena is unduly burdensome because it "seeks discovery of information and documents that either the parties have agreed that the underlying plaintiffs will produce, that the Pennsylvania Court has ordered the plaintiffs to produce, or that United could and should seek from the underlying plaintiffs." *See* TeamHealth's Motion at 11-12. In support of this argument, TeamHealth cites a series of distinguishable or nonbinding cases where courts found that subpoenas "may" be quashed if "more appropriate" or if easier to obtain the discovery from a party before compelling a non-party to do so.

TeamHealth's reliance on these cases is misplaced. These cases involve parties that issued subpoenas to non-parties unnecessarily or potentially to "end-run around [their] discovery disputes" with the applicable party. *See Gen. Parts Distribution, LLC v. Perry*, No. 12-MC-93 SRN/SER, 2013 WL 3223374, at *5 (D. Minn. June 25, 2013) ("[t]o the extent General Parts is trying to do an end-run around its discovery dispute with Perry, the subpoena is improper"). For example, in *Haworth, Inc. v. Herman Miller, Inc.* cited in TeamHealth's Motion, defendant sought to compel a nonparty to produce a settlement agreement previously made with the plaintiff and did so through an ancillary proceeding in a different district court. The court observed that "rather than limiting its discovery quest to its party opponent in the main action, [the defendant] first aggressively pursued discovery in every forum except that of the actual suit for infringement." *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 976 (Fed. Cir. 1993).

TeamHealth's argument that the Subpoena is "a blatant attempt to end-run the orders of the Pennsylvania Court" is similarly unavailing. *See* TeamHealth's Motion at 8. TeamHealth argues that the Pennsylvania Court prohibited discovery on two deposition topics and two document requests, citing to two orders in which the Pennsylvania Court did not provide any

13

reasoning preclusive of these discovery requests. *Id.*[14]  To the contrary, the Subpoena seeks categories of documents that the Pennsylvania Court explicitly ruled were relevant to this litigation.  As noted above, the Court granted Defendants' motion to compel the Plaintiffs to make complete productions of documents related to TeamHealth's corporate structure and the flow of funds between TeamHealth entities, categories that TeamHealth itself used to describe the document requests in the Subpoena.  *See* TeamHealth's Motion at 8-10 ("TeamHealth Holdings' ownership structure," "information relating to disbursement of profits," etc.).  Despite this, Plaintiffs' production of these documents has been insufficient.  For example, Plaintiffs have not produced any documents relating to the following topics listed in Judge Padilla's Order: (1) the disbursement of profits, (2) flow of funds to TeamHealth, (3) flow of funds to Blackstone, and (4) how much Plaintiffs, TeamHealth, and Blackstone make on each claim dollar Defendants reimburse Plaintiffs. *See* Exhibits 9 and 10.

In contrast to the defendant in *Haworth, Inc.*, Defendants have actively engaged in discovery efforts in the Pennsylvania forum with Plaintiffs.  Further, as stated above, the "non-party" in this case is the entity that owns the Plaintiff entities and controls their business operations and litigation strategy.  Furthermore, none of the cases cited by TeamHealth stands for the proposition that a non-party is excused from compliance with a subpoena merely because *some* documents may be produced by one of the parties.

### C.  Defendants' Document Requests are Not Duplicative

Moreover, TeamHealth's Motion completely ignores that most of the specific document requests – namely, document request numbers 1-10, 19, 25-28, 30, 32-33, 35, and 37 – do not overlap with the requests sent to Plaintiffs and are more appropriately directed at Plaintiffs'

---

[14] This issue is moot because Defendants agree that TeamHealth should not be obligated to produce documents that the Pennsylvania Court has explicitly ruled are not discoverable from Plaintiffs or, by extension, TeamHealth.

14

controlling corporate parent. *Compare* Subpoena (Exhibit 2) with Defendants' requests for production served on Plaintiffs, attached hereto as Exhibit 11. For example, Request 8 seeks documents relating to the disbursement of profits from Plaintiffs to TeamHealth and from TeamHealth to its corporate parent, Blackstone, and Request 10 seeks documents relating to TeamHealth's acquisition of Pennsylvania emergency medicine practices like Plaintiffs. These document requests are (i) not duplicative of document requests Plaintiffs have agreed to produce, (ii) pertain to categories of documents that the Pennsylvania Court has affirmatively stated are relevant and discoverable for which Plaintiffs' productions have been deficient, and (iii) are relevant to the claims Plaintiffs brought against Defendants at the direction of TeamHealth itself. Even if all the document requests in the Subpoena *were* fully duplicative of those served on TeamHealth, nothing in the cases cited by TeamHealth would preclude enforcement of the Subpoena in a situation where Plaintiffs failed to fully comply with the local court's discovery orders.

Accordingly, TeamHealth's Motion should be denied and TeamHealth should be ordered to produce responsive documents.

<b><u>CONCLUSION</u></b>

WHEREFORE, Defendants respectfully request that this Court deny TeamHealth's Motion and order TeamHealth to produce responsive documents requested by Defendants' subpoena *duces tecum*.

Dated: September 16, 2022   Respectfully submitted,

**PAINE | TARWATER | BICKERS LLP**

*/s/ Michael J. King*
Michael J. King (BPR #015523)
mjk@painetarwater.com
900 South Gay Street, Suite 2200

15

Knoxville, Tennessee 37902
(865) 525-0880 (phone)
(865) 521-7441 (fax)

and

**O'MELVENY & MYERS, LLP**

Jeffrey E. Gordon
D.C. Bar No.: 990220
Maryland Bar No.: 023264
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
jgordon@omm.com

Hannah E. Dunham (Pro Hac Pending)
California Bar No.: 319505
400 South Hope Street
18th Floor
Los Angeles, California
(213) 430-6000
hdunham@omm.com

*Counsel for the United Healthcare Defendants*

16

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading was served on the following via the Court's electronic filing system, email, and/or U.S. Mail:

Brock J. Atkins, Esq.
Tucker Law Group
1801 Market Street, Suite 2500
Philadelphia, PA 19103
batkins@tlgattorneys.com

*Counsel for Plaintiffs*

Gary C. Shockley, Esq.
Caldwell G. Collins, Esq.
Baker Donelson Bearman Caldwell & Berkowitz, PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

*Counsel for Non-Party Team Health Holdings, Inc.*

This the 16th day of September, 2022.

**PAINE | TARWATER | BICKERS, LLP**

*/s/ Michael J. King*

17

# EXHIBIT 4

| From: | Jason McManis <jmcmanis@AZALAW.COM> |
| Sent: | Wednesday, April 13, 2022 9:13 PM |
| To: | Gordon, Jeffrey E.; Wooten, Paul J.; John O'Connell; Leslie Greenspan |
| Cc: | Justin Fineberg; Brock Atkins; barbara.oconnell@sweeneyfirm.com; errol.king@phelps.com; Blalack II, K. Lee; katie.mannino@phelps.com; craig.caesar@phelps.com; Kevin Leyendecker; TMH019_(Case 69)_AZA |
| Subject: | ECS PA/United - Identification of Custodial Email |
| Attachments: | 2022-04-13 Disclosure of Custodians and Terms.pdf |

[EXTERNAL MESSAGE]

Counsel,

Pursuant to Paragraph 5 of the Stipulated ESI Protocol Order, attached please find Plaintiffs' proposed custodians, search terms, and time frame for the parties.

Regards,
Jason



**JASON S. MCMANIS**
*Partner*
direct: 713.600.4969 | main: 713.655.1101
1221 McKinney, Suite 2500
Houston, Texas 77010
LinkedIn | vCard | Profile
**AZALAW.COM**

The information contained in this message is privileged, confidential and intended only for the use of the addressee. If the reader of this message is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of the message is strictly prohibited. If you have received this message in error, please immediately notify the sender by return e-mail and return the original message to the sender at the above e-mail address. Thank you.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

1

<u>**United's Custodians & Search Terms**</u>

| Custodians | Timeframe | Search Terms |
|---|---|---|
| Angie Nierman<br>Dan Tropeano<br>Daniel Rosenthal<br>Daniel Schumacher<br>Greg Dosedel<br>John Haben<br>Laura Pizza-Plum<br>Leslie Percy<br>Marc Stahl<br>Paul Marden<br>Rebecca Paradise<br>Sarah Peterson<br>Sue Schick<br>Tim Archer | 2016 to the present | - "Daylight Savings" OR Moonshot<br>- CASH OR (TShirt w/3 size!)<br>- TeamHealth OR TH OR "Emergency Care Services of Pennsylvania" OR ECS OR "Emergency Physicians Associates of Pennsylvania" OR EPA<br>- "shared savings" OR SSP OR SSPE OR OCM OR "outlier cost management" OR MNRP<br>- "R&C" OR "reasonable and customary" OR UCR OR "U&C" OR "usual w/3 customary" OR "usual w/3 reasonable" OR "reasonable w/3 customary"<br>- FH OR FairHealth OR "Fair Health"<br>- Naviguard OR Airstream OR TCOC<br>- "EDC analyzer" OR "E&M professional analyzer"<br>- "private equity" OR Blackstone<br>- (nonpar OR "non-par" OR "out of network" OR "out-of-network" OR OON) w/10 (opportun! OR roadmap OR "road map" OR narrative OR program)<br>- Cooper OR Yale OR Brookings OR McNamara<br>- Optum w/10 ("HBP" OR "hospital based physicians" OR evaluation OR management OR professional)<br>- "Data iSight" OR DiS OR MultiPlan<br>- Override OR "double down"<br>- "Northeast Region" w/10 (summit OR update OR plan)<br>- (high! OR more) w/5 "member responsibility"<br>- (low! OR less) w/5 "member protection"<br>- "hold harmless" OR "balance billing" |

#### MultiPlan's Custodians & Search Terms

| Custodians | Timeframe | Search Terms |
|---|---|---|
| Chuck Lanier<br>Dipti Sethia<br>Emma Johnson<br>Jacqueline Kienzle<br>Liz Lord<br>Melissa Dotson<br>Michael Schill<br>Mike Bandomer<br>Mita Mistry<br>Sean Crandell<br>Susan Dominey<br>Susan Mohler<br>Tom Ralston<br>William Connors | 2016 to the present | - (United! OR UHC) and ("benchmark" OR "benchmarking")<br>- (United! OR UHC) and ("Data iSight" OR DiS OR MultiPlan)<br>- (United! OR UHC) and ("denial" or "down code")<br>- (United! OR UHC) and ("balance billing" or "hold harmless")<br>- "R&C" OR "reasonable and customary" OR UCR OR "U&C" OR "usual w/3 customary" OR "usual w/3 reasonable" OR "reasonable w/3 customary"<br>- FH OR FairHealth OR "Fair Health"<br>- TeamHealth OR TH OR "Emergency Care Services of Pennsylvania" OR ECS OR "Emergency Physicians Associates of Pennsylvania" OR EPA<br>- Naviguard<br>- (United! OR UHC) and (formula OR calculation OR rate OR methodology)<br>- (Philadelphia OR Pennsylvania OR PA) and (data OR methodology OR database OR claims OR "cost of care" OR RVU OR "relative value" OR "geographic adjustment")<br>- ("Data iSight" OR DiS) and (formula OR calculation OR rate OR repricing OR methodology OR transparen!)<br>- (United! OR UHC) and (transparen!)<br>- (United! OR UHC) and (wrap OR rental)<br>- IMS OR IQVIA OR PharMetrics OR Quintiles |

2

**Plaintiffs' Custodians & Search Terms**

| Custodians | Timeframe | Search Terms |
|---|---|---|
| Darin Geracimos<br>Eddie Ocasio<br>Hamilton Lempert<br>JJ Shrader<br>Kent Bristow<br>Leif Murphy<br>Lisa Zima<br>Paul Bevilacqua<br>Paula Dearolf | 2016 to the present | - "benchmark" OR "benchmarking"<br>- United! OR UHC<br>- "Data iSight" OR DiS OR MultiPlan<br>- (quality w/5 care) OR (quality w/5 initiative)<br>- "denial" or "down code"<br>- "balance billing"<br>- "desktop coding manual" OR "coding policies"<br>- reasonable w/10 value<br>- "R&C" OR "reasonable and customary" OR UCR OR "U&C" OR "usual w/3 customary" OR "usual w/3 reasonable" OR "reasonable w/3 customary"<br>- FH OR FairHealth OR "Fair Health"<br>- Flexpoint<br>- billing w/5 (study OR survey OR analysis OR polic! OR guidance)<br>- coding w/5 audit<br>- chargemaster<br>- "Emergency Care Services of Pennsylvania" OR ECS OR "Emergency Physicians Associates of Pennsylvania" OR EPA |

- Plaintiffs intend to collect PST files from these custodians for the suggested timeframe and run the search terms across those PST files. The documents will then be reviewed for responsiveness and privilege.

3

| From: | Jason McManis <jmcmanis@AZALAW.COM> |
|---|---|
| Sent: | Tuesday, May 31, 2022 8:27 PM |
| To: | Fowler, Jeffrey; Wooten, Paul J.; Gordon, Jeffrey E.; John O'Connell; Leslie Greenspan; Justin Fineberg; Brock Atkins; barbara.oconnell@sweeneyfirm.com; errol.king@phelps.com; Blalack II, K. Lee; katie.mannino@phelps.com; craig.caesar@phelps.com; Kevin Leyendecker; TMH019_(Case 69)_AZA |
| Cc: | Pollner, Adrian; Wooten, Paul J. |
| Subject: | Re: ECS PA/United - Identification of Custodial Email |
| Attachments: | 2022-05-31 Plas Resp on United Objections and Counters.docx |

[EXTERNAL MESSAGE]

Jeff,

Following up on our previous meet and confer, here is an updated position of the ESI terms/custodians that Plaintiffs are willing to search (subject to issues with hit counts, which we can work through as they arise).

Let me know if you have any questions.

Thanks,
Jason

---

**From:** Fowler, Jeffrey <jfowler@omm.com>
**Date:** Thursday, May 19, 2022 at 11:22 AM
**To:** Wooten, Paul J. <pwooten@omm.com>, Gordon, Jeffrey E. <jgordon@omm.com>, John O'Connell <joconnell@bochettoandlentz.com>, Leslie Greenspan <lgreenspan@tlgattorneys.com>, Justin Fineberg <jfineberg@lashgoldberg.com>, Brock Atkins <batkins@tlgattorneys.com>, barbara.oconnell@sweeneyfirm.com <barbara.oconnell@sweeneyfirm.com>, errol.king@phelps.com <errol.king@phelps.com>, Blalack II, K. Lee <lblalack@omm.com>, katie.mannino@phelps.com <katie.mannino@phelps.com>, craig.caesar@phelps.com <craig.caesar@phelps.com>, Kevin Leyendecker <kleyendecker@AZALAW.COM>, TMH019_(Case 69)_AZA <TMH019_AZA@azalaw.com>
**Cc:** Pollner, Adrian <apollner@omm.com>, Wooten, Paul J. <pwooten@omm.com>
**Subject:** Fw: ECS PA/United - Identification of Custodial Email

Jason,

Thank you for the discussion points below. We will also want to learn more about the scope of TeamHealth's ESI collection to understand how these searches will be run, including clarification about the completeness of custodian email collections. Your original disclosure refers to "PST," which as you might know, is a generic container that stores email (typically once it's exported). It does not explain the actual source of email that TeamHealth will collect.

Attached is a table to guide our discussion about United Defendants' search terms. You'll see we offer some tentative revisions to TeamHealth's counter-proposals. Like you, we also have some questions about proposed terms that we would like to discuss and indicate those in the table as "in dispute."

In our view, there is still much to discuss before we can reach agreement on these terms. Without modification, TeamHealth's counter-proposals would increase the volume of United Defendants' review by more than 10 times. We are open to resolving as many issues as possible without court intervention and look forward to productive discussions.

I am sure you will agree that any final agreement on search terms will be subject to our clients' running the agreed-upon terms against their collections to assess the overall volume. We reserve the right to come back to you if the terms we discuss today, including the ones in this table, result in unexpectedly large volumes.

Jeff

Jeffrey J. Fowler
O'Melveny & Myers LLP
213-430-6404

From: Jason McManis <jmcmanis@AZALAW.COM>
Sent: Wednesday, May 18, 2022 9:57 PM
To: Wooten, Paul J. <pwooten@omm.com>; Gordon, Jeffrey E. <jgordon@omm.com>; John O'Connell <joconnell@bochettoandlentz.com>; Leslie Greenspan <lgreenspan@tlgattorneys.com>
Cc: Justin Fineberg <jfineberg@lashgoldberg.com>; Brock Atkins <batkins@tlgattorneys.com>; barbara.oconnell@sweeneyfirm.com; errol.king@phelps.com; Blalack II, K. Lee <lblalack@omm.com>; katie.mannino@phelps.com; craig.caesar@phelps.com; Kevin Leyendecker <kleyendecker@AZALAW.COM>; TMH019_(Case 69)_AZA <TMH019_AZA@azalaw.com>
Subject: Re: ECS PA/United - Identification of Custodial Email

[EXTERNAL MESSAGE]

Paul,

Ahead of tomorrow's conferral, please see the below.

**We agree to run:**

- benchmark* or "bench mark*" or BMP
- **United OR UHC** OR UnitedHealth OR UHG
- **"Data iSight�** OR DiS OR MultiPlan** or "MPI" or "Multi Plan" or "MP"
- appeal OR complaint OR "fair market� OR FMV OR (reasonable w/10 value)
- "coding manual� OR "coding polic*�
- **"R&C�** OR UCR OR "U&C� OR (usual w/3 customary) OR (usual w/3 reasonable) OR (reasonable w/3 customary)
- **Chargemaster** OR "charge master" or "fee schedule*�
- (**"Emergency Care Service* of Pennsylvania"** or "Emergency Physician Associates of Pennsylvania" or "Emergency Physician Associates of Pa" or ("emerg phys ascs" w/3 Penn*) OR EPA OR ECS OR Physicians Associates of Pennsylvania�
- CollectRX OR "collect rx" OR CRX
- Reimburs* w/15 (OON OR "out of network" OR "out-of-network� OR "non-par*" OR nonpar OR "non-contracted� OR "non contracted� )
- OON or "out of network� OR "out-of-network� w/15 program
- ("above market� or "below market� ) w/10 rate
- (Reduc* OR increas*) w/15 reimburs*
- (OON OR "out of network" OR "out-of-network� OR "non-par*" OR nonpar OR "non-contracted� OR "non contracted� ) w/15 (rate OR bill*)

**We need to discuss:**

- **denial** or deny or denied **or "down code�** OR downcode OR upcode OR "up code�
- **Flexpoint** or "flex point"
- (willing w/3 buyer) OR (willing w/3 seller)
- (balance w/5 bill*) OR (surprise w/5 bill*) OR "No Surprises Act� OR NSA
- "benefits science�
- "TeamHealth� OR "Team Health� OR "TH� OR "Team Physicians�
- "claim* payment data�
- percent w/10 (Mcare OR Medicare OR CMS OR allow* or charg* or billed or billing)
- escalator
- "value-based care� OR "value based care� OR "VBC�
- "allowable spend�
- "glide path�
- Compensat* w/5 rate
- "post payment�

3

- Rate w/5 analysis
- "rate negotiat*�   OR "rate agree*�   OR "rate perform*�   OR "historical rate*�
- "legislative solution�
- "legislative approach�
- "federal solution�
- "remitted amount�
- emergen* w/3 economics
- Emergen* w/5 (rate OR bill*)

**We object:**

- (cost w/2 care)
- (Equityhealth or "equity health�   or EH) AND (OON or "out-of-network�   or "out of network�   or analy*)
- Blackstone
- Cap w/5 (market* OR ASO OR OON OR "out of network�   )
- Term* w/25 (PPA OR participation)
- "sub TIN�   OR "subTIN�   OR "sub-tin�
- "litigation route�
- Underfund* OR "under fund*�
- "AR Value�   or "AR Hold�
- "cost-sharing�   OR "cost sharing�

Jason

---

**From:** Wooten, Paul J. <pwooten@omm.com>
**Date:** Tuesday, May 3, 2022 at 9:09 PM
**To:** Jason McManis <jmcmanis@AZALAW.COM>, Gordon, Jeffrey E. <jgordon@omm.com>, John O'Connell <joconnell@bochettoandlentz.com>, Leslie Greenspan <lgreenspan@tlgattorneys.com>
**Cc:** Justin Fineberg <jfineberg@lashgoldberg.com>, Brock Atkins <batkins@tlgattorneys.com>, barbara.oconnell@sweeneyfirm.com <barbara.oconnell@sweeneyfirm.com>, errol.king@phelps.com <errol.king@phelps.com>, Blalack II, K. Lee <lblalack@omm.com>, katie.mannino@phelps.com <katie.mannino@phelps.com>, craig.caesar@phelps.com <Craig.Caesar@phelps.com>, Kevin Leyendecker <kleyendecker@AZALAW.COM>, TMH019_(Case 69)_AZA <TMH019_AZA@azalaw.com>
**Subject:** RE: ECS PA/United - Identification of Custodial Email

All,

Please see the attached letter regarding Defendants UnitedHealth Group Inc., United HealthCare Services, Inc., UnitedHealthcare Inc., UnitedHealth Networks, Inc., UnitedHealthcare Insurance Company,

4

UnitedHealthcare of New England, Inc., and UnitedHealthcare of Pennsylvania, Inc.'s counterproposal to TeamHealth Plaintiffs' proposed ESI custodians and search terms.

Thank you,

Paul

Paul J. Wooten

O: +1-212-728-5857

PWooten@omm.com

**From:** Jason McManis <jmcmanis@AZALAW.COM>
**Sent:** Friday, April 29, 2022 1:11 AM
**To:** Wooten, Paul J. <pwooten@omm.com>; Gordon, Jeffrey E. <jgordon@omm.com>; John O'Connell <joconnell@bochettoandlentz.com>; Leslie Greenspan <lgreenspan@tlgattorneys.com>
**Cc:** Justin Fineberg <jfineberg@lashgoldberg.com>; Brock Atkins <batkins@tlgattorneys.com>; barbara.oconnell@sweeneyfirm.com; errol.king@phelps.com; Blalack II, K. Lee <lblalack@omm.com>; katie.mannino@phelps.com; craig.caesar@phelps.com; Kevin Leyendecker <kleyendecker@AZALAW.COM>; TMH019_(Case 69)_AZA <TMH019_AZA@azalaw.com>
**Subject:** Re: ECS PA/United - Identification of Custodial Email

[EXTERNAL MESSAGE]

Paul,

Please see attached our counter to your proposed ESI terms. Where we've made suggested revisions, we object to your proposals. Further, we request inclusion of the following custodians:

- Dan Tropeano
- Laura Pizza-Plum
- Leslie Percy
- Marc Stahl
- Paul Marden
- Sue Schick
- Tim Archer
- Sarah Peterson

5

--

**Jason McManis**
AZA

1221 McKinney, Ste. 2500

Houston, TX 77010

713.600.4969

jmcmanis@azalaw.com

---

**From:** Wooten, Paul J. <pwooten@omm.com>
**Date:** Friday, April 15, 2022 at 3:27 PM
**To:** Jason McManis <jmcmanis@AZALAW.COM>, Gordon, Jeffrey E. <jgordon@omm.com>, John O'Connell <joconnell@bochettoandlentz.com>, Leslie Greenspan <lgreenspan@tlgattorneys.com>
**Cc:** Justin Fineberg <jfineberg@lashgoldberg.com>, Brock Atkins <batkins@tlgattorneys.com>, barbara.oconnell@sweeneyfirm.com <barbara.oconnell@sweeneyfirm.com>, errol.king@phelps.com <errol.king@phelps.com>, Blalack II, K. Lee <lblalack@omm.com>, katie.mannino@phelps.com <katie.mannino@phelps.com>, craig.caesar@phelps.com <Craig.Caesar@phelps.com>, Kevin Leyendecker <kleyendecker@AZALAW.COM>, TMH019_(Case 69)_AZA <TMH019_AZA@azalaw.com>
**Subject:** RE: ECS PA/United - Identification of Custodial Email

Counsel,

Attached please find United's ESI Custodian and Search Terms Disclosure letter.

Best,

Paul

Paul J. Wooten

O: +1-212-728-5857

PWooten@omm.com

6

**From:** Jason McManis <jmcmanis@AZALAW.COM>
**Sent:** Thursday, April 14, 2022 12:13 AM
**To:** Gordon, Jeffrey E. <jgordon@omm.com>; Wooten, Paul J. <pwooten@omm.com>; John O'Connell <joconnell@bochettoandlentz.com>; Leslie Greenspan <lgreenspan@tlgattorneys.com>
**Cc:** Justin Fineberg <jfineberg@lashgoldberg.com>; barbara.oconnell@sweeneyfirm.com; errol.king@phelps.com; Blalack II, K. Lee <lblalack@omm.com>; katie.mannino@phelps.com; craig.caesar@phelps.com; Kevin Leyendecker <kleyendecker@AZALAW.COM>; TMH019_(Case 69)_AZA <TMH019_AZA@azalaw.com>
**Subject:** ECS PA/United - Identification of Custodial Email

[EXTERNAL MESSAGE]

Counsel,


Pursuant to Paragraph 5 of the Stipulated ESI Protocol Order, attached please find Plaintiffs' proposed custodians, search terms, and time frame for the parties.



Regards,

Jason





**JASON S. MCMANIS**
*Partner*
direct: 713.600.4969 | main: 713.655.1101
1221 McKinney, Suite 2500
Houston, Texas 77010
LinkedIn | vCard | Profile
**AZALAW.COM**

The information contained in this message is privileged, confidential and intended only for the use of the addressee. If the reader of this message is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of the message is strictly prohibited. If you have received this message in error, please immediately notify the sender by return e-mail and return the original message to the sender at the above e-mail address. Thank you.

disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

**Disclaimer**

7

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

**Custodians**:
- Jason Heuberger – We do not believe he is a relevant custodian.
- Joe Carman – We do not believe he is a relevant custodian.
- David Greenberg – Agreed
- David Istvan – Agreed
- Tracey Chancey – Agreed
- Stephen Murtaugh – Agreed
- Daphne Maxwell – We do not believe she is a relevant custodian.

**We agree to run the following searches to identify hit counts:**
- benchmark* or "bench mark*" or BMP or (Cap w/5 (ASO or OON or "out of network")
- United OR UHC OR UnitedHealth OR UHG
- "Data iSight" OR DiS OR MultiPlan or "MPI" or "Multi Plan" or "MP"
- appeal OR complaint OR "fair market" OR FMV OR (reasonable w/10 value)
- "coding manual" OR "coding polic*"
- "R&C" OR UCR OR "U&C" OR (usual w/3 customary) OR (usual w/3 reasonable) OR (reasonable w/3 customary)
- Chargemaster OR "charge master" or "fee schedule*"
- ("Emergency Care Service* of Pennsylvania" or "Emergency Physician Associates of Pennsylvania" or "Emergency Physician Associates of Pa" or ("emerg phys ascs" w/3 Penn*) OR EPA OR ECS OR Physicians Associates of Pennsylvania"
- CollectRX OR "collect rx" OR CRX
- Reimburs* w/15 (OON OR "out of network" OR "out-of-network" OR "non-par*" OR nonpar OR "non-contracted" OR "non contracted")
- OON or "out of network" OR "out-of-network" w/15 program
- ("above market" or "below market") w/10 rate
- (Reduc* OR increas*) w/15 reimburs*
- (OON OR "out of network" OR "out-of-network" OR "non-par*" OR nonpar OR "non-contracted" OR "non contracted") w/15 (rate OR bill*)
- (Flexpoint or "flex point" or "benefits science") w/25 (PA or Penn or Pennsylvania or Philadelphia or Philly)
- (balance w/5 bill*) OR (surprise w/5 bill*)
- (willing w/3 buyer) OR (willing w/3 seller)
  - We will run this to avoid a dispute, but continue to object to its relevance.
- Rate w/5 analysis
  - We do not necessarily agree that this is relevant, but will check a hit count.
- "rate negotiat*" OR "rate agree*" OR "rate perform*" OR "historical rate*"
  - We do not necessarily agree that this is relevant, but will check a hit count.
- (emergen* w/3 economics) w/15 (PA or Penn or Pennsylvania or Philadelphia or Philly)
  - Proposed narrowing.
- Emergen* w/5 (rate OR bill*) w/15 (PA or Penn or Pennsylvania or Philadelphia or Philly)
  - Proposed narrowing.
- "claim* payment data" w/15 (PA or Penn or Pennsylvania or Philadelphia or Philly)
  - Proposed narrowing.

- (percent w/10 (Mcare OR Medicare OR CMS OR allow* or charg* or billed or billing)) w/15 (PA or Penn or Pennsylvania or Philadelphia or Philly)
  - Proposed narrowing.

**Continues to need further discussion or narrowing:**
- denial or deny or denied or "down code" OR downcode OR upcode OR "up code"
  - I was prepared to search this on your representation that it went to an affirmative defense until your interrogatory responses argued that you have no affirmative defenses related to coding.
- ("sub TIN" OR "subTIN" OR "sub-tin") w/15 (PA or Penn or Pennsylvania or Philadelphia or Philly)
- "TeamHealth" OR "Team Health" OR "TH" OR "Team Physicians"
  - Parties agreed to consider possibilities to narrow.
  - Possibility for consideration: w/15 (PA or Penn or Pennsylvania or Philadelphia or Philly)


**We object to the following:**
- (cost w/2 care)
- (Equityhealth or "equity health" or EH) AND (OON or "out-of-network" or "out of network" or analy*)
- Blackstone
- Term* w/25 (PPA OR participation)
- "cost-sharing" OR "cost sharing"
- "No Surprises Act" OR NSA
- "post payment"
- "remitted amount"
- "value-based care" OR "value based care" OR "VBC"
- "legislative solution"
- "legislative approach"
- "federal solution"
- "glide path"
  - National negotiations for INN rates across the country do not bear on the reasonable value for OON rates in PA.
- "litigation route"
  - Same.
- Underfund* OR "under fund*"
  - Same.
- "AR Value" or "AR Hold"
  - Same.
- escalator
  - Same.
- "allowable spend"
  - Same.